BSD/1986/4
(June 1986)

*Notice to recognised banks and licensed deposit-takers*

# BANK OF ENGLAND

## BANKING SUPERVISION DIVISION

### The measurement of capital

**1** The Bank's paper "The Measurement of Capital" (September 1980) describes the basis on which it assesses the capital adequacy of all UK incorporated institutions authorised under the Banking Act 1979.* One amendment has been made to this paper in that acceptances of bills drawn by non-banks, both in the UK and overseas, are weighted at 1.0 in the risk asset ratio. It was also announced in April 1985** that, as a provisional measure, underwriting obligations under note issuance facilities would henceforth be treated as a contingent liability and weighted at 0.5 in the risk asset ratio.

**2** There are also a number of ways in which the system of measuring capital adequacy has been modified in practice since the broad framework of measurement was established in September 1980. One aspect was covered recently in a Notice to all authorised institutions of March 1986 (BSD/1986/2), which addressed various matters concerning subordinated debt. Certain of the other modifications are already in effect and, in most cases, they have been explained individually to the banks which are affected, in the course of the regular supervisory discussions. However, the Bank considers that it would now be helpful in the interests of consistency to explain the modifications more formally in this Notice to all authorised institutions.

### Plant and equipment financed by hire purchase and leasing

**3** The Bank believes that it is necessary to clarify the treatment for capital adequacy purposes of plant and equipment financed by hire purchase and leasing where a bank is acting either as lessee or as lessor. The Bank has considered the implications of the provisions of Accounting Standard SSAP 21, which has established principles of accounting practice to be applied in the financial statements of lessors and lessees. These provisions affect banks and their subsidiaries and associates engaged in leasing business and particularly so banks which finance their infrastructure by means of finance leases.

**4** In the calculation of a bank's capital ratios, plant, equipment and other fixed assets (apart from premises) are deducted in full from a bank's capital base. The Measurement of Capital paper explains that this deduction is made on the grounds that it is imprudent to deploy the depositors' funds to finance equipment needed to run the business. The Bank considers that this principle should apply wherever a bank has full enjoyment of such assets, regardless of the method used to finance them. Thus, the aquisition of all fixed assets (other than premises) under a hire-purchase contract, or the right to use an asset under a finance lease, will result in a deduction of the amount recorded as an asset on the balance sheet from a bank's capital base, because in both cases a bank can expect to employ the asset throughout its useful life in the same way as a fixed asset which it has purchased outright. An exception to this treatment is where a bank leases a fixed asset inwards and sub-leases it out, and is acting only as an intermediary between the original lessor and ultimate lessee. In this circumstance the asset may be treated as a leasing engagement for the intermediate bank as lessor, and weighted as appropriate in the calculation of its risk asset ratio.

**5** The position is different where a bank lessee acquires the use of an asset under an operating lease (where the agreement is usually of a shorter period than under a finance lease). In this case the same asset is more likely to be leased to more than one lessee during

---

* For the purpose of this Notice, references to banks should be taken to include recognised banks and licensed deposit-taking institutions.

** The announcement was made in a Notice to authorised institutions (BSD/1985/2).

its useful life, and the lessee does not hold the asset in the same way as under a finance lease. From the viewpoint of the lessee the Bank considers that the nature of payments made under an operating lease is more akin to the payment of rent or other expenses. The Bank will therefore not make a deduction from the capital base of a bank lessee of an asset leased under an operating lease, nor will the asset be weighted in the lessee's risk asset ratio.

6 Under current practice, assets leased out under a finance lease are given a 1.0 weight in the risk asset ratio of the bank as lessor. The Bank considers that the risks can be greater for a lessor under an operating lease. In addition to making its normal credit assessment of the lessee, the lessor will need to have knowledge of the likely residual value of the asset at the end of the first lease period and, if it is to be re-leased, the terms which might be obtained. However, operating leases where granted are akin to a bank's normal lending, and the Bank therefore believes that it would not be justifiable to treat assets leased out by banks under such leases in the same way as plant and equipment which form part of the infrastructure of the bank itself. Despite the distinction which can be drawn, the Bank will, in the interests of maintaining the simplicity of the risk asset ratio, give the same weight to assets leased out under both finance and operating leases in the calculation of the ratio.

7 At present, all assets leased out under finance leases are weighted at 1.0 in the risk asset ratio, regardless of the status of the lessee. However, this is not consistent with the treatment of direct lending where, for example, lending to the UK monetary sector and local authorities is weighted at 0.2 and advances to the non-bank private sector are weighted at 1.0. The Bank is now bringing the treatment of leasing for bank lessors into line with that applied to lending. In future, and following the treatment outlined in paragraph 6 above, the Bank will weight assets leased out under finance and operating leases to members of the UK monetary sector, local authorities and public corporations at 0.2 in the calculation of the risk asset ratio. Since direct lending to building societies will in future also be weighted at 0.2 (see paragraph 15 below), assets leased out to such institutions will be similarly weighted at 0.2. Assets leased out under finance and operating leases to all other lessees will continue to be weighted at 1.0.

8 The following is a summary of the treatment described in paragraphs 4-7 above.

(a) For a lessee bank under a finance lease, or a hirer under a hire purchase contract, a full deduction of the asset from its capital base (except where a bank leases a fixed asset inwards and sub-leases it out under finance lease terms, in which case the asset may be weighted in its risk asset ratio as for a bank lessor - see paragraph (c) below).

(b) For a lessee bank under an operating lease, no deduction of the asset from the capital base and no weight for the asset in calculating the risk asset ratio.

(c) For a lessor bank under a finance lease or an operating lease, a weight for the asset of 0.2 or 1.0 will be applied, according to the status of the lessee (see paragraph 7 above).

The Bank will keep under review its supervisory treatment of finance and operating leases, in the light of future developments in the leasing market.

**Redeemable shares in the capital base**

9 The Bank's paper "The Measurement of Capital" (paragraph 11(i)) states that redeemable preference shares are treated in the same way as subordinated loan capital. This means that for capital ratio purposes such shares must have a minimum initial term to redemption of over five years (and be subject to straight line amortisation over the last five years of their life), and can only be included within a limit of one third of a bank's total capital base net of goodwill and other intangible assets.

10 In the light of proposals put forward by banks for possible issues of redeemable preference shares, the Bank recognises that its current policy can make insufficient distinction between the different terms on which preference shares are issued or the circumstances in which such shares may be redeemed. In particular, shares may be redeemable at a fixed date in the future, or at the option of the issuer or the subscriber. In addition, the Companies Act 1985 provides that redeemable shares may only be redeemed out of distributable profits (or out of the proceeds of a fresh issue of shares made for the purposes of the redemption)*, and there may therefore be circumstances when

* However, under the Companies Act 1985 a private company may also redeem or purchase its own shares out of capital reserves in defined circumstances.

redemption cannot be made because distributable reserves are inadequate for this purpose. The Bank considers that its supervisory treatment of redeemable shares should make some allowance for these different factors.

**11** Like ordinary share capital, preference shares have two of the essential characteristics of primary capital. Firstly, they can absorb losses leaving the bank able to continue to trade. Secondly, the dividends paid on the shares can be reduced or passed so that such shares need not impose a fixed servicing cost on the issuing bank. Non-redeemable preference shares are also permanently available as capital for the issuer. Preference or other shares which provide for redemption at some future date of course cannot be regarded as permanent capital. This must be borne in mind in determining the quality of such shares as capital.

**12** Preference and other shares will be included in a bank's total capital base as follows.

(i) Non-redeemable preference shares, on the same basis as ordinary share capital.

(ii) Preference and other shares which are redeemable **only** at the option of the issuer, on the same basis as ordinary share capital **provided that** the bank undertakes to the Bank in writing that no redemption will be made without the prior consent of the Bank. (Preference and other shares redeemable at the option of the subscriber will **not** be included in a bank's capital base.)

(iii) Preference and other shares with a fixed redemption date can count as primary capital, and can be included as part of a bank's primary capital base, subject to the following conditions —

(a) the shares have a minimum initial term to maturity of over 25 years;

(b) the shares are amortised, for capital ratio purposes, on a straight line basis over the last five years of their life. Where, at the beginning of the five year period, distributable reserves are insufficient for the shares to be redeemed at the redemption date, the Bank will wish to discuss with the issuer the scale of amortisation to be applied.

(c) the amount of the shares which can be counted as part of the capital base will be included within the same limits as those applying to perpetual subordinated debt (paragraphs 15-17 of the Bank's Notice BSD/1986/2 of March 1986). Where such shares are included in a bank's capital base, they will therefore alter the amount of perpetual and/or term subordinated debt which can also be counted as part of the total capital base.

Where preference and other shares with a fixed redemption date do not meet the conditions mentioned above, they are included in a bank's total capital base on the same basis as ordinary subordinated loan capital.

**Buying-in of (or reduction in) own share capital**

**13** Under the Companies Act 1985 a company limited by shares or limited by guarantee and having a share capital may make a purchase of its own shares where, inter alia, it has been granted the necessary authority to do so by its shareholders. However, in all cases where a bank is granted such an authority, or in other cases where such an authority is not required under the Companies Act 1985, the prior consent of the Bank should be obtained before a purchase of, or reduction in, own shares takes place. Before giving its consent the Bank will wish to ensure that a bank's capital adequacy will be maintained after the purchase or reduction is made, since the effect will be to reduce the amount of share capital (and therefore, possibly, loan capital) which can be included in its total capital base.

**Bills**

**14** The Measurement of Capital paper (Appendix A, item (iii)) states that *all bills other* than UK and Northern Ireland Treasury Bills are weighted at 0.2 in the calculation of the risk asset ratio. Bills issued by local authorities and public corporations, and bills irrespective of the issuer where they have been accepted by any UK monetay sector institution, will continue to receive a weight of 0.2. However, other bills - which for the purpose of the risk asset ratio includes trade bills, promissory notes, other UK paper (including sterling commercial paper) and overseas bills - are now weighted at 1.0, to correspond with the weight given to direct lending to issuers of such paper.

**Lending to building societies**

**15** At present, lending to building societies falls within "Other loans and advances" for the purpose of calculating the risk asset ratio and is ascribed a weight of 1.0 (the Measurement of Capital paper, Appendix A, item (v)). However, the Bank considers that it would be more appropriate to accord a lower weight to lending to building societies, in line with that given to loans to the UK monetary sector. The Bank will therefore in future weight all claims on building societies at 0.2 in the risk asset ratio, except for holdings of floating rate notes or other paper issued by building societies with an original maturity of one year of more. Such holdings will be treated in the usual way as investments and weighted at 1.0 or 1.5, according to whether or not they are freely marketable.

**Statistical reporting**

**16** A statistical notice to all reporting institutions which is being issued today explains the consequences of these changes.

Bank of England
June 1986