**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 95-758 T**
**(Judge Nancy B. Firestone)**

**NATIONAL WESTMINSTER BANK PLC,**

**Plaintiff**

**v.**

**THE UNITED STATES,**

**Defendant**

**REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR A 30-DAY ENLARGEMENT OF TIME TO CONCLUDE FACT DISCOVERY**

On December 6, 2004, defendant filed a straightforward request for a modest 30-day enlargement of discovery to allow for the orderly review of previously undisclosed documents plaintiff states are responsive to defendant's written discovery requests and to schedule and conduct depositions following that review. As a consequence of the necessary discovery enlargement, defendant asked the Court to correspondingly amend the other pre-trial dates set forth in its October 5, 2004, Order. Plaintiff advises it is amenable to a short enlargement to conduct depositions after the holiday season and the present January 7, 2005, deadline, yet nevertheless has filed an opposition to defendant's motion. Thus, plaintiff is quibbling over, at most, a truly small number of days to complete fact discovery.

Plaintiff's evident, but unstated purpose in filing an opposition is to cut in half the period defendant's experts will have after discovery closes to prepare their report. The Court determined at the October 5, 2004, Status Conference that the parties' experts would have two months from the close of discovery to exchange reports. (Tr. 14). Nevertheless, although plaintiff agrees to an extension of discovery to conduct depositions (presumably taking into account its own convenience during the holiday season) it would leave in place the present March 4, 2005, date for the exchange of experts' reports. Doing so would not compromise plaintiff's experts at all, but it would prejudice the efforts of defendant's experts to fully consider all the information to be obtained in discovery and to prepare a careful, thorough report. In further reply to plaintiff's Opposition, defendant submits the following:

1. With respect to the arm's length interest issue, defendant's goal, and that of its experts, is to evaluate the interest rates on the branches' ***comparable*** related and third-party transactions. To the extent appropriate, defendant's experts also would evaluate the branches' interest rates on affiliated transactions with published contemporaneous benchmark rates applicable to similar transactions. The comparability of transactions always is key, and it is vital to understand the nature of each of the many types of interest-bearing accounts and transactions the branches engaged in.

2. The Court's July 16, 2004, Order directed plaintiff to produce "all documents relevant to the interest issue," but the kinds of documents plaintiff assembled in response were limited to primarily accounting reports and scattered accounting data. The raw accounting data does not present a complete picture. With respect to many of the branches' interest bearing accounts and transactions, it is important in assessing comparability to understand the branches' relationships with its customers and

the purposes of the transactions – information that is not revealed in accounting data. The task before defendant's experts therefore can not be accomplished solely by reviewing accounting statements. Calculations using accounting data, but without additional necessary background information, would be uninformed. If defendant's experts were to do so, we trust that plaintiff would not be shy at trial and refrain from arguing that they made inappropriate and invalid comparisons among transactions.

3. Last August, when the contents – and the limitations – of the documents plaintiff's counsel assembled became clear, defendant attempted to obtain the necessary additional information by requesting it from plaintiff's counsel informally. Suffice it to say, defendant does not consider that effort to have been successful. In a further effort to obtain the needed information, and to accelerate the pace of discovery, defendant requested and received the Court's permission to conduct written discovery, followed by depositions. (*See* Tr. Oct. 5, 2004 at 4.) Soon after the Court's order, defendant served plaintiff with written discovery requests, including requests for the production of documents.[1]

4. Despite the Court's direction to plaintiff to make all relevant documents available to defendant by July 31, 2004, and the prior responses by plaintiff's counsel to defendant's informal additional inquiries that all relevant and responsive documents had been assembled, on November 22, 2004, nearly four months after the deadline, plaintiff advised in response to defendant's formal discovery, that there are additional responsive documents located within 18 boxes then being placed in

---

[1] Plaintiff complains that it took defendant two weeks to serve written discovery. (Opp. at 3). Defendant coordinated extensively with its experts to ensure that its discovery requests included the specific additional information needed in light of their review of the documents plaintiff had to that point made available. Defendant's discovery requests were substantial in number, reflecting a desire to be comprehensive, particularly in light of the short period available to complete all discovery.

the document room at its attorneys' offices. Plaintiff offers no justification, or any explanation whatsoever, for its lengthy delay in advising defendant that additional relevant documents exist.

5. Moreover, without any notice to or discussion with defendant, plaintiff abandoned the practice it followed earlier in this case of producing Bates stamped copies of responsive documents, identifying the documents that pertain to specific requests. For example, in response to defendant's Fifth Set of Requests for Production and associated Interrogatories, plaintiff produced six boxes of responsive Bates stamped copies of documents. Yet, in response to defendant's present discovery requests, plaintiff did not produce even a single page of a responsive document.[2] Plaintiff also does not identify the documents it has determined are responsive to specific requests, either by Bates stamp number, title, or, any other meaningful descriptor. Plaintiff's claim (at 6 n.3) that it provided defendant with "detailed indices" of the documents is fanciful. There is no index of specific documents, and the single-phrases plaintiff uses to describe the contents of each box (*e.g.*, Box 117 "Group Account Correspondence"; Box 145 "Files Relating to Bank Customers") are hardly instructive in identifying the nature and relevance of individual documents within. Rather than identify responsive documents, as it did in the past, plaintiff unhelpfully advises defendant that they may be unearthed from within a long list of boxes.

---

[2] Plaintiff suggests (at 4) that it did not produce documents this time because of their age, irregular size, and supposed fragility. But the many documents plaintiff produced in response to defendant's Fifth Set of Requests included a wide variety of business correspondence, memoranda, manuals, accounting statements, worksheets, and other differently sized documents from the years at issue. In addition, the documents defendant previously reviewed in plaintiff's document room are not fragile and plaintiff does not suggest that the newly added responsive documents are somehow different. Finally, responsive documents will have to be copied in any event, and we see no justification for plaintiff's delay.

6. Defendant is deeply skeptical that a large volume of documents within the boxes is genuinely responsive to our requests, as the requests largely focus on the branches' decision-making processes, such as the mechanisms for setting interest rates, or documents explaining the business purposes served by various kinds of customer accounts. We perceive plaintiff's responses to discovery requests that responsive documents are located among the thousands of pages of documents in numerous boxes as an effort to: (1) hide information, (2) provide cover for its decision to delay defendant's discovery by not copying a limited volume of documents and sending them to defendant within the period permitted by the Rules, (3) unnecessarily force defendant and its experts to undertake an expensive and time-consuming search for documents plaintiff already has determined are responsive, and (4) suggest that plaintiff has many documents that answer the concerns defendant is investigating.[3] Thus, the issue is not whether plaintiff should have copied the contents of 18 boxes and provided them to us for review, as we are confident that the 18 boxes contain only a limited number of responsive documents. By refusing to identify and produce responsive documents – in contrast with its previous practice and its present demands on defendant – plaintiff has delayed the conclusion of discovery.

7. Defendant has been proceeding in a timely manner to obtain the information needed to evaluate whether the interest-bearing related party transactions of plaintiff's six U.S. branches reflect

---

[3] Even as plaintiff defends its failure to produce or identify documents to defendant, it is making just such demands on defendant. On December 8, 2004, plaintiff served defendant with its Fourth Set of Requests for Production and Copying of Documents, specifying plaintiff's counsel's office as the place for production and instructing defendant that "[t]he documents and records produced shall be organized and labeled to correspond to the relevant request."

arm's length dealing.[4] It is continuing to do so, as its experts are now in New York reviewing the boxes within which plaintiff states that responsive documents may be found. Had plaintiff produced responsive documents on November 22, as it had in the past, defendant and its experts would have begun to review them soon after that date. But defendant received no documents to review on the due date for plaintiff's production, so defendant's counsel and its experts instead reviewed the responses plaintiff actually made to defendant's discovery (not just the responses to requests for production) and then met to assess and discuss the additional information still needed. Defendant's counsel then contacted plaintiff's counsel to secure their agreement to drop the surveillance techniques and onerous limitations they employed during defendant's previous visits to their offices to review documents. These matters were not "minor modifications," as plaintiff's counsel disingenuously characterize them (Opp. at 5 n.2), but were essential to prevent the continued unwarranted and unconsented-to invasion of the work product and thought processes of defendant's counsel and experts. Defendant also categorically denies plaintiff's further suggestion (*ibid*.) that plaintiff did anything other than unilaterally impose those

[4] Defendant's representatives spent a total of nine-person days looking at documents at plaintiff's counsel's offices, they obtained and have reviewed copies of thousands of pages of documents from the microfiche and boxes, and there is no dispute that certain kinds of information, which defendant's experts consider vital to conduct their analysis, were not assembled in the document room at the time of defendant's reviews. Defendant has been seeking this additional information since August, and now plaintiff belatedly has added documents to the room. Contrary to plaintiff's claims (Opp. at 2-4), there has been no lack of diligence on defendant's part, and additional visits to the document room prior to plaintiff's recent addition of 18 boxes would not provide defendant with the additional information its experts need. Defendant's request for 30 additional days to review new materials and conduct depositions also does not support plaintiff's hyperbole that defendant is seeking a "wholesale" enlargement of discovery time, and constitutes a "transparent effort to delay" the resolution of this case. (*See* Opp. at 1.) Defendant's motion, as was its earlier motion to conduct discovery to augment the review of documents, is designed to conclude fact discovery as quickly as possible.

procedures on defendant previously. Four days later, plaintiff agreed to abandon its restrictions. Defendant immediately scheduled with plaintiff's counsel the review of documents in New York that is taking place now.

8. Defendant expects that its experts will identify the responsive documents within the boxes within a few days and that plaintiff will promptly copy them as agreed and forward them to defendant. Defendant also will consult with plaintiff's counsel regarding a deposition schedule and will complete depositions as quickly as possible within the 30-day enlargement requested.

9. As previously determined by the Court, defendant's experts are entitled to a two-month period after the close of discovery to consider the information obtained and to prepare their report.

10. Accordingly, the Court should extend the discovery period by 30 days, through February 7, 2004, and the others dates specified in the Court's October 5, 2004, Order should be revised accordingly.

Respectfully submitted,

s/ Steven I. Frahm
STEVEN I. FRAHM
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6504 (telephone)
(202) 514-9440 (facsimile)

EILEEN J. O'CONNOR
Assistant Attorney General
MILDRED L. SEIDMAN
Chief, Court of Federal Claims Section

December 20, 2004