**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 95-758T**
**(Judge Nancy B. Firestone)**

**NATIONAL WESTMINSTER BANK PLC,**

**Plaintiff**

**v.**

**THE UNITED STATES,**

**Defendant**

# ORDER

In consideration of Plaintiff's February 11, 2005 Motion for an Order Deeming Admitted Plaintiff's Requests for Admissions Under RCFC 36(a), the Court hereby GRANTS Plaintiff's motion and Orders the matters set forth in Appendix A hereto admitted and conclusively established for purposes of this proceeding.

IT IS SO ORDERED

______________________________
Nancy B. Firestone
Judge

**Appendix A**

**Plaintiff's Request for Admission 2.05**: The principal customers of the U.S. Branch were large multinational corporations (including U.S. subsidiaries of U.K. corporations that were customers of PLC in the United Kingdom), other banks and financial institutions, other PLC offices and subsidiaries, and foreign governments.

**Plaintiff's Request for Admission 2.06**: The six U.S. branches loaned funds to, and took deposits from, their corporate customers.

**Plaintiff's Request for Admission 2.09**: For each of the years at issue, NatWest was required to and did file a single U.S. federal income tax return.

**Plaintifff's Request for Admission 2.11**: There were two branches and one agency of NatWest licensed in the United States: (1) the New York branch licensed by the State of New York, (2) the Chicago branch licensed by the State of Illinois, and (3) the San Francisco agency licensed by the State of California.

**Plaintiff's Request for Admission 2.14**: The operations of the IBF commenced in December 1981.

**Plaintiff's Request for Admission 2.17**: NatWest had branches licensed in Nassau and the Grand Cayman Islands.

**Plaintiff's Request for Admission 2.18**: The Grand Cayman branch began operations in June 1985.

**Plaintiff's Request for Admission 2.20**: The Nassau and Grand Cayman branches had no employees or facilities located in Nassau or Grand Cayman.

**Plaintiff's Request for Admission 2.22**: During certain periods prior to September 1983, the results of the IBF were included on the manually prepared and certified balance sheets and profit and loss statements of the New York branch.

**Plaintiff's Request for Admission 2.24**: During the years at issue, the U.S. branches submitted profit and loss statements to PLC's head office on a periodic basis.

**Plaintiff's Request for Admission 2.25**: During the years at issue, the U.S. branches submitted balance sheets to PLC's head office on a periodic basis.

**Plaintiff's Request for Admission 2.30**: NatWest maintained an internal audit process designed to (i) determine if policies, practices, procedures and internal controls were adequate to

assure accurate accounting for the activities of the U.S. branches and (ii) initiate corrective action if any deficiencies were identified.

**Plaintiff's Request for Admission 2.33**: The aggregate amount of interest income recorded on the profit and loss statements of the U.S. branches for each of the years at issue was as follows:

| Tax Year | Aggregate Interest Income |
|---|---|
| 1981 | 701,738,889 |
| 1982 | 635,002,839 |
| 1983 | 486,454,589 |
| 1984 | 635,242,556 |
| 1985 | 529,248,172 |
| 1986 | 498,814,159 |
| 1987 | 584,410,256 |

**Plaintiff's Request for Admission 2.34**: The amounts set forth in Request for Admission 2.33 above include the following amounts of interest income accrued by the U.S. branches from parties unrelated to NatWest:

| Tax Year | Interest Income from third Parties |
|---|---|
| 1981 | 575,881,214 |
| 1982 | 502,953,124 |
| 1983 | 398,210,695 |
| 1984 | 531,088,923 |
| 1985 | 449,801,628 |
| 1986 | 405,279,034 |
| 1987 | 447,495,474 |

**Plaintiff's Request for Admission 2.35**: The amounts set forth in Request for Admission 2.33 above include the following amounts of interest income accrued by the U.S. branches from other group companies:

| Tax Year | Interest Income from Other Group Companies |
|---|---|
| 1981 | 30,962,197 |
| 1982 | 44,606,560 |
| 1983 | 24,471,318 |
| 1984 | 27,299,430 |
| 1985 | 23,977,168 |
| 1986 | 24,705,540 |
| 1987 | 45,142,008 |

**Plaintiff's Request for Admission 2.36**: The amounts set forth in Request for Admission 2.33 above include the following amounts of interest income accrued by the U.S. branches from other branches of NatWest outside the United States:

| Tax Year | Interest Income from non-U.S. Branches |
|---|---|
| 1981 | 12,352,992 |
| 1982 | 6,833,220 |
| 1983 | 6,091,129 |
| 1984 | 6,609,212 |
| 1985 | 6,890,500 |
| 1986 | 10,531,919 |
| 1987 | 13,603,297 |

**Plaintiff's Request for Admission 2.37**: The amounts set forth in Request for Admission 2.33 above include the following aggregate amounts of interest income accrued by the U.S. branches from each other:

| Tax Year | Interest Income from U.S. Branches |
|---|---|
| 1981 | 82,542,486 |
| 1982 | 80,609,935 |
| 1983 | 57,681,447 |
| 1984 | 70,244,991 |
| 1985 | 48,578,877 |
| 1986 | 58,297,666 |
| 1987 | 78,169,477 |

**Plaintiff's Request for Admission 2.38**: The aggregate amount of interest expense recorded on the profit and loss statements of the U.S. branches for each of the years at issue was as follows:

| Tax Year | Aggregate Interest Expense |
|---|---|
| 1981 | 671,036,957 |
| 1982 | 601,557,461 |
| 1983 | 444,832,199 |
| 1984 | 602,794,686 |
| 1985 | 459,184,135 |
| 1986 | 436,383,691 |
| 1987 | 552,888,878 |

**Plaintiff's Request for Admission 2.39**: The amounts set forth in Request for Admission 2.38 above include the following amounts of interest expense accrued by the U.S. branches to parties unrelated to NatWest:

| Tax Year | Interest Expense Accrued with respect to Third Parties |
|---|---|
| 1981 | 505,155,940 |

| Tax Year | Interest Expense Accrued with respect to Third Parties |
|---|---|
| 1982 | 446,769,398 |
| 1983 | 342,193,553 |
| 1984 | 485,235,812 |
| 1985 | 343,395,119 |
| 1986 | 271,113,921 |
| 1987 | 301,921,949 |

**Plaintiff's Request for Admission 2.40**: The amounts set forth in Request for Admission 2.38 above include the following amounts of interest expense accrued by the U.S. branches to other group companies:

| Tax Year | Interest Expense Accrued with respect to Other Group Companies |
|---|---|
| 1981 | 24,926,564 |
| 1982 | 19,754,675 |
| 1983 | 11,934,824 |
| 1984 | 14,662,026 |
| 1985 | 14,624,994 |
| 1986 | 18,237,460 |
| 1987 | 19,386,954 |

**Plaintiff's Request for Admission 2.41**: The amounts set forth in Request for Admission 2.38 above include the following amounts of interest expense accrued by the U.S. branches to other branches of NatWest outside the United States:

| Tax Year | Interest Expense Accrued with respect to Non-U.S. Branches |
|---|---|
| 1981 | 58,446,924 |

| Tax Year | Interest Expense Accrued with respect to Non-U.S. Branches |
|---|---|
| 1982 | 54,399,462 |
| 1983 | 33,102,291 |
| 1984 | 32,420,694 |
| 1985 | 52,546,899 |
| 1986 | 88,738,618 |
| 1987 | 153,338,621 |

**Plaintiff's Request for Admission 2.42**: The amounts set forth in Request for Admission 2.38 above include the following amounts of interest expense accrued by the U.S. branches to each other:

| Tax Year | Interest Expense Accrued with respect to U.S. Branches |
|---|---|
| 1981 | 82,507,529 |
| 1982 | 80,633,926 |
| 1983 | 57,601,531 |
| 1984 | 70,476,154 |
| 1985 | 48,617,123 |
| 1986 | 58,293,692 |
| 1987 | 78,241,354 |

**Plaintiff's Request for Admission 2.44**: For each of the years at issue, the items comprising taxable income reported on NatWest's original U.S. federal income tax return were equal to amounts set forth on the profit and loss statements of the New York, Nassau, Grand Cayman, Chicago and San Francisco branches and the IBF, subject to adjustments explained in Schedule M-1 of each of those returns.

**Plaintiff's Request for Admission 2.45**: Schedule M-1 of the original U.S. federal income tax return filed for each of the years at issue explains the difference between the taxable income and book profit of the U.S. branches.

**Plaintiff's Request for Admission 2.46**: The aggregate interest income included in NatWest's original U.S. federal income tax return for each of the years at issue was equal to the aggregate interest income recorded on the profit and loss statements of the U.S. branches for each of the years at issue, as set forth in Request for Admission 2.33 above, with the following adjustments as shown on Schedule M-1 to such returns:

| Tax Year | Description of Schedule M-1 Adjustment | Amount |
|---|---|---|
| 1981 | 1980 money market adjustment<br>1980 T-bill accrued interest<br>1981 money market adjustment<br>1981 T-bill accrued interest | 15,699<br>449,284<br>(72,622)<br>(1,986,545) |
| 1982 | 1981 money market adjustment<br>1981 T-bill accrued interest | 72,622<br>1,986,545 |
| 1983 | None | |
| 1984 | T-bill accrual | 1,885,318 |
| 1985 | Net T-bill accrual | (1,884,246) |
| 1986 | Interest Adjustment<br>ESOP interest exclusion<br>Foreign Exchange Income<br>Net T-bill accrual | (486,697)<br>(525,498)<br>103,289<br>(246) |
| 1987 | Income Adjustment<br>Interest Accrual Adjustment<br>Interest Adjustment<br>Foreign Exchange Income<br>Net T-bill accrual | (1,185,000)<br>(846,000)<br>486,697<br>114,736<br>98 |

**Plaintiff's Request for Admission 2.47**: The aggregate interest expense included in NatWest's original U.S. federal income tax return for each of the years at issue was equal to the aggregate interest expense recorded on the profit and loss statements of the U.S. branches for each of the years at issue as set forth in Request for Admission 2.38 above, with the following adjustments as shown on Schedule M-1 to such returns:

| Tax Year | Description of Schedule M-1 Adjustment | Amount |
|---|---|---|
| 1981 | None | |
| 1982 | None | |
| 1983 | None | |

| Tax Year | Description of Schedule M-1 Adjustment | Amount |
|---|---|---|
| 1984 | 1976 B 1980 Add'l Int. Ass'd (California) | 360,149 |
| 1985 | None | |
| 1986 | None | |
| 1987 | Interest Accrual Adjustments | 720,000 |

**Plaintiff's Request for Admission 2.50**: In its May 3, 1995 RARs the I.R.S. proposed the following adjustments to the taxable income of NatWest as reported on its original U.S. federal income tax returns:

| Tax Year | Proposed Adjustment | Amount |
|---|---|---|
| 1981 | Interest Expense<br>Interest Income | 152,605,551<br>(125,857,675) |
| 1982 | Interest Expense<br>Interest Income | 147,337,977<br>(132,049,714) |
| 1983 | Interest Expense<br>Interest Income<br>Sale of Property (Chrysler Stock Sale) | 101,652,347<br>(88,243,894)<br>7,853,110 |
| 1984 | Interest Expense<br>Interest Income | 126,092,694<br>(104,153,633) |
| 1985 | Interest Expense<br>Interest Income | 93,539,801<br>(79,404,169) |
| 1986 | Interest Expense<br>Interest Income<br>Net Loans<br>Employee Benefits<br>Home Office Allocation | 108,064,089<br>(87,081,845)<br>84,426<br>405,249<br>21,903 |

| Tax Year | Proposed Adjustment | Amount |
|---|---|---|
| 1987 | Interest Expense<br>Interest Income<br>Net Loans<br>Employee Benefits<br>Home Office Allocation<br>Other Deductions<br>Net Operating Loss Deduction<br>Bad Debts | 174,292,853<br>(131,596,705)<br>174,309<br>332,710<br>3,534,289<br>(555,350)<br>(12,918,821)<br>(785,311) |

**Plaintiff's Request for Admission 2.51**: The adjustments described in Request for Admission 2.50 include the following amounts to which NatWest has agreed:

| Tax Year | Proposed Adjustment | Amount |
|---|---|---|
| 1983 | Sale of Property (Chrysler Stock Sale) | 7,853,110 |
| 1986 | Employee Benefits<br>Home Office Allocation | 405,849<br>21,903 |
| 1987 | Employee Benefits<br>Home Office Allocation<br>Other Deductions<br>Bad Debts | 332,710<br>3,534,289<br>(555,350)<br>(785,311) |

**Plaintiff's Request for Admission 2.52**: The adjustments described in Request for Admission 2.50 include the following amounts that defendant has withdrawn:

| Tax Year | Proposed Adjustment | Amount |
|---|---|---|
| 1986 | Net Loans | 84,426 |
| 1987 | Net Loans | 174,309 |

**Plaintiff's Request for Admission 2.54**: The adjustments described in Request for Admission 2.50 include the following amounts asserted by the I.R.S. under Section 882, Treasury Regulations section 1.882-5 and Section 864(c)(4)(D):

| Tax Year | Proposed adjustments to interest income: | Proposed adjustments to interest expense: |
|---|---|---|
| 1981 | (125,857,675) | 152,605,551 |

| Tax Year | Proposed adjustments to interest income: | Proposed adjustments to interest expense: |
|---|---|---|
| 1982 | (132,049,714) | 147,337,977 |
| 1983 | (88,243,894) | 101,652,347 |
| 1984 | (104,153,633) | 126,092,694 |
| 1985 | (79,404,169) | 93,539,801 |
| 1986 | (87,081,845) | 108,064,089 |
| 1987 | (131,596,705) | 174,292,853 |

**Plaintiff's Request for Admission 2.56**: The RAR for the taxable year ended December 31, 1987 proposed an Environmental Tax increase of $38,974, bringing the total tax to $53,771, but did not include a correlative regular tax deduction for Environmental Tax. Both of these figures could change depending upon the final resolution of the years at issue.

**Plaintiff's Request for Admission 2.57**: The adjusted U.S. federal taxable income of NatWest as determined by the I.R.S. for each of the years at issue was as follows:

| Tax Year | Amount |
|---|---|
| 1981 | 31,875,618 |
| 1982 | 28,154,833 |
| 1983 | 38,336,127 |
| 1984 | 29,948,701 |
| 1985 | 54,676,775 |
| 1986 | 64,457,339 |
| 1987 | 46,808,885 |
| Total | 294,258,278 |

**Plaintiff's Request for Admission 2.58**: The U.S. federal income tax liability of NatWest as determined by the I.R.S. for each of the years at issue, excluding interest thereon, was as follows:

| Tax Year | Amount |
|---|---|
| 1981 | 14,154,278 |
| 1982 | 12,546,863 |
| 1983 | 16,105,789 |
| 1984 | 13,084,832 |
| 1985 | 24,937,042 |
| 1986 | 29,528,505 |
| 1987 | 18,620,521 |
| Total | 128,977,830 |

**Plaintiff's Request for Admission 2.59**: The U.S. federal income tax liability shown on NatWest's original Form 1120F U.S. federal income tax return or as adjusted prior to issuance of the RARs for each of the years at issue based on the amounts of U.S. federal taxable income shown on Request for Admission 2.48 was as follows:

| Tax Year | Amount |
|---|---|
| 1981 | 1,850,255 |
| 1982 | 5,514,262 |
| 1983 | 7,759,280 |
| 1984 | 2,992,864 |
| 1985 | 18,434,651 |
| 1986 | 19,641,070 |
| 1987 | 304,302 |
| Total | 56,496,684 |

**Plaintiff's Request for Admission 2.60**: The deficiency in U.S. federal income tax due by NatWest for each of the years at issue as determined by the I.R.S., excluding interest thereon, was as follows:

| Tax Year | Amount |
|---|---|
| 1981 | 12,304,023 |
| 1982 | 7,032,601 |
| 1983 | 8,346,509 |
| 1984 | 10,091,968 |
| 1985 | 6,502,391 |
| 1986 | 9,887,435 |
| 1987 | 18,316,219 |
| Total | 72,481,146 |

**Plaintiff's Request for Admission 2.61**: The U.S. federal income tax payments made by NatWest with respect to all of the U.S. branches to the I.R.S. for each of the years at issue were as follows:

U.S. Federal Income Tax Payments for the Years at Issue

| Tax Year | 1981 | 1982 | 1983 | 1984 | 1985 | 1986 | 1987 |
|---|---|---|---|---|---|---|---|
| Prior Year Overpayment | 600,170 | 1,500,000 | 56,411 | 1,600,000 | 257,136 | 0 | 0 |
| Current Year Estimated Payments | 4,250,000 | 4,000,000 | 10,035,000 | 1,650,000 | 16,340,000 | 20,011,000 | 6,953,000 |
| Payment Per Form 7004 | 0 | 0 | 0 | 0 | 1,002,864 | 567,000 | 406,000 |
| Amount Paid Original Return | 0 | 0 | 0 | 0 | 834,651 | 0 | 0 |
| Amount Claimed as Refund on Original Return | (1,594,320) | 0 | (732,131) | 0 | 0 | (936,930) | (1,767,422) |
| Amount Credited to Estimated Tax on Original Return | (1,500,000) | (56,411) | (1,600,000) | (257,136) | 0 | 0 | 0 |
| Refund Per Form 1139 | 0 | 0 | 0 | 0 | 0 | 0 | (5,287,276) |
| Tax Paid Per Form 870 dated 08/23/89 | 94,405 | 70,673 | 0 | 0 | 0 | 0 | 0 |
| Tax Paid in Response to RARs | 12,304,023 | 7,032,601 | 8,346,509 | 10,091,968 | 6,502,391 | 9,887,435 | 18,316,219 |
| Aggregate Tax Payments | 14,154,278 | 12,546,86 | 16,105,789 | 13,084,832 | 24,937,042 | 29,528,505 | 18,620,521 |

**Plaintiff's Request for Admission 2.62.** The interest paid by NatWest to the Internal Revenue Service Center in Philadelphia, PA on May 31, 1995 and June 8, 1995, on the tax deficiencies asserted in the RARs, was as follows:

| Tax Year | Interest Paid |
|---|---|
| 1981 | 28,838,978 |
| 1982 | 13,068,220 |
| 1983 | 14,107,184 |
| 1984 | 15,045,416 |
| 1985 | 7,693,000 |
| 1986 | 11,467,996 |
| 1987 | 17,547,841 |
| **Total** | 107,768,635 |

**Plaintiff's Request for Admission 2.63.** The adjustments proposed under Section 882 and Treasury Regulations section 1.882-5 and Section 864(c)(4)(D) described in Request for Admission 2.54 should be withdrawn in accordance with the Court's July 1999 Opinion and Order.

**Plaintiff's Request for Admission 2.64.** The interest income reported on NatWest's original Form 1120F U.S. federal income tax returns for the years 1981 through 1987 included the amounts of interest income accrued by the U.S. branches from each other as described in Request for Admission 2.37 above.

**Plaintiff's Request for Admission 2.65.** The interest expense reported on NatWest's original Form 1120F U.S. federal income tax returns for the years 1981 through 1987 included the amounts of interest expense accrued by the U.S. branches to each other as described in Request for Admission 2.42 above.

**Plaintiff's Request for Admission 2.66.** If all of the intra-U.S. interest expense described in Request for Admission 2.42 and intra-U.S. interest income described in Request for Admission 2.37 were eliminated from the taxable income of the U.S. branches, the following net additions to, or reductions of, taxable income would result for the years at issue:

| Tax Year | Addition to or (Reduction of) Taxable Income |
|---|---|
| 1981 | (34,957) |
| 1982 | 23,991 |
| 1983 | (79,916) |
| 1984 | 231,163 |
| 1985 | 38,246 |
| 1986 | (3,974) |
| 1987 | 71,877 |

**Plaintiff's Request for Admission 2.67.** In its Amended Refund Claim, NatWest proposed to increase its taxable income by the amounts shown for taxable years 1982, 1984, 1985 and 1987 in Request for Admission 2.66, but did not propose to reduce its taxable income by the amounts shown for years 1981, 1983, and 1986 in Request for Admission 2.66.

**Plaintiff's Request for Admission 2.68.** The amounts of interest expense recorded on the profit and loss statements of the U.S. branches as payable to the Head Office and therefore included in the amounts described in Requests for Admission 2.38 above and reported on NatWest's original Form 1120F federal income tax returns for the tax years at issue included the following net amounts described in U.S. branch books and records as capital loan charges:

| Tax Year | Capital Loan Charge |
|---|---|
| 1981 | 465,868 |
| 1982 | 209,433 |
| 1983 | 202,745 |
| 1984 | 309,459 |
| 1985 | 0 |
| 1986 | 2,336,260 |
| 1987 | 1,936,537 |

**Plaintiff's Request for Admission 2.69.** During the years at issue, any capital loan charges paid by the U.S. branches were calculated on a balance (referred to herein as a "net

capital balance") consisting of the sum of the balances of Retained Profits or Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets less the balance of Premises and Equipment, all as of the prior year-end.

**Plaintiff's Request for Admission 2.70.** During all of the years at issue, except with respect to the first quarter of 1981, the net capital balance used to calculate capital loan charges for a given year was adjusted to reflect any reduction in the components of the net capital balance (e.g., by repatriation) within the first quarter of that year.

**Plaintiff's Request for Admission 2.71.** During the years at issue, the capital loan charges paid by the U.S. branches were calculated using a market rate of interest.

**Plaintiff's Request for Admission 2.72.** During the years at issue, the capital loan charges paid or received in any given quarter were calculated using the same rate of interest for each branch, except for one quarter in 1986, when the actual rates used by the U.S. branches were all within 0.5875% of each other.

**Plaintiff's Request for Admission 2.73.** During the years at issue, the capital loan charges and net capital balances on which they were accrued were calculated on a combined basis for the New York branch and IBF.

**Plaintiff's Request for Admission 2.74.** For the years 1981 through 1985, the U.S. branches paid and deducted a capital loan charge only with respect to the New York branch and IBF and only on positive net capital balances.

**Plaintiff's Request for Admission 2.75.** For the taxable year 1986, all of the U.S. branches paid and deducted capital loan charges, but only on positive net capital balances.

**Plaintiff's Request for Admission 2.76.** For the taxable year 1987, all of the U.S. branches paid and deducted capital loan charges on positive net capital balances and received payments (and reduced interest expense accordingly) on negative net capital balances.

**Plaintiff's Request for Admission 2.77.** During the years at issue, the New York branch collected any capital loan charges for the U.S. branches and paid them to the head office.

**Plaintiff's Request for Admission 2.78.** For the year ended December 31, 1981, the total capital loan charges paid by the U.S. branches to PLC and deducted on the U.S. federal tax return was $465,868.

**Plaintiff's Request for Admission 2.79.** Apart from the amount described in Request for Admission 2.78, during the year ended December 31, 1981, neither the profit and loss statements of the U.S. branches nor the U.S. federal income tax return of NatWest reflected any deduction of interest with respect to any balance in any of the accounts entitled Retained Profits

or Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets.

**Plaintiff's Request for Admission 2.80.** For the year ended December 31, 1982, the total capital loan charges paid by the U.S. branches to PLC and deducted on the U.S. federal tax return was $209,433.

**Plaintiff's Request for Admission 2.81.** Apart from the amount described in Request for Admission 2.80, during the year ended December 31, 1982, neither the profit and loss statements of the U.S. branches nor the U.S. federal income tax return of NatWest reflected any deduction of interest with respect to any balance in any of the accounts entitled Retained Profits or Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets.

**Plaintiff's Request for Admission 2.82.** For the year ended December 31, 1983, the total capital loan charges paid by U.S. branches to PLC and deducted on the U.S. federal tax return was $202,745.

**Plaintiff's Request for Admission 2.83.** Apart from the amount described in Request for Admission 2.82, during the year ended December 31, 1983, neither the profit and loss statements of the U.S. branches nor the U.S. federal income tax return of NatWest reflected any deduction of interest with respect to any balance in any of the accounts entitled Retained Profits or Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets.

**Plaintiff's Request for Admission 2.84.** For the year ended December 31, 1984, the total capital loan charges paid by U.S. branches to PLC and deducted on the U.S. federal tax return was $390,459.

**Plaintiff's Request for Admission 2.85.** Apart from the amount described in Request for Admission 2.84, during the year ended December 31, 1984, neither the profit and loss statements of the U.S. branches nor the U.S. federal income tax return of NatWest reflected any deduction of interest with respect to any balance in any of the accounts entitled Retained Profits or Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets.

**Plaintiff's Request for Admission 2.86.** During the year ended December 31, 1985, neither the profit and loss statements of the U.S. branches nor the U.S. federal income tax return of NatWest reflected any deduction of interest with respect to any balance in any of the accounts entitled Retained Profits or Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets.

**Plaintiff's Request for Admission 2.87.** For the year ended December 31, 1986, plaintiff conceded capital loan charges in the aggregate amount of $2,603,583.

**Plaintiff's Request for Admission 2.88.** For the year ended December 31, 1986, plaintiff made an over-concession with regard to capital loan charges for the fourth quarter for the Nassau branch in the amount of $266,510.

**Plaintiff's Request for Admission 2.89.** For the year ended December 31, 1986, plaintiff made an over-concession with regard to capital loan charges for the fourth quarter for the San Francisco agency in the amount of $813.

**Plaintiff's Request for Admission 2.90.** For the year ended December 31, 1986, the total capital loan charges paid by the U.S. branches to PLC and deducted on the U.S. federal tax return was $2,336,260.

**Plaintiff's Request for Admission 2.91.** Apart from the amount described in Request for Admission 2.90, during the year ended December 31, 1986, neither the profit and loss statements of the U.S. branches nor the U.S. federal income tax return of NatWest reflected any deduction of interest with respect to any balance in any of the accounts entitled Retained Profits or Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets.

**Plaintiff's Request for Admission 2.92.** For the year ended December 31, 1987, the total capital loan charges paid by U.S. branches to PLC and deducted on the U.S. federal tax return was $1,936,537.

**Plaintiff's Request for Admission 2.93.** Apart from the amount described in Request for Admission 2.92, during the year ended December 31, 1987, neither the profit and loss statements nor the U.S. federal income tax return of the U.S. branches reflected any deduction of interest with respect to any balance in any of the accounts entitled Retained Profits or Accumulated Losses; Profits and Loss; Balance due to HO re Capital Loan; or Balance due to HO re Fixed Assets.

**Plaintiff's Request for Admission 2.94.** Apart from the amounts identified in Requests for Admission 2.78, 2.80, 2.82, 2.84, 2.90, and 2.92, the U.S. branches did not pay or deduct any interest during the years at issue on amounts designated as capital on their books and records.

**Plaintiff's Request for Admission 2.96**: Plaintiff has conceded all capital loan charges reflected in its books and records.

**Plaintiff's Request for Admission 2.97:** The aggregate amount conceded by plaintiff as capital loan charges exceeded the actual capital loan charges deducted by plaintiff on its U.S. federal income tax returns during the years 1981 through 1987 in the amount of $267,323.

**Plaintiff's Request for Admission 2.98:** Amounts recorded on the balance sheets of the U.S. branches as "Retained Profits" (which were assigned the account code "LZC") constitute amounts that were designated as capital on the balance sheets of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes, such that any interest expense accrued thereon was not deductible under the Treaty during the years at issue.

**Plaintiff's Request for Admission 2.99:** Amounts recorded on the balance sheets of the U.S. branches as "Profit and Loss" (which were assigned the account code "LPC") constitute amounts that were designated as capital on the balance sheets of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes, such that any interest expense accrued thereon was not deductible under the Treaty during the years at issue.

**Plaintiff's Request for Admission 2.100:** Amounts recorded on the balance sheets of the U.S. branches as "Balance due to HO re Fixed Assets" (which were assigned the account code "LFB") constitute amounts that were designated as capital on the books of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes, such that any interest expense accrued thereon was not deductible under the Treaty during the years at issue.

**Plaintiff's Request for Admission 2.101:** Amounts recorded on the balance sheets of the U.S. branches as "Balance due to HO re Capital Loans" (which were assigned the account code "LEB") constitute amounts that were designated as capital on the books of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes, such that any interest expense accrued thereon was not deductible under the Treaty during the years at issue.

**Plaintiff's Request for Admission 2.102:** Amounts recorded on the balance sheets of the U.S. branches as "Provision for B&DD ("Bad and Doubtful Debts") – Specific" (which were assigned the account code "LQC") constitute amounts that were designated as capital on the books of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes, such that any interest expense accrued thereon was not deductible under the Treaty during the years at issue.

**Plaintiff's Request for Admission 2.103:** Amounts recorded on the balance sheets of the U.S. branches as "Provision for B&DD B – Non-specific" (which were assigned the account code "LRC") constitute amounts that were designated as capital on the books of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes, such that any interest expense accrued thereon was not deductible under the Treaty during the years at issue.

**Plaintiff's Request for Admission 2.105:** Apart from amounts described in Requests for Admission 2.98 through 2.103, there were no amounts recorded on the balance sheets of the U.S. branches during the years at issue that were in fact allotted to a U.S. branch or branches for capital purposes.

**Plaintiff's Request for Admission 2.106:** Apart from the capital loan charges described in Requests for Admission 2.78, 2.80, 2.82, 2.84, 2.90, and 2.92 above, all interest expense deducted by the U.S. branches during the years at issue was on advances to the U.S. branches that were used in the ordinary course of the U.S. branches' banking business.

**Plaintiff's Request for Admission 2.108:** The aggregate of the amounts recorded as Fixed Assets on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Aggregate Fixed Assets |
|---|---|
| 1980 | 9,167,969 |
| 1981 | 11,969,698 |
| 1982 | 15,862,602 |
| 1983 | 16,631,023 |
| 1984 | 25,976,913 |
| 1985 | 23,322,331 |
| 1986 | 26,977,617 |
| 1987 | 29,477,629 |

**Plaintiff's Request for Admission 2.109:** The aggregate of the provisions for "B&DD – Specific" recorded on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Provision for B&DD - Specific |
|---|---|
| 1980 | 4,072,745 |
| 1981 | 3,834,232 |
| 1982 | 6,829,613 |
| 1983 | 11,373,811 |
| 1984 | 4,757,958 |
| 1985 | 7,111,870 |
| 1986 | 7,988,675 |

| Tax Year | Provision for B&DD - Specific |
|---|---|
| 1987 | 55,008,194 |

**Plaintiff's Request for Admission 2.110:** The aggregate of the provisions for "B&DD - Non-Specific" recorded on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Provision for B&DD - Non-Specific |
|---|---|
| 1980 | 10,539,202 |
| 1981 | 10,807,318 |
| 1982 | 10,363,993 |
| 1983 | 13,108,406 |
| 1984 | 11,851,486 |
| 1985 | 12,679,446 |
| 1986 | 20,013,077 |
| 1987 | 20,013,077 |

**Plaintiff's Request for Admission 2.111:** The U.S. branches did not transfer or repatriate to the head office any of their Retained Profits generated during the years at issue.

**Plaintiff's Request for Admission 2.112.** The aggregate of the balances recorded as "Retained Profits" (net of any amounts recorded as "Accumulated Losses") on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Aggregate Retained Profits |
|---|---|
| 1980 | 15,677,567 |
| 1981 | 2,564,846 |
| 1982 | 4,312,898 |
| 1983 | 19,625,765 |

| Tax Year | Aggregate Retained Profits |
|---|---|
| 1984 | 25,993,019 |
| 1985 | 51,706,718 |
| 1986 | 63,301,445 |
| 1987 | 29,732,486 |

**Plaintiff's Request for Admission 2.113.** The aggregate of the balances recorded as "Balance due to HO re Capital Loans" on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Aggregate Balance due to HO re Capital Loans |
|---|---|
| 1980 | 3,223,184 |
| 1981 | 869,893 |
| 1982 | 900,770 |
| 1983 | 645,032 |
| 1984 | 42,437 |
| 1985 | 1,085,000 |
| 1986 | 0 |
| 1987 | 0 |

**Plaintiff's Request for Admission 2.114.** The aggregate of the balances recorded as "Balance due to HO re Fixed Assets" on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Aggregate Balance due to HO re Fixed Assets |
|---|---|
| 1980 | 8,344,816 |
| 1981 | 9,033,064 |
| 1982 | 9,002,188 |
| 1983 | 9,257,926 |

| Tax Year | Aggregate Balance due to HO re Fixed Assets |
|---|---|
| 1984 | 9,860,521 |
| 1985 | 8,817,958 |
| 1986 | 0 |
| 1987 | 0 |

**Plaintiff's Request for Admission 2.115.** The aggregate of the balances recorded as "Profit and Loss" on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Aggregate Profit & Loss Balance |
|---|---|
| 1980 | 0 |
| 1981 | 0 |
| 1982 | 4,604,145 |
| 1983 | 5,117,386 |
| 1984 | 5,109,745 |
| 1985 | 0 |
| 1986 | 0 |
| 1987 | (6,072,870) |

**Plaintiff's Request for Admission 2.116.** The aggregate of the amounts that either were designated as capital on the books of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes (i.e., the provisions for "B&DD - Specific", "B&DD - Non-Specific", "Retained Profits" (net of any "Accumulated Losses"), "Balance due to HO re Capital Loans", "Balance due to HO re Fixed Assets", and balances recorded as "Profit and Loss") as of December 31st of the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Aggregate Capital |
|---|---|
| 1980 | 41,857,514 |

| Tax Year | Aggregate Capital |
|---|---|
| 1981 | 27,109,353 |
| 1982 | 36,013,607 |
| 1983 | 59,128,326 |
| 1984 | 57,615,166 |
| 1985 | 81,400,992 |
| 1986 | 91,303,197 |
| 1987 | 98,680,887 |

**Plaintiff's Request for Admission 2.119.** The following table lists all of the adjustments to the U.S. federal taxable income of NatWest as set forth in the RARs with respect to all issues, excluding adjustments that are dependent on the outcome of subsequent years and computational adjustments that are dependent on resolution of all issues relating to the years at issue:

Adjustments to RAR Taxable Income

| Tax Year | 1981 | 1982 | 1983 | 1984 | 1985 | 1986 | 1987 |
|---|---|---|---|---|---|---|---|
| Reversal of adjustments to interest income[1] | 125,857,675 | 132,049,714 | 88,243,894 | 104,153,633 | 79,404,169 | 87,081,845 | 131,596,705 |
| Reversal of adjustments to interest expense[1] | (152,605,551) | (147,337,977) | (101,652,347) | (126,092,694) | (93,539,801) | (108,064,089) | (174,292,853) |
| Reversal of Net Loans Adjustment[2] | 0 | 0 | 0 | 0 | 0 | (84,426) | (174,309) |
| Elimination of Net Intra-U.S. Interest Expense[3] | 0 | 23,991 | 0 | 231,163 | 38,246 | 0 | 71,877 |
| Elimination of Capital Loan Charge[4] | 465,868 | 209,433 | 202,745 | 309,459 | 0 | 2,603,584 | 1,936,537 |
| Adjustment to NOL Carryback from 1990[5] | 0 | 0 | 0 | 0 | 0 | 0 | 3,385,279 |
| Aggregate Adjustments to RAR Taxable Income | (26,282,008) | (15,054,839) | (13,205,708) | (21,398,439) | (14,097,386) | (18,463,086) | (37,476,764) |

1 - *See* Request for Admission 2.54, above.
2 - *See* Request for Admission 2.52, above.
3 - *See* Requests for Admission 2.66 and 2.67, above.
4 - *See* Requests for Admission 2.68, 2.87 and 2.88, above.
5 -Two adjustments to the U.S. Branch's NOL Carryback were conceded by NatWest during the audit of its 1990 taxable year, resulting in an addition to income for the 1987 tax year of $3,385,279. *See* $912,566 agreed on Form 870-AD dated June 26, 1998 at 2, and $2,472,713 in closing agreement executed by NatWest on June 14, 1999. The NOL Carryback is subject to further adjustment depending on the resolution of taxable years not at issue here.

**Plaintiff's Request for Admission 2.124.** The aggregate U.S. federal income taxes paid by NatWest for each of the tax years at issue is:

| Tax Year | Aggregate Tax Payments |
|---|---|
| 1981 | 14,154,278 |
| 1982 | 12,546,863 |
| 1983 | 16,105,789 |
| 1984 | 13,084,832 |
| 1985 | 24,937,042 |
| 1986 | 29,528,505 |
| 1987 | 18,620,521 |
| **Total** | 128,977,830 |