REQUEST FOR ADMISSION 2.49. The I.R.S. examined NatWest's original Form 1120F U.S. federal income tax returns for each of the years at issue. (*See* RARs.)

RESPONSE TO REQUEST FOR ADMISSION 2.49: Admits

REQUEST FOR ADMISSION 2.50. In its May 3, 1995 RARs the I.R.S. proposed the following adjustments to the taxable income of NatWest as reported on its original U.S. federal income tax returns:

| Tax Year | Proposed Adjustment | Amount |
|---|---|---|
| 1981 | Interest Expense<br>Interest Income | 152,605,551<br>(125,857,675) |
| 1982 | Interest Expense<br>Interest Income | 147,337,977<br>(132,049,714) |
| 1983 | Interest Expense<br>Interest Income<br>Sale of Property (Chrysler Stock Sale) | 101,652,347<br>(88,243,894)<br>7,853,110 |
| 1984 | Interest Expense<br>Interest Income | 126,092,694<br>(104,153,633) |
| 1985 | Interest Expense<br>Interest Income | 93,539,801<br>(79,404,169) |
| 1986 | Interest Expense<br>Interest Income<br>Net Loans<br>Employee Benefits<br>Home Office Allocation | 108,064,089<br>(87,081,845)<br>84,426<br>405,249<br>21,903 |
| 1987 | Interest Expense<br>Interest Income<br>Net Loans<br>Employee Benefits<br>Home Office Allocation<br>Other Deductions<br>Net Operating Loss Deduction<br>Bad Debts | 174,292,853<br>(131,596,705)<br>174,309<br>332,710<br>3,534,289<br>(555,350)<br>(12,918,821)<br>(785,311) |

(*See* RARs; Pl.'s response to Def.'s Request for Admission 1.23.)

RESPONSE TO REQUEST FOR ADMISSION 2.50: To the extent plaintiff's request duplicates defendant's Request for Admission 1.23, defendant objects to it as unnecessary and an abuse of the discovery process. To the extent it addresses other matters bearing on tax computations, but which are unrelated to the capital or arm's length interest issues, see defendant's Response to Request for Admission 2.44.

REQUEST FOR ADMISSION 2.51. The adjustments described in Request for Admission 2.50 include the following amounts to which NatWest has agreed:

| Tax Year | Proposed Adjustment | Amount |
|---|---|---|
| 1983 | Sale of Property (Chrysler Stock Sale) | 7,853,110 |
| 1986 | Employee Benefits<br>Home Office Allocation | 405,849<br>21,903 |
| 1987 | Employee Benefits<br>Home Office Allocation<br>Other Deductions<br>Bad Debts | 332,710<br>3,534,289<br>(555,350)<br>(785,311) |

(*See* RARs.)

RESPONSE TO REQUEST FOR ADMISSION 2.51: See defendant's Response to Request for Admission 2.44.

REQUEST FOR ADMISSION 2.52. The adjustments described in Request for Admission 2.50 include the following amounts that defendant has withdrawn:

| Tax Year | Proposed Adjustment | Amount |
|---|---|---|
| 1986 | Net Loans | 84,426 |
| 1987 | Net Loans | 174,309 |

(*See* RARs.)

RESPONSE TO REQUEST FOR ADMISSION 2.52: See defendant's Response to Request for Admission 2.44.

REQUEST FOR ADMISSION 2.53. The adjustments described in Request for Admission 2.50 include the following amount which could change depending upon the final resolution of tax years subsequent to the years at issue:

| Tax Year | Proposed Adjustment | Amount |
|---|---|---|
| 1987 | Net Operating Loss Deduction | (12,918,821) |

(*See* RARs.)

RESPONSE TO REQUEST FOR ADMISSION 2.53: See defendant's Response to Request for Admission 2.44.

REQUEST FOR ADMISSION 2.54. The adjustments described in Request for Admission 2.50 include the following amounts asserted by the I.R.S. under Section 882, Treasury Regulations section 1.882-5 and Section 864(c)(4)(D):

| Tax Year | Proposed adjustments to interest income: | Proposed adjustments to interest expense: |
|---|---|---|
| 1981 | (125,857,675) | 152,605,551 |
| 1982 | (132,049,714) | 147,337,977 |
| 1983 | (88,243,894) | 101,652,347 |
| 1984 | (104,153,633) | 126,092,694 |
| 1985 | (79,404,169) | 93,539,801 |
| 1986 | (87,081,845) | 108,064,089 |
| 1987 | (131,596,705) | 174,292,853 |

(See RARs; see also Def.'s Request for Admissions 1.23 and Pl.'s Response thereto.)

RESPONSE TO REQUEST FOR ADMISSION 2.54: See defendant's Response to Request for Admission 2.44.

REQUEST FOR ADMISSION 2.55. The I.R.S., in its RARs, offered no basis other than Sections 882, Treasury Regulations section 1.882-5 and Section 864(c)(4)(D) for adjustments to plaintiff's interest expense and interest income. (*See* RARs.)

RESPONSE TO REQUEST FOR ADMISSION 2.55: Defendant objects to this request on the ground that it presents argument and characterization of documents. Subject to that objection, defendant denies the request. The IRS's adjustments provided for the attribution of capital to the branches on an arm's length basis, as if it were an independent, separate enterprise, and to reflect arm's length interest rates.

REQUEST FOR ADMISSION 2.56. The RAR for the taxable year ended December 31, 1987 proposed an Environmental Tax increase of $38,974, bringing the total tax to $53,771, but did not include a correlative regular tax deduction for Environmental Tax. Both of these figures could change depending upon the final resolution of the years at issue. (*See* RARs.)

RESPONSE TO REQUEST FOR ADMISSION 2.56: See defendant's Response to Request for Admission 2.44.

REQUEST FOR ADMISSION 2.57. The adjusted U.S. federal taxable income of NatWest as determined by the I.R.S. for each of the years at issue was as follows:

| Tax Year | Amount |
|---|---|
| 1981 | 31,875,618 |
| 1982 | 28,154,833 |
| 1983 | 38,336,127 |
| 1984 | 29,948,701 |

| Tax Year | Amount |
|---|---|
| 1985 | 54,676,775 |
| 1986 | 64,457,339 |
| 1987 | 46,808,885 |
| **Total** | 294,258,278 |

(*See* RARs.)

RESPONSE TO REQUEST FOR ADMISSION 2.57: See defendant's Response to Request for Admission 2.44.

REQUEST FOR ADMISSION 2.58. The U.S. federal income tax liability of NatWest as determined by the I.R.S. for each of the years at issue, excluding interest thereon, was as follows:

| Tax Year | Amount |
|---|---|
| 1981 | 14,154,278 |
| 1982 | 12,546,863 |
| 1983 | 16,105,789 |
| 1984 | 13,084,832 |
| 1985 | 24,937,042 |
| 1986 | 29,528,505 |
| 1987 | 18,620,521 |
| **Total** | 128,977,830 |

(*See* RARs.)

RESPONSE TO REQUEST FOR ADMISSION 2.58: See defendant's Response to Request for Admission 2.44.

REQUEST FOR ADMISSION 2.59. The U.S. federal income tax liability shown on NatWest's original Form 1120F U.S. federal income tax return or as adjusted prior to issuance of the RARs for each of the years at issue based on the amounts of U.S. federal taxable income shown on Request for Admission 2.48 was as follows:

| Tax Year | Amount |
|---|---|
| 1981 | 1,850,255 |
| 1982 | 5,514,262 |
| 1983 | 7,759,280 |
| 1984 | 2,992,864 |
| 1985 | 18,434,651 |
| 1986 | 19,641,070 |
| 1987 | 304,302 |
| **Total** | 56,496,684 |

(*See* RARs.)

RESPONSE TO REQUEST FOR ADMISSION 2.59: See defendant's Response to Request for Admission 2.44.

REQUEST FOR ADMISSION 2.60. The deficiency in U.S. federal income tax due by NatWest for each of the years at issue as determined by the I.R.S., excluding interest thereon, was as follows:

| Tax Year | Amount |
|---|---|
| 1981 | 12,304,023 |
| 1982 | 7,032,601 |
| 1983 | 8,346,509 |

| Tax Year | Amount |
|---|---|
| 1984 | 10,091,968 |
| 1985 | 6,502,391 |
| 1986 | 9,887,435 |
| 1987 | 18,316,219 |
| **Total** | 72,481,146 |

(*See* RARs.)

RESPONSE TO REQUEST FOR ADMISSION 2.60: See defendant's Response to Request for Admission 2.44.

REQUEST FOR ADMISSION 2.61. The U.S. federal income tax payments made by NatWest with respect to all of the U.S. branches to the I.R.S. for each of the years at issue were as follows:

U.S. Federal Income Tax Payments for the Years at Issue

| Tax Year | 1981 | 1982 | 1983 | 1984 | 1985 | 1986 | 1987 |
|---|---|---|---|---|---|---|---|
| Prior Year Overpayment[1] | 600,170 | 1,500,000 | 56,411 | 1,600,000 | 257,136 | 0 | 0 |
| Current Year Estimated Payments[2] | 4,250,000 | 4,000,000 | 10,035,000 | 1,650,000 | 16,340,000 | 20,011,000 | 6,953,000 |
| Payment Per Form 7004[3] | 0 | 0 | 0 | 0 | 1,002,864 | 567,000 | 406,000 |
| Amount Paid Original Return[4] | 0 | 0 | 0 | 0 | 834,651 | 0 | 0 |
| Amount Claimed as Refund on Original Return[5] | (1,594,320) | 0 | (732,131) | 0 | 0 | (936,930) | (1,767,422) |
| Amount Credited to Estimated Tax on Original Return[6] | (1,500,000) | (56,411) | (1,600,000) | (257,136) | 0 | 0 | 0 |
| Refund Per Form 1139[7] | 0 | 0 | 0 | 0 | 0 | 0 | (5,287,276) |
| Tax Paid Per Form 870 dated 08/23/89[8] | 94,405 | 70,673 | 0 | 0 | 0 | 0 | 0 |
| Tax Paid in Response to RARs[9] | 12,304,023 | 7,032,601 | 8,346,509 | 10,091,968 | 6,502,391 | 9,887,435 | 18,316,219 |
| Aggregate Tax Payments | 14,154,278 | 12,546,86 | 16,105,789 | 13,084,832 | 24,937,042 | 29,528,505 | 18,620,521 |

1 - *See* INT504-00598 (line 6(a), 1981 Form 1120F); INT504-00634 (line 6(a), 1982 Form 1120F); INT504-00680 (line 6(a), 1983 Form 1120F); INT504-00716 (line 6(a), 1984 Form 1120F); INT504-00742 (line 6(a), 1985 Form 1120F); INT504-00782 (line 6(a), 1986 Form 1120F); INT504-00824 (line 6(a), 1987 Form 1120F).

2, 3, 4, - *See* Def.'s Ans. to 1st Amended Compl. at ¶3; 1st Amended Compl., Ex. 1.

5 - *See* INT504-00598 (line 10, 1981 Form 1120F); INT504-00634 (line 10, 1982 Form 1120F); INT504-00680 (line 10, 1983 Form 1120F); INT504-00716 (line 10, 1984 Form 1120F); INT504-00742 (line 10, 1985 Form 1120F); INT504-00782 (line 10, 1986 Form 1120F); INT504-00824 (line 11, 1987 Form 1120F).

6 - *See* INT504-00598 (line 10, 1981 Form 1120F); INT504-00634 (line 10, 1982 Form 1120F); INT504-00680 (line 10, 1983 Form 1120F); INT504-00716 (line 10, 1984 Form 1120F); INT504-00742 (line 10, 1985 Form 1120F); INT504-00782 (line 10, 1986 Form 1120F); INT504-00824 (line 11, 1987 Form 1120F).

7 - *See* RAR at 28.

8 - *See* Pl.'s Resp. to Def.'s Interrog. 1.04, Ex. B at B0003 (1981), B0004 (1982), and B0005 (copies of checks for $223,518 and $139,781 payable to IRS).

9 - These tax amounts and the deficiency interest thereon were paid by: (1) application of a $50,000,000 deposit in the nature of a cash bond; (2) application of a $40,000,000 deposit in the nature of a cash bond; (3) a payment of $34,446,842; and (4) a payment of $55,802,939. *See* Pl.'s Resp. to Def.'s Interrog. 1.12, Ex. F at F00010 (1981 through 1985) *and* F00020 (1986 and 1987); *see also* F00031 (IRS Receipt for Payment of Taxes in the amount of $50,000,000); F00024-00025 (IRS stamp acknowledging receipt of $40,000,000 check); F00022 (copy of check for $34,446,842.00 payable to IRS); F00023 (copy of check for $55,802,939.00 payable to IRS).

RESPONSE TO REQUEST FOR ADMISSION 2.61: See defendant's Response to Request for Admission 2.44.

REQUEST FOR ADMISSION 2.62. The interest paid by NatWest to the Internal Revenue Service Center in Philadelphia, PA on May 31, 1995 and June 8, 1995, on the tax deficiencies asserted in the RARs, was as follows:

| Tax Year | Interest Paid |
|---|---|
| 1981 | 28,838,978 |
| 1982 | 13,068,220 |
| 1983 | 14,107,184 |
| 1984 | 15,045,416 |
| 1985 | 7,693,000 |
| 1986 | 11,467,996 |
| 1987 | 17,547,841 |
| **Total** | 107,768,635 |

(*See* Pl.'s Resp. to Def.'s Interrog. 1.12, Ex. F at F00010-00011 (1981 through 1985) *and* F00020 (1986 and 1987); *see also* F00031 (IRS Receipt for Payment of Taxes in the amount of $50,000,000); F00024-00025 (IRS stamp acknowledging receipt of $40,000,000 check); F00022 (copy of check for $34,446,842.00 payable to IRS); F00023 (copy of check for $55,802,939.00 payable to IRS) (sum of check amounts, $180,249,781, less $107,768,635 aggregate interest, *above*, equals $72,481,146 additional taxes paid per RARs); Request for Admission 2.61 above.)

RESPONSE TO REQUEST FOR ADMISSION 2.62: See defendant's Response to Request for Admission 2.44.

REQUEST FOR ADMISSION 2.63. The adjustments proposed under Section 882 and Treasury Regulations section 1.882-5 and Section 864(c)(4)(D) described in Request for

Admission 2.54 should be withdrawn in accordance with the Court's July 1999 Opinion and Order.

RESPONSE TO REQUEST FOR ADMISSION 2.63: See defendant's Response to Request for Admission 2.44.

REQUEST FOR ADMISSION 2.64. The interest income reported on NatWest's original Form 1120F U.S. federal income tax returns for the years 1981 through 1987 included the amounts of interest income accrued by the U.S. branches from each other as described in Request for Admission 2.37 above.

RESPONSE TO REQUEST FOR ADMISSION 2.64: See defendant's Responses to Requests for Admission 2.34, 2.37, and 2.44.

REQUEST FOR ADMISSION 2.65. The interest expense reported on NatWest's original Form 1120F U.S. federal income tax returns for the years 1981 through 1987 included the amounts of interest expense accrued by the U.S. branches to each other as described in Request for Admission 2.42 above.

RESPONSE TO REQUEST FOR ADMISSION 2.65: See defendant's Responses to Requests for Admission 2.34, 2.42, and 2.44.

REQUEST FOR ADMISSION 2.66. If all of the intra-U.S. interest expense described in Request for Admission 2.42 and intra-U.S. interest income described in Request for Admission 2.37 were eliminated from the taxable income of the U.S. branches, the following net additions to, or reductions of, taxable income would result for the years at issue:

| Tax Year | Addition to or (Reduction of) Taxable Income |
|---|---|

| Tax Year | Addition to or (Reduction of) Taxable Income |
|---|---|
| 1981 | (34,957) |
| 1982 | 23,991 |
| 1983 | (79,916) |
| 1984 | 231,163 |
| 1985 | 38,246 |
| 1986 | (3,974) |
| 1987 | 71,877 |

(*See* Amended Refund Claim, Schedules 1-7.)

RESPONSE TO REQUEST FOR ADMISSION 2.66: See defendant's Responses to Request for Admission 2.33 and 2.44.

REQUEST FOR ADMISSION 2.67. In its Amended Refund Claim, NatWest proposed to increase its taxable income by the amounts shown for taxable years 1982, 1984, 1985 and 1987 in Request for Admission 2.66, but did not propose to reduce its taxable income by the amounts shown for years 1981, 1983, and 1986 in Request for Admission 2.66. (*See* Amended Refund Claim and supporting schedules thereto.).

RESPONSE TO REQUEST FOR ADMISSION 2.67: See defendant's Response to Request for Admission 2.44. In addition, plaintiff's "Amended Refund Claim" is simply a statement by plaintiff's counsel of plaintiff's position, provided to defendant in response to the Court's Order. It is hearsay and is not admissible into evidence under any hearsay exception. The request therefore is irrelevant for this additional reason and is not calculated to lead the discovery of admissible evidence. See defendant's Response to Request for Admission 2.33

REQUEST FOR ADMISSION 2.68. The amounts of interest expense recorded on the profit and loss statements of the U.S. branches as payable to the Head Office and therefore included in the amounts described in Requests for Admission 2.38 above and reported on NatWest's original Form 1120F federal income tax returns for the tax years at issue included the following net amounts described in U.S. branch books and records as capital loan charges:

| Tax Year | Capital Loan Charge |
|---|---:|
| 1981 | 465,868 |
| 1982 | 209,433 |
| 1983 | 202,745 |
| 1984 | 309,459 |
| 1985 | 0 |
| 1986 | 2,336,260 |
| 1987 | 1,936,537 |

(*See* Pl.'s Report on the Capital Issue dated October 29, 2004, Ex. C, Report of Kevin D. Bandoian at Ex. 1, Ex. 3 [hereinafter Bandoian Rep.].)

RESPONSE TO REQUEST FOR ADMISSION 2.68: See defendant's responses to Requests for Admission 2.33, 2.38, and 2.44.

REQUEST FOR ADMISSION 2.69. During the years at issue, any capital loan charges paid by the U.S. branches were calculated on a balance (referred to herein as a "net capital balance") consisting of the sum of the balances of Retained Profits or Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets less the balance of Premises and Equipment, all as of the prior year-end. (*See* Bandoian Rep. at 4.)

RESPONSE TO REQUEST FOR ADMISSION 2.69: Discovery has not been completed, and defendant's experts are reviewing Mr. Bandoian's report. Defendant's experts' report has not been prepared and is not yet due under the Court's October 5, 2004, subject to further modification in accordance with defendant's motion for enlargement of the discovery period. Defendant's position on this request will be expressed in and consistent with its experts' report. The request is oppressive and an abuse of the discovery process. See also defendant's Responses to Plaintiff's Interrogatories 4.01 and 4.06. Subject to its objections, defendant states that it has made reasonable inquiry and the information known or readily obtainable by defendant is insufficient to enable it to admit or deny the request.

REQUEST FOR ADMISSION 2.70. During all of the years at issue, except with respect to the first quarter of 1981, the net capital balance used to calculate capital loan charges for a given year was adjusted to reflect any reduction in the components of the net capital balance (e.g., by repatriation) within the first quarter of that year. (*See* Bandoian Rep. at 4.)

RESPONSE TO REQUEST FOR ADMISSION 2.70: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.71. During the years at issue, the capital loan charges paid by the U.S. branches were calculated using arm's-length rates of interest. (*See* Bandoian Rep. at 4.)

RESPONSE TO REQUEST FOR ADMISSION 2.71: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.72. During the years at issue, the capital loan charges paid or received in any given quarter were calculated using the same rate of interest for each

branch, except for one quarter in 1986, when the actual rates used by the U.S. branches were all within 0.5875% of each other. (*See* Bandoian Rep. at 4.)

RESPONSE TO REQUEST FOR ADMISSION 2.72: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.73. During the years at issue, the capital loan charges and net capital balances on which they were accrued were calculated on a combined basis for the New York branch and IBF. (*See* Bandoian Rep. at 4.)

RESPONSE TO REQUEST FOR ADMISSION 2.73: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.74. For the years 1981 through 1985, the U.S. branches paid and deducted a capital loan charge only with respect to the New York branch and IBF and only on positive net capital balances. (*See* Bandoian Rep. at 4.)

RESPONSE TO REQUEST FOR ADMISSION 2.74: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.75. For the taxable year 1986, all of the U.S. branches paid and deducted capital loan charges, but only on positive net capital balances. (*See* Bandoian Rep. at 4.)

RESPONSE TO REQUEST FOR ADMISSION 2.75: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.76. For the taxable year 1987, all of the U.S. branches paid and deducted capital loan charges on positive net capital balances and received payments

(and reduced interest expense accordingly) on negative net capital balances. (*See* Bandoian Rep. at 4.)

RESPONSE TO REQUEST FOR ADMISSION 2.76: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.77. During the years at issue, the New York branch collected any capital loan charges for the U.S. branches and paid them to the head office. (*See* Bandoian Rep. at 4.)

RESPONSE TO REQUEST FOR ADMISSION 2.77: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.78. For the year ended December 31, 1981, the total capital loan charges paid by the U.S. branches to PLC and deducted on the U.S. federal tax return was $465,868. (*See* Bandoian Rep. at Ex. 1: 1981-1 to 1981-6, Ex. 2, Ex. 3.)

RESPONSE TO REQUEST FOR ADMISSION 2.78: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.79. Apart from the amount described in Request for Admission 2.78, during the year ended December 31, 1981, neither the profit and loss statements of the U.S. branches nor the U.S. federal income tax return of NatWest reflected any deduction of interest with respect to any balance in any of the accounts entitled Retained Profits or Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets.

RESPONSE TO REQUEST FOR ADMISSION 2.79: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.80. For the year ended December 31, 1982, the total capital loan charges paid by the U.S. branches to PLC and deducted on the U.S. federal tax return was $209,433. (*See* Bandoian Rep. at Ex. 1: 1982-1 to 1982-5, Ex. 2, Ex. 3.)

RESPONSE TO REQUEST FOR ADMISSION 2.80: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.81. Apart from the amount described in Request for Admission 2.80, during the year ended December 31, 1982, neither the profit and loss statements of the U.S. branches nor the U.S. federal income tax return of NatWest reflected any deduction of interest with respect to any balance in any of the accounts entitled Retained Profits or Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets.

RESPONSE TO REQUEST FOR ADMISSION 2.81: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.82. For the year ended December 31, 1983, the total capital loan charges paid by U.S. branches to PLC and deducted on the U.S. federal tax return was $202,745. (*See* Bandoian Rep. at Ex. 1: 1983-1 to 1983-5, Ex. 2, Ex. 3.)

RESPONSE TO REQUEST FOR ADMISSION 2.82: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.83. Apart from the amount described in Request for Admission 2.82, during the year ended December 31, 1983, neither the profit and loss statements of the U.S. branches nor the U.S. federal income tax return of NatWest reflected any deduction of interest with respect to any balance in any of the accounts entitled Retained Profits or

Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets.

RESPONSE TO REQUEST FOR ADMISSION 2.83: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.84. For the year ended December 31, 1984, the total capital loan charges paid by U.S. branches to PLC and deducted on the U.S. federal tax return was $390,459. (*See* Bandoian Rep. at Ex. 1: 1984-1 to 1984-5, Ex. 2, Ex. 3.)

RESPONSE TO REQUEST FOR ADMISSION 2.84: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.85. Apart from the amount described in Request for Admission 2.84, during the year ended December 31, 1984, neither the profit and loss statements of the U.S. branches nor the U.S. federal income tax return of NatWest reflected any deduction of interest with respect to any balance in any of the accounts entitled Retained Profits or Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets.

RESPONSE TO REQUEST FOR ADMISSION 2.85: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.86. During the year ended December 31, 1985, neither the profit and loss statements of the U.S. branches nor the U.S. federal income tax return of NatWest reflected any deduction of interest with respect to any balance in any of the accounts entitled Retained Profits or Accumulated Losses, Profit and Loss, Balance due to HO re Capital

Loan, and Balance due to HO re Fixed Assets. (*See* Bandoian Rep. at Ex. 1: 1985-1 to 1985-6, Ex. 2, Ex. 3.)

RESPONSE TO REQUEST FOR ADMISSION 2.86: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.87. For the year ended December 31, 1986, plaintiff conceded capital loan charges in the aggregate amount of $2,603,583. (*See* Bandoian Rep. at Ex. 1: 1986-1, Ex. 3.)

RESPONSE TO REQUEST FOR ADMISSION 2.87: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.88. For the year ended December 31, 1986, plaintiff made an over-concession with regard to capital loan charges for the fourth quarter for the Nassau branch in the amount of $266,510. (*See* Bandoian Rep. at Ex. 1: 1986-4, Ex. 2, Ex. 3.)

RESPONSE TO REQUEST FOR ADMISSION 2.88: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.89. For the year ended December 31, 1986, plaintiff made an over-concession with regard to capital loan charges for the fourth quarter for the San Francisco agency in the amount of $813. (*See* Bandoian Rep. at Ex. 1: 1986-6, Ex. 2, Ex. 3.)

RESPONSE TO REQUEST FOR ADMISSION 2.89: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.90. For the year ended December 31, 1986, the total capital loan charges paid by the U.S. branches to PLC and deducted on the U.S. federal tax return was $2,336,260. (*See* Bandoian Rep. at Ex. 1: 1986-1 to 1986-6, Ex. 2, Ex. 3.)

RESPONSE TO REQUEST FOR ADMISSION 2.90: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.91. Apart from the amount described in Request for Admission 2.90, during the year ended December 31, 1986, neither the profit and loss statements of the U.S. branches nor the U.S. federal income tax return of NatWest reflected any deduction of interest with respect to any balance in any of the accounts entitled Retained Profits or Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets.

RESPONSE TO REQUEST FOR ADMISSION 2.91: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.92. For the year ended December 31, 1987, the total capital loan charges paid by U.S. branches to PLC and deducted on the U.S. federal tax return was $1,936,537. (*See* Bandoian Rep. at Ex. 1: 1987-1 to 1987-6, Ex. 2, Ex. 3.)

RESPONSE TO REQUEST FOR ADMISSION 2.92: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.93. Apart from the amount described in Request for Admission 2.92, during the year ended December 31, 1987, neither the profit and loss statements nor the U.S. federal income tax return of the U.S. branches reflected any deduction of interest with respect to any balance in any of the accounts entitled Retained Profits or Accumulated Losses; Profits and Loss; Balance due to HO re Capital Loan; or Balance due to HO re Fixed Assets.

RESPONSE TO REQUEST FOR ADMISSION 2.93: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.94. Apart from the amounts identified in Requests for Admission 2.78, 2.80, 2.82, 2.84, 2.90, and 2.92, the U.S. branches did not pay or deduct any interest during the years at issue on amounts designated as capital on their books and records.

RESPONSE TO REQUEST FOR ADMISSION 2.94: See defendant's Response to Request for Admission 2.69. In addition, since the six U.S. branches did not designate any amounts as capital on their books and records, it is nonsensical to ask whether interest was deducted on such amounts.

REQUEST FOR ADMISSION 2.95. Apart from the amounts identified in Requests for Admission 2.78, 2.80, 2.82, 2.84, 2.90, and 2.92, the U.S. branches did not pay or deduct any interest during the years at issue on amounts allotted to the U.S. branches for capital purposes.

RESPONSE TO REQUEST FOR ADMISSION 2.95: Denied.

REQUEST FOR ADMISSION 2.96. Plaintiff has conceded all capital loan charges reflected in its books and records. (*See* Bandoian Rep. at 9.)

RESPONSE TO REQUEST FOR ADMISSION 2.96: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.97. The aggregate amount conceded by plaintiff as capital loan charges exceeded the actual capital loan charges deducted by plaintiff on its U.S. federal income tax returns during the years 1981 through 1987 in the amount of $267,323. (*See* Bandoian Rep. at 9).

RESPONSE TO REQUEST FOR ADMISSION 2.97: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.98. Amounts recorded on the balance sheets of the U.S. branches as "Retained Profits" (which were assigned the account code "LZC") constitute amounts that were designated as capital on the balance sheets of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes, such that any interest expense accrued thereon was not deductible under the Treaty during the years at issue. (*See* Pl.'s response to Def.'s Request for Admission 1.46.)

RESPONSE TO REQUEST FOR ADMISSION 2.98: Denies that any line items were designated as capital on the balance sheets of the U.S. branches. Discovery has not been completed, and defendant's experts have not yet prepared their report. See defendant's Responses to Request for Admission 2.69 and Interrogatory 4.01.

REQUEST FOR ADMISSION 2.99. Amounts recorded on the balance sheets of the U.S. branches as "Profit and Loss" (which were assigned the account code "LPC") constitute amounts that were designated as capital on the balance sheets of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes, such that any interest expense accrued thereon was not deductible under the Treaty during the years at issue. (*See* Pl.'s response to Def.'s Request for Admission 1.46.)

RESPONSE TO REQUEST FOR ADMISSION 2.99: Denies that any line items were designated as capital on the balance sheets of the U.S. branches. Discovery has not been completed, and defendant's experts have not yet prepared their report. See defendant's Responses to Request for Admission 2.69 and Interrogatory 4.01.

REQUEST FOR ADMISSION 2.100. Amounts recorded on the balance sheets of the U.S. branches as "Balance due to HO re Fixed Assets" (which were assigned the account code "LFB") constitute amounts that were designated as capital on the books of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes, such that any interest expense accrued thereon was not deductible under the Treaty during the years at issue. (*See* Pl.'s response to Def.'s Request for Admission 1.46.)

RESPONSE TO REQUEST FOR ADMISSION 2.100: Denies that any line items were designated as capital on the balance sheets of the U.S. branches. Discovery has not been completed, and defendant's experts have not yet prepared their report. See defendant's Responses to Request for Admission 2.69 and Interrogatory 4.01.

REQUEST FOR ADMISSION 2.101. Amounts recorded on the balance sheets of the U.S. branches as "Balance due to HO re Capital Loans" (which were assigned the account code "LEB") constitute amounts that were designated as capital on the books of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes, such that any interest expense accrued thereon was not deductible under the Treaty during the years at issue. (*See* Pl.'s response to Def.'s Request for Admission 1.46.)

RESPONSE TO REQUEST FOR ADMISSION 2.101: Denies that any line items were designated as capital on the balance sheets of the U.S. branches. s, and defendant's experts have not yet prepared their report. See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.102. Amounts recorded on the balance sheets of the U.S. branches as "Provision for B&DD ("Bad and Doubtful Debts") – Specific" (which were assigned the account code "LQC") constitute amounts that were designated as capital on the

books of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes, such that any interest expense accrued thereon was not deductible under the Treaty during the years at issue. (*See* Pl.'s response to Def.'s Request for Admission 1.46.)

RESPONSE TO REQUEST FOR ADMISSION 2.102: Denies that any line items were designated as capital on the balance sheets of the U.S. branches. Discovery has not been completed, and defendant's experts have not yet prepared their report. See defendant's Responses to Request for Admission 2.69 and Interrogatory 4.01.

REQUEST FOR ADMISSION 2.103. Amounts recorded on the balance sheets of the U.S. branches as "Provision for B&DD – Non-specific" (which were assigned the account code "LRC") constitute amounts that were designated as capital on the books of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes, such that any interest expense accrued thereon was not deductible under the Treaty during the years at issue. (*See* Pl.'s response to Def.'s Request for Admission 1.46.)

RESPONSE TO REQUEST FOR ADMISSION 2.103: Denies that any line items were designated as capital on the balance sheets of the U.S. branches. Discovery has not been completed, and defendant's experts have not yet prepared their report. See defendant's Responses to Request for Admission 2.69 and Interrogatory 4.01.

REQUEST FOR ADMISSION 2.104. Apart from amounts described in Requests for Admission 2.98 through 2.103, there were no amounts recorded on the balance sheets of the U.S. branches during the years at issue that were designated as capital of a U.S. branch or branches.

RESPONSE TO REQUEST FOR ADMISSION 2.104: See defendant's Responses to Requests for Admission 2.98-2.103. Otherwise admits, since no line items were designated as capital on the balance sheets of any of the six U.S. branches.

REQUEST FOR ADMISSION 2.105. Apart from amounts described in Requests for Admission 2.98 through 2.103, there were no amounts recorded on the balance sheets of the U.S. branches during the years at issue that were in fact allotted to a U.S. branch or branches for capital purposes.

RESPONSE TO REQUEST FOR ADMISSION 2.105: See defendant's Responses to Requests for Admission 2.98-2.103. Defendant's experts have not yet prepared their report. See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.106. Apart from the capital loan charges described in Requests for Admission 2.78, 2.80, 2.82, 2.84, 2.90, and 2.92 above, all interest expense deducted by the U.S. branches during the years at issue was on advances to the U.S. branches that were used in the ordinary course of the U.S. branches' banking business.

RESPONSE TO REQUEST FOR ADMISSION 2.106: Discovery has not been completed, and defendant's experts have not completed their analysis or prepared their report. See Defendant's Responses to Request for Admission 2.69 and Interrogatory 4.01.

REQUEST FOR ADMISSION 2.107. Accounts recorded in the U.S. branch balance sheets as "Freehold Premises" (ARD), "Leasehold Premises" (ASD), "Furniture and fittings" (ATD), and "Computer and other equipment" (AUD), represent the U.S. branches' "Fixed Assets."

RESPONSE TO REQUEST FOR ADMISSION 2.107: Admits.

REQUEST FOR ADMISSION 2.108. The aggregate of the amounts recorded as Fixed Assets on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Aggregate Fixed Assets |
|---|---|
| 1980 | 9,167,969 |
| 1981 | 11,969,698 |
| 1982 | 15,862,602 |
| 1983 | 16,631,023 |
| 1984 | 25,976,913 |
| 1985 | 23,322,331 |
| 1986 | 26,977,617 |
| 1987 | 29,477,629 |

(*See* 1980: NY-BS-8012-04, CH-BS-8012-04, SF-BS-8012-10; 1981: NY-BS-8112-04, CH-BS-8112-04, SF-BS-8112-04; 1982: NY-BS-8212-04, CH-BS-8212-04, SF-BS-8212-04; 1983: NY-BS-8312-04, CH-BS-8312-04, SF-BS-8312-05; 1984: NY-BS-8412-04, CH-BS-8412-02, SF-BS-8412-04; 1985: NY-BS-8512-04, CH-BS-8512-04, SF-BS-8512-04; 1986: NY-BS-8612-04, CH-BS-8612-04, SF-BS-8612-04; 1987: NY-BS-8712-04, CH-BS-8712-07, SF-BS-8712-06.)

RESPONSE TO REQUEST FOR ADMISSION 2.108: Plaintiff conducted banking operations in the United States through six separate U.S. branches. The branches engaged in transactions with each other and recorded those transactions, as well as other accounting information, on their separately prepared and maintained books and records. Profit and loss statements for each branch were generated by computer. At the end of each month, each branch

was required to make a financial report to plaintiff's head office which included manually prepared profit and loss statements. As a result of the short deadline after the close of a period to submit the reporting package (referred to as a "quick close), the reports were sent before any detailed analysis could be performed and were not fully corrected and reconciled. A department at PLC's head office was dedicated to making the necessary corrections and the results were used in preparing National Westminster Bank PLC's annual reports. (Tr. Tatz 1/23/2002 at 20: Tr. Samaroo at 41-42, 80; Bandoian Report at 23-24.). See Response to Request for Admission 2.26.

Under Article 7(1) of the U.S. – U.K. Treaty, plaintiff National Westminster Bank PLC is subject to tax in the United States on the profits attributable to its six U.S. branches. Article 7(2) provides that the profits attributable to a "permanent establishment" (*i.e.*, a branch) are those expected if it were an independent, separate and distinct enterprise. Each of the six branches kept separate books and records and engaged in transactions with each other, and consolidated or combined profit and loss statements of the six U.S. branches were never prepared. Each branch is a permanent establishment for purposes of the Treaty, and, consistent with plaintiff's practice of keeping separate books for each branch, the profits expected on an independent basis must be determined branch by branch. Thus, capital allotted to the branch in accordance with the Court's November 14, 2003 Opinion must be determined branch by branch. Likewise, the separate books of each branch, and the transactions between the U.S. branches, require that related party interest income and expense must be tested for arm's length dealing at each branch. While interest income and expense reported on the profit and loss statements of each of the six U.S. branches are relevant, aggregations of those amounts into combined totals is not the basis for applying either the November 14, 2003, Opinion, or the arm's length standard to particular

related party transactions. Plaintiff's request is therefore irrelevant, immaterial, and not calculated to lead to the discovery of relevant information and defendant objects to the request on those grounds. The requested admission is an improper effort to advance plaintiff's argument that the six U.S. branches may be combined in some manner, notwithstanding its own insistence that profits should be determined on the basis of the books and records, and its own practice of keeping separate branch records and not combining them. The requested admission also appears to be an improper effort to use the admission process to substitute for the introduction into evidence and consideration of plaintiff's separately kept branch books and records, which, as defendant will demonstrate at trial, were not pristine and reflect non-arm's length dealing.

Plaintiff's request also is unduly burdensome and oppressive. Plaintiff's request would require defendant to perform accounting work as a prerequisite to responding. As indicated above, each of the branches prepared separate profit and loss statements, revised them, and plaintiff never prepared combined statements. The books and records of the branches speak for themselves regarding interest income and expense, without demanding accounting exercises from defendant.

Subject to these objections, defendant states that it has made reasonable inquiry and the information known or readily obtainable by defendant is insufficient to enable it to admit or deny the request.

REQUEST FOR ADMISSION 2.109. The aggregate of the provisions for "B&DD - Specific" recorded on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Provision for B&DD - Specific |
|---|---|

| Tax Year | Provision for B&DD - Specific |
|---|---|
| 1980 | 4,072,745 |
| 1981 | 3,834,232 |
| 1982 | 6,829,613 |
| 1983 | 11,373,811 |
| 1984 | 4,757,958 |
| 1985 | 7,111,870 |
| 1986 | 7,988,675 |
| 1987 | 55,008,194 |

(*See* 1980: NY-BS-8012-02, CH-BS-8012-02, SF-BS-8012-04, NS-BS-8012-06; 1981: NY-BS-8112-02, CH-BS-8112-02, SF-BS-8112-02, NS-BS-8112-02. 1982: NY-BS-8212-02, CH-BS-8212-02, SF-BS-8212-02, NS-BS-8212-02; 1983: NY-BS-8312-02, CH-BS-8312-02, SF-BS-8312-02, NS-BS-8312-02; 1984: NY-BS-8412-02, CH-BS-8412-06, SF-BS-8412-02, IBF-BS-8412-02, NS-BS-8412-02; 1985: NY-BS-8512-02, CH-BS-8512-02, SF-BS-8512-02, IBF-BS-8512-02, NS-BS-8512-02; 1986: NY-BS-8612-02, CH-BS-8612-02, SF-BS-8612-02, IBF-BS-8612-02, NS-BS-8612-02, GC-BS-8612-02; 1987: NY-BS-8712-02, CH-BS-8712-03, SF-BS-8712-02, IBF-BS-8712-02, NS-BS-8712-02, GC-BS-8712-02.)

RESPONSE TO REQUEST FOR ADMISSION 2.109: See defendant's Response to Request for Admission 2.108.

REQUEST FOR ADMISSION 2.110. The aggregate of the provisions for "B&DD - Non-Specific" recorded on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Provision for B&DD - Non-Specific |
|---|---|

| Tax Year | Provision for B&DD - Non-Specific |
|---|---|
| 1980 | 10,539,202 |
| 1981 | 10,807,318 |
| 1982 | 10,363,993 |
| 1983 | 13,108,406 |
| 1984 | 11,851,486 |
| 1985 | 12,679,446 |
| 1986 | 20,013,077 |
| 1987 | 20,013,077 |

(*See* 1980: NY-BS-8012-02, CH-BS-8012-02, SF-BS-8012-05, NS-BS-8012-06; 1981: NY-BS-8112-02, CH-BS-8112-02, SF-BS-8112-02, NS-BS-8112-02; 1982: NY-BS-8212-02, CH-BS-8212-02, SF-BS-8212-02, NS-BS-8212-02; 1983: NY-BS-8312-02, CH-BS-8312-02, SF-BS-8312-02, NS-BS-8312-02; 1984: NY-BS-8412-02, CH-BS-8412-06, SF-BS-8412-02, IBF-BS-8412-02, NS-BS-8412-02; 1985: NY-BS-8512-02, CH-BS-8512-02, SF-BS-8512-02, IBF-BS-8512-02, NS-BS-8512-02; 1986: NY-BS-8612-02, CH-BS-8612-02, SF-BS-8612-02, IBF-BS-8612-02, NS-BS-8612-02, GC-BS-8612-02; 1987: NY-BS-8712-02, CH-BS-8712-03, SF-BS-8712-02, IBF-BS-8712-02, NS-BS-8712-02, GC-BS-8712-02.)

RESPONSE TO REQUEST FOR ADMISSION 2.110: See defendant's Response to Request for Admission 2.108.

REQUEST FOR ADMISSION 2.111. The U.S. branches did not transfer or repatriate to the head office any of their Retained Profits generated during the years at issue. (*See* Report of Kevin Bandoian dated Jan. 14, 2002, Ex. 6.)

RESPONSE TO REQUEST FOR ADMISSION 2.111: See defendant's Response to Request for Admission 2.69.

REQUEST FOR ADMISSION 2.112. The aggregate of the balances recorded as "Retained Profits" (net of any amounts recorded as "Accumulated Losses") on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Aggregate Retained Profits |
|---|---|
| 1980 | 15,677,567 |
| 1981 | 2,564,846 |
| 1982 | 4,312,898 |
| 1983 | 19,625,765 |
| 1984 | 25,993,019 |
| 1985 | 51,706,718 |
| 1986 | 63,301,445 |
| 1987 | 29,732,486 |

(*See* 1980: NY-BS-8012-02, CH-BS-8012-04, SF-BS-8012-05, NS-BS-8012-06, 1981: NY-BS-8112-02, CH-BS-8112-04, SF-BS-8112-02, NS-BS-8112-02; 1982: NY-BS-8212-02, CH-BS-8212-04, SF-BS-8212-02, NS-BS-8212-02; 1983: NY-BS-8312-04, CH-BS-8312-02, SF-BS-8312-02, NS-BS-8312-02, IBF-BS-8312-02; 1984: NY-BS-8412-04, CH-BS-8412-06, SF-BS-8412-02, NS-BS-8412-02, IBF-BS-8412-02; 1985: NY-BS-8512-04, CH-BS-8512-02, SF-BS-8512-02, NS-BS-8512-02, IBF-BS-8512-02, GC-BS-8512-09; 1986: NY-BS-8612-02, CH-BS-8612-04, SF-BS-8612-02, NS-BS-8612-02, IBF-BS-8612-02, Box 156-17 (GC); 1987: NY-BS-8712-04, CH-BS-8712-03, SF-BS-8712-02, NS-BS-8712-02, IBF-BS-8712-02, GC-BS-8712-02.)

RESPONSE TO REQUEST FOR ADMISSION 2.112: See defendant's Response to Request for Admission 2.108.

REQUEST FOR ADMISSION 2.113. The aggregate of the balances recorded as "Balance due to HO re Capital Loans" on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Aggregate Balance due to HO re Capital Loans |
|---|---|
| 1980 | 3,223,184 |
| 1981 | 869,893 |
| 1982 | 900,770 |
| 1983 | 645,032 |
| 1984 | 42,437 |
| 1985 | 1,085,000 |
| 1986 | 0 |
| 1987 | 0 |

(*See* 1980: NY-BS-8012-01, CH-BS-8012-01, SF-BS-8012-02, NS-BS-8012-05; 1981: NY-BS-8112-01, CH-BS-8112-01, SF-BS-8112-01, NS-BS-8112-01; 1982: NY-BS-8212-01, CH-BS-8212-01, SF-BS-8212-01, NS-BS-8212-01; 1983: NY-BS-8312-01, CH-BS-8312-01, SF-BS-8312-01, NS-BS-8312-01, IBF-BS-8312-01; 1984: NY-BS-8412-01, CH-BS-8412-05, SF-BS-8412-01, NS-BS-8412-01, IBF-BS-8412-01; 1985: NY-BS-8512-01, CH-BS-8512-01, SF-BS-8512-01, NS-BS-8512-01, IBF-BS-8512-01; 1986: NY-BS-8612-01, CH-BS-8612-01, SF-BS-8612-01, NS-BS-8612-01, IBF-BS-8612-01, GC-BS-8612-01; 1987: NY-BS-8712-01, CH-BS-8712-01, SF-BS-8712-01, NS-BS-8712-01, IBF-BS-8712-01, GC-BS-8712-01.)

RESPONSE TO REQUEST FOR ADMISSION 2.113: See defendant's Response to Request for Admission 2.108.

REQUEST FOR ADMISSION 2.114. The aggregate of the balances recorded as "Balance due to HO re Fixed Assets" on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Aggregate Balance due to HO re Fixed Assets |
|---|---|
| 1980 | 8,344,816 |
| 1981 | 9,033,064 |
| 1982 | 9,002,188 |
| 1983 | 9,257,926 |
| 1984 | 9,860,521 |
| 1985 | 8,817,958 |
| 1986 | 0 |
| 1987 | 0 |

(*See* 1980: NY-BS-8012-01, CH-BS-8012-01, NS-BS-8012-05, SF-BS-8012-02; 1981: NY-BS-8112-01, CH-BS-8112-01, SF-BS-8112-01, NS-BS-8112-01; 1982: NY-BS-8212-01, CH-BS-8212-01, SF-BS-8212-01, NS-BS-8212-01; 1983: NY-BS-8312-01, CH-BS-8312-01, SF-BS-8312-01, NS-BS-8312-01, IBF-BS-8312-01; 1984: NY-BS-8412-01, CH-BS-8412-05, SF-BS-8412-01, NS-BS-8412-01, IBF-BS-8412-01; 1985: NY-BS-8512-01, CH-BS-8512-01, SF-BS-8512-01, NS-BS-8512-01, IBF-BS-8512-01; 1986: NY-BS-8612-01, CH-BS-8612-01, SF-BS-8612-01, NS-BS-8612-01, IBF-BS-8612-01, GC-BS-8612-01; 1987: NY-BS-8712-01, CH-BS-8712-01, SF-BS-8712-01, NS-BS-8712-01, IBF-BS-8712-01, GC-BS-8712-01.)

RESPONSE TO REQUEST FOR ADMISSION 2.114: See defendant's Response to Request for Admission 2.108.

REQUEST FOR ADMISSION 2.115. The aggregate of the balances recorded as "Profit and Loss" on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Aggregate Profit & Loss Balance |
|---|---|
| 1980 | 0 |
| 1981 | 0 |
| 1982 | 4,604,145 |
| 1983 | 5,117,386 |
| 1984 | 5,109,745 |
| 1985 | 0 |
| 1986 | 0 |
| 1987 | (6,072,870) |

(*See* 1982: NS-BS-8212-02; 1983: CH-BS-8312-02, NS-BS-8312-02; 1984: NS-BS-8412-02; 1987: NY-BS-8712-04.)

RESPONSE TO REQUEST FOR ADMISSION 2.115: See defendant's Response to Request for Admission 2.108.

REQUEST FOR ADMISSION 2.116. The aggregate of the amounts that either were designated as capital on the books of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes (i.e., the provisions for "B&DD - Specific", "B&DD - Non-Specific", "Retained Profits" (net of any "Accumulated Losses"), "Balance due to HO re Capital Loans", "Balance due to HO re Fixed Assets", and balances recorded as "Profit and Loss") as of December 31st of the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Aggregate Capital |
| --- | --- |
| 1980 | 41,857,514 |
| 1981 | 27,109,353 |
| 1982 | 36,013,607 |
| 1983 | 59,128,326 |
| 1984 | 57,615,166 |
| 1985 | 81,400,992 |
| 1986 | 91,303,197 |
| 1987 | 98,680,887 |

*See* Requests for Admission 2.109 through 2.115.

RESPONSE TO REQUEST FOR ADMISSION 2.116: See defendant's Responses to Request for Admission 2.108.

REQUEST FOR ADMISSION 2.117. All of the interest income received and included in income by the U.S. branches during the years at issue reflected arm's-length market rates.

RESPONSE TO REQUEST FOR ADMISSION 2.117: Discovery has not been completed, and defendant's experts have not completed their analysis of this issue. Defendant's experts' report has not been prepared and is not yet due under the Court's October 5, 2004, subject to further modification in accordance with defendant's motion for enlargement of the discovery period. Defendant's position on this request will be expressed in and consistent with its experts' report. The request is oppressive and an abuse of the discovery process. See also defendant's Response to Plaintiff's Interrogatory 4.01. Subject to its objections, defendant states that it has made reasonable inquiry and the information known or readily obtainable by defendant is insufficient to enable it to admit or deny the request.

REQUEST FOR ADMISSION 2.118. All of the interest expense paid and deducted by the U.S. branches during the years at issue reflected arm's-length market rates.

RESPONSE TO REQUEST FOR ADMISSION 2.118: See defendant's Response to Request for Admission 2.117.

REQUEST FOR ADMISSION 2.119. The following table lists all of the adjustments to the U.S. federal taxable income of NatWest as set forth in the RARs with respect to all issues, excluding adjustments that are dependent on the outcome of subsequent years and computational adjustments that are dependent on resolution of all issues relating to the years at issue:

Adjustments to RAR Taxable Income

| Tax Year | 1981 | 1982 | 1983 | 1984 | 1985 | 1986 | 1987 |
|---|---|---|---|---|---|---|---|
| Reversal of adjustments to interest income[1] | 125,857,675 | 132,049,714 | 88,243,894 | 104,153,633 | 79,404,169 | 87,081,845 | 131,596,705 |
| Reversal of adjustments to interest expense[1] | (152,605,551) | (147,337,977) | (101,652,347) | (126,092,694) | (93,539,801) | (108,064,089) | (174,292,853) |
| Reversal of Net Loans Adjustment[2] | 0 | 0 | 0 | 0 | 0 | (84,426) | (174,309) |
| Elimination of Net Intra-U.S. Interest Expense[3] | 0 | 23,991 | 0 | 231,163 | 38,246 | 0 | 71,877 |
| Elimination of Capital Loan Charge[4] | 465,868 | 209,433 | 202,745 | 309,459 | 0 | 2,603,584 | 1,936,537 |
| Adjustment to NOL Carryback from 1990[5] | 0 | 0 | 0 | 0 | 0 | 0 | 3,385,279 |
| Aggregate Adjustments to RAR Taxable Income | (26,282,008) | (15,054,839) | (13,205,708) | (21,398,439) | (14,097,386) | (18,463,086) | (37,476,764) |

1 – *See* Request for Admission 2.54, above.
2 - *See* Request for Admission 2.52, above.
3 - *See* Requests for Admission 2.66 and 2.67, above.
4 - *See* Requests for Admission 2.68, 2.87 and 2.88, above.
5 -Two adjustments to the U.S. Branch's NOL Carryback were conceded by NatWest during the audit of its 1990 taxable year, resulting in an addition to income for the 1987 tax year of $3,385,279. *See* $912,566 agreed on Form 870-AD dated June 26, 1998 at 2, and $2,472,713 in closing agreement executed by NatWest on June 14, 1999. The NOL Carryback is subject to further adjustment depending on the resolution of taxable years not at issue here.

RESPONSE TO REQUEST FOR ADMISSION 2.119: See defendant's Response to Request for Admission 2.44.

REQUEST FOR ADMISSION 2.120. The U.S. federal taxable income of NatWest for each of the tax years at issue after adjustments described in Request for Admission 2.119 is:

| Tax Year | Taxable Income per RARs[1] ("A") | Aggregate Adjustments to RAR Taxable Income[2]("B") | Taxable Income After Adjustments (=A+B ) |
|---|---|---|---|
| 1981 | 31,875,618 | (26,282,008) | 5,593,610 |
| 1982 | 28,154,833 | (15,054,839) | 13,099,994 |
| 1983 | 38,336,127 | (13,205,708) | 25,130,419 |
| 1984 | 29,948,701 | (21,398,439) | 8,550,262 |
| 1985 | 54,676,775 | (14,097,386) | 40,579,389 |
| 1986 | 64,457,339 | (18,463,086) | 45,994,253 |
| 1987 | 46,808,885 | (37,476,764) | 9,332,121 |

1 - *See* Request for Admission 2.57, above.
2 - *See* Request for Admission 2.119, above.
3 - These adjustments do not reflect any adjustment for the deduction for Environmental Tax allowed under Section 164(a)(5)

RESPONSE TO REQUEST FOR ADMISSION 2.120: See defendant's Response to Request for Admission 2.44.

REQUEST FOR ADMISSION 2.121. The applicable effective federal income tax rates for the years at issue are:

| Tax Year | Effective Federal Income Tax Rate |
|---|---|
| 1981 | 46% |
| 1982 | 46% |
| 1983 | 46% |

| Tax Year | Effective Federal Income Tax Rate |
|---|---|
| 1984 | 46% |
| 1985 | 46% |
| 1986 | 46% |
| 1987 | 39.95068% |

(*See* Code §11(b) (1981-1987) (for explanation of 1987 blended rate *see* H.R. Rep. No. 99-841, at II - 159 (1986) (Conference Report to accompany H.R. 3838, the Tax Reform Act of 1986) (46% maximum corporate rate switches to 34% maximum rate for income taxable on or after July 1, 1987)).)

RESPONSE TO REQUEST FOR ADMISSION 2.121: See defendant's Response to Request for Admission 2.44.

REQUEST FOR ADMISSION 2.122. The tax effect of the adjustments described in Request for Admission 2.119 is:

| Tax Year | Effective Federal Income Tax Rate[1]("A") | Aggregate Adjustments to RAR Taxable Income[2] ("B") | Tax Effect of Adjustments (=A*B ) |
|---|---|---|---|
| 1981 | 46% | (26,282,008) | (12,089,724) |
| 1982 | 46% | (15,054,839) | (6,925,226) |
| 1983 | 46% | (13,205,708) | (6,074,626) |
| 1984 | 46% | (21,398,439) | (9,843,282) |
| 1985 | 46% | (14,097,386) | (6,484,798) |
| 1986 | 46% | (18,463,086) | (8,493,020) |
| 1987 | 39.95068% | (37,476,764) | (15,020,710) |
| **Total** | | | (64,931,386) |

1 - *See* Request for Admission 2.121, above.
2 - *See* Request for Admission 2.119, above.
3 - Note that the tax effect for 1987 reflects (i) the imposition of the Environmental Tax under Section 59A and (ii) the deductibility of that tax for regular tax purposes under Section 164(a)(5).

RESPONSE TO REQUEST FOR ADMISSION 2.122: See defendant's Response to Request for Admission 2.44.

REQUEST FOR ADMISSION 2.123. The reduction in tax liability is:

| Tax Year | Tax Effect of Adjustments[1] ("A") | Tax Liability per RARs[2] ("B") | Revised Tax Liability (=A+B ) |
|---|---|---|---|
| 1981 | (12,089,724) | 14,154,278 | 2,064,554 |
| 1982 | (6,925,226) | 12,546,863 | 5,621,637 |
| 1983 | (6,074,626) | 16,105,789 | 10,031,163 |
| 1984 | (9,843,282) | 13,084,832 | 3,241,550 |
| 1985 | (6,484,798) | 24,937,042 | 18,452,244 |
| 1986 | (8,493,020) | 29,528,505 | 21,035,485 |
| 1987 | (15,020,710) | 18,620,521 | 3,599,811 |
| **Total** | (64,931,386) | 128,977,830 | 64,046,444 |

1 - *See* Request for Admission 2.122, above.
2 - *See* Request for Admission 2.58, above.

RESPONSE TO REQUEST FOR ADMISSION 2.123: See defendant's Response to Request for Admission 2.44.

REQUEST FOR ADMISSION 2.124. The aggregate U.S. federal income taxes paid by NatWest for each of the tax years at issue is:

| Tax Year | Aggregate Tax Payments |
|---|---|

| Tax Year | Aggregate Tax Payments |
|---|---|
| 1981 | 14,154,278 |
| 1982 | 12,546,863 |
| 1983 | 16,105,789 |
| 1984 | 13,084,832 |
| 1985 | 24,937,042 |
| 1986 | 29,528,505 |
| 1987 | 18,620,521 |
| **Total** | 128,977,830 |

*See* Request for Admission 2.61, above.

RESPONSE TO REQUEST FOR ADMISSION 2.124: See defendant's Response to Request for Admission 2.44.

REQUEST FOR ADMISSION 2.125. The amount of tax overpayment by NatWest, excluding interest thereon, is:

| Tax Year | Aggregate Tax Payments[1] ("A") | Revised Tax Liability[2] ("B") | Tax Overpayment (=A-B) |
|---|---|---|---|
| 1981 | 14,154,278 | 2,064,554 | 12,089,724 |
| 1982 | 12,546,863 | 5,621,637 | 6,925,226 |
| 1983 | 16,105,789 | 10,031,163 | 6,074,626 |
| 1984 | 13,084,832 | 3,241,550 | 9,843,282 |
| 1985 | 24,937,042 | 18,452,244 | 6,484,798 |
| 1986 | 29,528,505 | 21,035,485 | 8,493,020 |
| 1987 | 18,620,521 | 3,599,811 | 15,020,710 |
| Total | 128,977,830 | 64,046,444 | 64,931,386 |

1 - *See* Request for Admission 2.124, above.

2 - *See* Request for Admission 2.123, above.

RESPONSE TO REQUEST FOR ADMISSION 2.125: See defendant's Response to Request for Admission 2.44.

Respectfully submitted,


STEVEN I. FRAHM
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6440

EILEEN J. O'CONNOR
Assistant Attorney General
MILDRED L. SEIDMAN
Chief, Court of Federal Claims Section

Of Counsel


January 7, 2005

CERTIFICATE OF SERVICE

I certify that service of this Response to Plaintiff's Second Set of Requests for Admission has been made on opposing counsel this 7th day of January 2005 by mailing a copy thereof, in a postage paid envelope, to the following address:

D. Scott Wise
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017

Katie M. Stevens

U.S. Department of Justice (Tax)
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20004
(202) 307-6440