IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 95-758T
(Judge Nancy B. Firestone)

NATIONAL WESTMINSTER BANK PLC,
Plaintiff

v.

THE UNITED STATES,
Defendant

# PLAINTIFF'S SECOND REQUESTS FOR ADMISSIONS

Pursuant to Rules 26 and 36 of the Rules of the United States Court of Federal Claims, plaintiff requests that defendant admit the facts set forth in the following requests separately and fully, in writing, and within thirty days after service of this document.

## DEFINITIONS

The following definitions apply to each of the requests herein:

1. All "Section" references are to the Internal Revenue Code ("Code") or Treasury Regulations, as in effect during the years at issue.

2. "NatWest" or "PLC" shall mean National Westminster Bank PLC.

3. All "Treaty" references are to the Convention for the Avoidance of Double Taxation, Dec. 31, 1975, U.S.-U.K., 31 U.S.T. 5668, T.A.I.S. No. 9682.

4. "U.S. branches" shall mean NatWest's U.S. licensed branches and agencies, including the New York and Chicago branches and the San Francisco agency; its foreign licensed branches operated from the United States, consisting of the Nassau and Grand Cayman branches; and the New York International Banking Facility ("IBF").

5. "San Francisco branch" or "San Francisco agency" shall mean NatWest's licensed San Francisco agency.

6. "Cayman branch" shall mean NatWest's licensed Grand Cayman branch.

7. "IBF" or "New York IBF" shall mean the New York International Banking Facility.

8. "Head Office" shall mean NatWest's head office in London, England.

9. "Fixed Assets" shall mean real and personal tangible property and equipment, including freehold premises, leasehold premises, furniture and fittings, computer and other equipment.

10. "Years at issue" shall mean the tax years ended December 31, 1981; December 31, 1982; December 31, 1983; December 31, 1984; December 31, 1985; December 31, 1986; and December 31, 1987.

11. "Amended Refund Claim" shall mean NatWest's Amended Refund Claim and attachments thereto submitted to Defendant on June 5, 2001.

12. "NOL Carryback" refers to the carryback of net operating losses from a trade or business to apply as a deduction against prior income permitted under Section 172(b).

13. "Other group companies" refers to the companies listed on the schedules entitled "Analysis of Intra Group Interest Paid & Received" in the profit and loss statements and the schedules entitled "Analysis of Intra Group Lines" in the balance sheets of the U.S. branches

during the years at issue. *See, e.g.*, INT504-00141, INT504-00113, SF-BS-8609-07, GC-BS-8609-08.

14. "I.R.S." shall mean the United States Internal Revenue Service.

15. "RARs" shall mean the I.R.S. Revenue Agent's Reports dated May 3, 1995.

**INSTRUCTIONS**

The relevant rules of construction set forth in the Rules of the United States Court of Federal Claims are incorporated as if set forth fully herein. In addition, the following instructions shall apply:

1. Pursuant to Rule 36 of the Rules of the United States Court of Federal Claims, in responding to these Requests, you are required to make reasonable inquiry into the truth of the Request. You may not give lack of information or knowledge as a basis for failing to admit or deny a Request unless, after making reasonable inquiry into the truth of the Request, you are unable to determine from the information that is known or readily available to you whether the Request is true. If you fail to respond to any Request with an admission or denial, you are required to set forth in detail the reasons you cannot admit or deny the Request. If you know that any part of a Request is true, you are required to admit that portion of the request that you know is true. To the extent that a Request is denied, you are required to state the specific reasons for the denial.

2. This is a continuing request for information. If, after making your initial response, you obtain or become aware of any further information responsive to this request or if you become aware that a response is inaccurate, incomplete or misleading, you are required to amend your response pursuant to Rule 26(e) of the Rules of the United States Court of Federal Claims.

3. Pursuant to paragraph 9 of Appendix A to the Rules of the United States Court of Federal Claims, the responses to the requests for admission are to be signed by counsel for the

defendant as certification that counsel has made diligent effort to provide answers to all of the requests for admission or to the portions of any requests for admission to which counsel has not specifically objected.

4. Any citations in the Requests are provided for convenience and are not part of the Request. Your responses to the Requests will not be considered admissions or denials with respect to the citations.

**REQUESTS FOR ADMISSIONS**

You are requested to admit that the following statements are true:

REQUEST FOR ADMISSION 2.01. During the years at issue, NatWest was a publicly held United Kingdom corporation engaged in the banking business in the United Kingdom, United States, and elsewhere.

REQUEST FOR ADMISSION 2.02. During the years at issue, NatWest's worldwide operations were headquartered in the United Kingdom.

REQUEST FOR ADMISSION 2.03. During the years at issue, NatWest was entitled to and did claim benefits under the Treaty as a "resident of the United Kingdom." (*See* Treaty Art. 5.)

REQUEST FOR ADMISSION 2.04. During the years at issue, NatWest operated a banking business in the United States through the U.S. branches.

REQUEST FOR ADMISSION 2.05. The principal customers of the U.S. Branch were large multinational corporations (including U.S. subsidiaries of U.K. corporations that were customers of PLC in the United Kingdom), other banks and financial institutions, other PLC offices and subsidiaries, and foreign governments.

REQUEST FOR ADMISSION 2.06. The six U.S. branches loaned funds to, and took deposits from, their corporate customers. (*See* Def.'s Request for Admission 1.03 and Pl.'s Response thereto.)

REQUEST FOR ADMISSION 2.07. The U.S. branches engaged in trading activities in the interbank market, including: taking and placing time deposits in the Eurodollar money market, selling commercial paper issued by NatWest, buying (*i.e.*, borrowing) and selling (*i.e.*, lending) federal funds in the U.S. money market, and buying and selling securities under repurchase agreements, typically called "repos" or "reverse repos."

REQUEST FOR ADMISSION 2.08. The trading activities of the U.S. branches were conducted to manage exposure to liquidity and interest rate risk, to obtain additional funds, to place excess funds, and to make a profit.

REQUEST FOR ADMISSION 2.09. For each of the years at issue, NatWest was required to and did file a single U.S. federal income tax return.

REQUEST FOR ADMISSION 2.10. During the years at issue, NatWest was an accrual method taxpayer.

REQUEST FOR ADMISSION 2.11. There were two branches and one agency of NatWest licensed in the United States: (1) the New York branch licensed by the State of New York, (2) the Chicago branch licensed by the State of Illinois, and (3) the San Francisco agency licensed by the State of California.

REQUEST FOR ADMISSION 2.12. The New York, Nassau, Chicago and San Francisco branches were in operation throughout the years at issue.

REQUEST FOR ADMISSION 2.13. The New York branch also operated an International Banking Facility (the "IBF").

REQUEST FOR ADMISSION 2.14. The operations of the IBF commenced in December 1981. (*See* Def.'s Request for Admission 1.39 and Pl.'s Response thereto.)

REQUEST FOR ADMISSION 2.15. The IBF was not a separately licensed branch but was a set of asset and liability accounts maintained by the New York branch pursuant to Federal Reserve Board regulations. (*See* Def.'s Request for Admission 1.15 and Pl.'s Response thereto.)

REQUEST FOR ADMISSION 2.16. Transactions segregated on the books of the New York IBF could qualify for exemption from certain bank regulatory requirements and could give rise to "IBF eligible net income" which was exempt from New York State and City income taxation. (*See* Def.'s Request for Admission 1.15 and Pl.'s Response thereto.)

REQUEST FOR ADMISSION 2.17. NatWest had branches licensed in Nassau and the Grand Cayman Islands.

REQUEST FOR ADMISSION 2.18. The Grand Cayman branch began operations in June 1985. (*See* Def.'s Request for Admission 1.40 and Pl.'s Response thereto.)

REQUEST FOR ADMISSION 2.19. During the years at issue, the activities of the New York, Nassau and Grand Cayman branches and the IBF were conducted by personnel of NatWest's New York branch office. (*See* Def.'s Request for Admission 1.12 and Pl.'s Response thereto.)

REQUEST FOR ADMISSION 2.20. The Nassau and Grand Cayman branches had no employees or facilities located in Nassau or Grand Cayman. (*See* Def.'s Prop. Findings of Uncontr. Fact (Adequate Cap. Issue) dated Sept. 12, 2002 at ¶41; Def.'s Request for Admission 1.13 and Pl.'s Response thereto.)

REQUEST FOR ADMISSION 2.21. During the years at issue, each of the New York, Nassau, Grand Cayman, Chicago, and San Francisco branches and the IBF maintained separate accounts, including profit and loss statements and balance sheets, in the ordinary course of its banking business. (*See* Def.'s Request for Admission 1.06 and Pl.'s Response thereto; *see also* Report of John J. Mingo, Ph.D. dated Nov. 15, 2001 at 7; Report of John M. Lacey, Ph.D. dated Nov. 15, 2001 at 1.)

REQUEST FOR ADMISSION 2.22. During certain periods prior to September 1983, the results of the IBF were included on the manually prepared and certified balance sheets and profit and loss statements of the New York branch. (*See* Def.'s Request for Admission 1.39 and Pl.'s Response thereto.)

REQUEST FOR ADMISSION 2.23. For September 1983 and during the remainder of the years at issue, separate manually prepared and certified balance sheets and profit and loss statements were prepared for the IBF. (*See* Def.'s Request for Admission 1.39 and Pl.'s Response thereto.)

REQUEST FOR ADMISSION 2.24. During the years at issue, the U.S. branches submitted profit and loss statements to PLC's head office on a periodic basis. (*See* Def.'s Request for Admission 1.28 and Pl.'s Response thereto.)

REQUEST FOR ADMISSION 2.25. During the years at issue, the U.S. branches submitted balance sheets to PLC's head office on a periodic basis. (*See* Def.'s Requests for Admission 1.11, 1.28, 1.32-1.33 and Pl.'s Responses thereto.)

REQUEST FOR ADMISSION 2.26. The profit and loss statements submitted by the U.S. branches to the Head Office included a certification which was required to be signed by the Branch Manager and Branch Accountant.

REQUEST FOR ADMISSION 2.27. The following is a typical example of the certification on profit and loss statements submitted by the U.S. branches to the head office during the years at issue:

> We certify that this Profit and Loss Account is in accordance with the books, and to the best of our knowledge and belief, gives a true and fair value of the profit for the year ended 31 December 1984, and has been prepared on a basis consistent with the Profit and Loss Accounts of previous periods.

(*See* New York branch profit and loss statement for the year ended December 31, 1984.)

REQUEST FOR ADMISSION 2.28. The profit and loss statements submitted by the U.S. branches to the Head Office included a schedule entitled "Analysis of Intragroup Interest Paid and Received," which included a certification required to be signed by the Branch Manager.

REQUEST FOR ADMISSION 2.29. The following is a representative example of the certification on the schedule entitled "Analysis of Intragroup Interest Paid and Received" included in the profit and loss statement submitted by the U.S. branches to the head office during the years at issue:

> We hereby certify that we have agreed all NWB, IWB and Intra-Group Interest with the units/companies concerned. Details and brief explanations of any disagreements are shown overleaf.

(*See* New York branch Analysis of Intragroup Interest Paid and Received schedule for the year ended December 31, 1984.)

REQUEST FOR ADMISSION 2.30. NatWest maintained an internal audit process designed to (i) determine if policies, practices, procedures and internal controls were adequate to assure accurate accounting for the activities of the U.S. branches and (ii) initiate corrective action if any deficiencies were identified. (*See* Box 156-5.)

REQUEST FOR ADMISSION 2.31. During the years at issue, the operations and internal controls of the New York branch (including the IBF), the Chicago branch and the San Francisco agency were examined regularly by the Federal Reserve Board and New York, Illinois and California state bank regulatory agencies. (*See* Supplemental Report of Robert R. Bench dated Jan. 14, 2002 at 10-11.)

REQUEST FOR ADMISSION 2.32. During the years at issue, New York bank regulators reviewed the records of the Nassau branch during the course of their examination of the New York branch. (*See* Pl.'s response to Def.'s Request for Admission 1.10.)

REQUEST FOR ADMISSION 2.33. The aggregate amount of interest income recorded on the profit and loss statements of the U.S. branches for each of the years at issue was as follows:

| Tax Year | Aggregate Interest Income |
|---|---|
| 1981 | 701,738,889 |
| 1982 | 635,002,839 |
| 1983 | 486,454,589 |
| 1984 | 635,242,556 |
| 1985 | 529,248,172 |
| 1986 | 498,814,159 |
| 1987 | 584,410,256 |

(*See* Interest Income and Expense Details (on an annual basis for 1981-1987) included in June 5, 2001 Amended Refund Claim, and supporting schedules thereto; *see also* Def.'s Requests for Admission 1.53 to 1.58 and Pl.'s Responses thereto.)

REQUEST FOR ADMISSION 2.34. The amounts set forth in Request for Admission 2.33 above include the following amounts of interest income accrued by the U.S. branches from parties unrelated to NatWest:

| Tax Year | Interest Income from Third Parties |
|---|---|
| 1981 | 575,881,214 |
| 1982 | 502,953,124 |
| 1983 | 398,210,695 |
| 1984 | 531,088,923 |
| 1985 | 449,801,628 |
| 1986 | 405,279,034 |
| 1987 | 447,495,474 |

(*See* Interest Income and Expense Details (on an annual basis for 1981-1987) included in June 5, 2001 Amended Refund Claim and supporting schedules thereto; *see also* Def.'s Requests for Admission 1.53 to 1.58 and Pl.'s Responses thereto.)

REQUEST FOR ADMISSION 2.35. The amounts set forth in Request for Admission 2.33 above include the following amounts of interest income accrued by the U.S. branches from other group companies:

| Tax Year | Interest Income from Other Group Companies |
|---|---|
| 1981 | 30,962,197 |
| 1982 | 44,606,560 |
| 1983 | 24,471,318 |
| 1984 | 27,299,430 |
| 1985 | 23,977,168 |
| 1986 | 24,705,540 |

| Tax Year | Interest Income from Other Group Companies |
|---|---|
| 1987 | 45,142,008 |

(*See* Interest Income and Expense Details (on an annual basis for 1981-1987) included in June 5, 2001 Amended Refund Claim and supporting schedules thereto; *see also* Def.'s Requests for Admission 1.53 to 1.58 and Pl.'s Responses thereto.)

REQUEST FOR ADMISSION 2.36. The amounts set forth in Request for Admission 2.33 above include the following amounts of interest income accrued by the U.S. branches from other branches of NatWest outside the United States:

| Tax Year | Interest Income from non-U.S. Branches |
|---|---|
| 1981 | 12,352,992 |
| 1982 | 6,833,220 |
| 1983 | 6,091,129 |
| 1984 | 6,609,212 |
| 1985 | 6,890,500 |
| 1986 | 10,531,919 |
| 1987 | 13,603,297 |

(*See* Interest Income and Expense Details (on an annual basis for 1981-1987) included in June 5, 2001 Amended Refund Claim and supporting schedules thereto; *see also* Def.'s Requests for Admission 1.53 to 1.58 and Pl.'s Responses thereto.)

REQUEST FOR ADMISSION 2.37. The amounts set forth in Request for Admission 2.33 above include the following aggregate amounts of interest income accrued by the U.S. branches from each other:

| Tax Year | Interest Income from U.S. Branches |
|---|---|
| 1981 | 82,542,486 |
| 1982 | 80,609,935 |
| 1983 | 57,681,447 |
| 1984 | 70,244,991 |
| 1985 | 48,578,877 |
| 1986 | 58,297,666 |
| 1987 | 78,169,477 |

(*See* Interest Income and Expense Details (on an annual basis for 1981-1987) included in June 5, 2001 Amended Refund Claim and supporting schedules thereto; *see also* Def.'s Requests for Admission 1.53 to 1.58 and Pl.'s Responses thereto.)

REQUEST FOR ADMISSION 2.38. The aggregate amount of interest expense recorded on the profit and loss statements of the U.S. branches for each of the years at issue was as follows:

| Tax Year | Aggregate Interest Expense |
|---|---|
| 1981 | 671,036,957 |
| 1982 | 601,557,461 |
| 1983 | 444,832,199 |
| 1984 | 602,794,686 |
| 1985 | 459,184,135 |
| 1986 | 436,383,691 |
| 1987 | 552,888,878 |

(*See* Interest Income and Expense Details (on an annual basis for 1981-1987) included in June 5, 2001 Amended Refund Claim and supporting schedules thereto; *see also* Def.'s Requests for Admission 1.53 to 1.58 and Pl.'s Responses thereto.)

REQUEST FOR ADMISSION 2.39. The amounts set forth in Request for Admission 2.38 above include the following amounts of interest expense accrued by the U.S. branches to parties unrelated to NatWest:

| Tax Year | Interest Expense Accrued with respect to Third Parties |
|---|---|
| 1981 | 505,155,940 |
| 1982 | 446,769,398 |
| 1983 | 342,193,553 |
| 1984 | 485,235,812 |
| 1985 | 343,395,119 |
| 1986 | 271,113,921 |
| 1987 | 301,921,949 |

(*See* Interest Income and Expense Details (on an annual basis for 1981-1987) included in June 5, 2001 Amended Refund Claim and supporting schedules thereto; *see also* Def.'s Requests for Admission 1.53 to 1.58 and Pl.'s Responses thereto.)

REQUEST FOR ADMISSION 2.40. The amounts set forth in Request for Admission 2.38 above include the following amounts of interest expense accrued by the U.S. branches to other group companies:

| Tax Year | Interest Expense Accrued with respect to Other Group Companies |
|---|---|
| 1981 | 24,926,564 |
| 1982 | 19,754,675 |
| 1983 | 11,934,824 |
| 1984 | 14,662,026 |
| 1985 | 14,624,994 |
| 1986 | 18,237,460 |
| 1987 | 19,386,954 |

(*See* Interest Income and Expense Details (on an annual basis for 1981-1987) included in June 5, 2001 Amended Refund Claim and supporting schedules thereto; *see also* Def.'s Requests for Admission 1.53 to 1.58 and Pl.'s Responses thereto.)

REQUEST FOR ADMISSION 2.41. The amounts set forth in Request for Admission 2.38 above include the following amounts of interest expense accrued by the U.S. branches to other branches of NatWest outside the United States:

| Tax Year | Interest Expense Accrued with respect to Non-U.S. Branches |
|---|---|
| 1981 | 58,446,924 |
| 1982 | 54,399,462 |
| 1983 | 33,102,291 |
| 1984 | 32,420,694 |
| 1985 | 52,546,899 |
| 1986 | 88,738,618 |
| 1987 | 153,338,621 |

(*See* Interest Income and Expense Details (on an annual basis for 1981-1987) included in June 5, 2001 Amended Refund Claim and supporting schedules thereto; *see also* Def.'s Requests for Admission 1.53 to 1.58 and Pl.'s Responses thereto.)

REQUEST FOR ADMISSION 2.42. The amounts set forth in Request for Admission 2.38 above include the following amounts of interest expense accrued by the U.S. branches to each other:

| Tax Year | Interest Expense Accrued with respect to U.S. Branches |
|---|---|
| 1981 | 82,507,529 |
| 1982 | 80,633,926 |
| 1983 | 57,601,531 |
| 1984 | 70,476,154 |
| 1985 | 48,617,123 |
| 1986 | 58,293,692 |
| 1987 | 78,241,354 |

(*See* Interest Income and Expense Details (on an annual basis for 1981-1987) included in June 5, 2001 Amended Refund Claim and supporting schedules thereto; *see also* Def.'s Requests for Admission 1.53 to 1.58 and Pl.'s Responses thereto.)

REQUEST FOR ADMISSION 2.43. NatWest timely filed its U.S. federal income tax return as a calendar year taxpayer for each of the years 1981 through 1987 on I.R.S. Form 1120F. (*See* INT504-00598 to -00633 (1981 Form 1120F); INT504-00634 to -00679 (1982 Form 1120F); INT504-00680 to -00715 (1983 Form 1120F); INT504-000716 to -00741 (1984 Form 1120F); INT504-00742 to -00781 (1985 Form 1120F); INT504-00782 to -00823 (1986

Form 1120F); INT504-00824 to -00861 (1987 Form 1120F); *see also* Pl.'s Supp. Resp. to Def.'s First Set of Interrogs., Supp. Resp. to Interrog. 1.03 and Ex. A (May 9, 1996).)

REQUEST FOR ADMISSION 2.44. For each of the years at issue, the items comprising taxable income reported on NatWest's original U.S. federal income tax return were equal to amounts set forth on the profit and loss statements of the New York, Nassau, Grand Cayman, Chicago and San Francisco branches and the IBF, subject to adjustments explained in Schedule M-1 of each of those returns. (*Compare* INT504-00598 to -00633 (1981 Form 1120F) *with* INT504-00001 to -00006, -00030 to -00034, -00009 to -00013, -00037 to -00041, -00023 to -00027, -00044 to -00048, -00016 to -00020, -00049 to -00053; *and compare* INT504-00634 to -00679 (1982 Form 1120F) *with* INT504-00058 to -00062, -00065 to -00069, -00072 to -00076; *and compare* INT504-00680 to -00715 (1983 Form 1120F) *with* INT504-00086 to -00090, -00120A to -00120E, -00107 to -00111, -00093 to -00097; -00100 to -00104; *and compare* INT504-00716 to -00741 (1984 Form 1120F) *with* INT504-00121 to -00125, -00155 to -00159, -00142 to -00146, -00128 to -00132, -00135 to -00139; *and compare* INT504-00742 to -00781 (1985 Form 1120F) *with* INT504-00162 to -000168, -00202 to -00208, -00193 to -00199, -00171 to -00177, -00182 to -00188, -00213 to -00219; *and compare* INT504-00782 to -00823 (1986 Form 1120F) *with* INT504-00222 to -00229, -00232 to -00239, -00272 to -00279, -00262 to -00269, -00252 to -00259, -00242 to -00251; *and compare* INT504-00824 to -00861 (1987 Form 1120F) *with* INT504-00282 to -00289, -00312 to -00319, -00322 to -00330, -00332 to -00340, -00292 to -00299, -00302 to -00309; *see also* 1/1/1987 to 12/31/1987 Profit & Loss Account IBF Branch.)

REQUEST FOR ADMISSION 2.45. Schedule M-1 of the original U.S. federal income tax return filed for each of the years at issue explains the difference between the taxable income and book profit of the U.S. branches. (*See* INT504-00603, 00631 (1981 Form 1120F); INT504-00639, -00676 (1982 Form 1120F); INT504-00685, -00712 (1983 Form 1120F); INT504-00721, -00738 (1984 Form 1120F); INT504-00747, -00773 (1985 Form 1120F); INT504-00788, -00816 (1986 Form 1120F); INT504-00831, -00851 (1987 Form 1120F).)

REQUEST FOR ADMISSION 2.46. The aggregate interest income included in NatWest's original U.S. federal income tax return for each of the years at issue was equal to the aggregate interest income recorded on the profit and loss statements of the U.S. branches for each of the years at issue, as set forth in Request for Admission 2.33 above, with the following adjustments as shown on Schedule M-1 to such returns:

| Tax Year | Description of Schedule M-1 Adjustment | Amount |
|---|---|---|
| 1981 | 1980 money market adjustment<br>1980 T-bill accrued interest<br>1981 money market adjustment<br>1981 T-bill accrued interest | 15,699<br>449,284<br>(72,622)<br>(1,986,545) |
| 1982 | 1981 money market adjustment<br>1981 T-bill accrued interest | 72,622<br>1,986,545 |
| 1983 | None | |
| 1984 | T-bill accrual | 1,885,318 |
| 1985 | Net T-bill accrual | (1,884,246) |
| 1986 | Interest Adjustment<br>ESOP interest exclusion<br>Foreign Exchange Income<br>Net T-bill accrual | (486,697)<br>(525,498)<br>103,289<br>(246) |

| Tax Year | Description of Schedule M-1 Adjustment | Amount |
|---|---|---|
| 1987 | Income Adjustment | (1,185,000) |
| | Interest Accrual Adjustment | (846,000) |
| | Interest Adjustment | 486,697 |
| | Foreign Exchange Income | 114,736 |
| | Net T-bill accrual | 98 |

(*See* INT504-00631; INT504-00676; INT504-00712; INT504-00738; INT504-00773; INT504-00816; INT504-00851.)

REQUEST FOR ADMISSION 2.47. The aggregate interest expense included in NatWest's original U.S. federal income tax return for each of the years at issue was equal to the aggregate interest expense recorded on the profit and loss statements of the U.S. branches for each of the years at issue as set forth in Request for Admission 2.38 above, with the following adjustments as shown on Schedule M-1 to such returns:

| Tax Year | Description of Schedule M-1 Adjustment | Amount |
|---|---|---|
| 1981 | None | |
| 1982 | None | |
| 1983 | None | |
| 1984 | 1976 – 1980 Add'l Int. Ass'd (California) | 360,149 |
| 1985 | None | |
| 1986 | None | |
| 1987 | Interest Accrual Adjustments | 720,000 |

(*See* INT504-00631; INT504-00676; INT504-00712; INT504-00738; INT504-00773; INT504-00816; INT504-00851.)

REQUEST FOR ADMISSION 2.48. The U.S. federal taxable income of NatWest as originally reported for each of the years at issue (after adjustments with respect to certain employee benefits per IRS Form 870) was as follows:

| Tax Year | Amount |
|---|---|
| 1981 | 5,127,742 |
| 1982 | 12,866,570 |
| 1983 | 17,074,564 |
| 1984 | 8,009,640 |
| 1985 | 40,541,143 |
| 1986 | 42,962,917 |
| 1987 | 14,330,911 |
| **Total** | 140,913,487 |

(*See* RARs.)

REQUEST FOR ADMISSION 2.49. The I.R.S. examined NatWest's original Form 1120F U.S. federal income tax returns for each of the years at issue. (*See* RARs.)

REQUEST FOR ADMISSION 2.50. In its May 3, 1995 RARs the I.R.S. proposed the following adjustments to the taxable income of NatWest as reported on its original U.S. federal income tax returns:

| Tax Year | Proposed Adjustment | Amount |
|---|---|---|
| 1981 | Interest Expense<br>Interest Income | 152,605,551<br>(125,857,675) |
| 1982 | Interest Expense<br>Interest Income | 147,337,977<br>(132,049,714) |

| Tax Year | Proposed Adjustment | Amount |
|---|---|---|
| 1983 | Interest Expense<br>Interest Income<br>Sale of Property (Chrysler Stock Sale) | 101,652,347<br>(88,243,894)<br>7,853,110 |
| 1984 | Interest Expense<br>Interest Income | 126,092,694<br>(104,153,633) |
| 1985 | Interest Expense<br>Interest Income | 93,539,801<br>(79,404,169) |
| 1986 | Interest Expense<br>Interest Income<br>Net Loans<br>Employee Benefits<br>Home Office Allocation | 108,064,089<br>(87,081,845)<br>84,426<br>405,249<br>21,903 |
| 1987 | Interest Expense<br>Interest Income<br>Net Loans<br>Employee Benefits<br>Home Office Allocation<br>Other Deductions<br>Net Operating Loss Deduction<br>Bad Debts | 174,292,853<br>(131,596,705)<br>174,309<br>332,710<br>3,534,289<br>(555,350)<br>(12,918,821)<br>(785,311) |

(*See* RARs; Pl.'s response to Def.'s Request for Admission 1.23.)

REQUEST FOR ADMISSION 2.51. The adjustments described in Request for Admission 2.50 include the following amounts to which NatWest has agreed:

| Tax Year | Proposed Adjustment | Amount |
|---|---|---|
| 1983 | Sale of Property (Chrysler Stock Sale) | 7,853,110 |
| 1986 | Employee Benefits<br>Home Office Allocation | 405,849<br>21,903 |
| 1987 | Employee Benefits<br>Home Office Allocation<br>Other Deductions<br>Bad Debts | 332,710<br>3,534,289<br>(555,350)<br>(785,311) |

(*See* RARs.)

REQUEST FOR ADMISSION 2.52. The adjustments described in Request for Admission 2.50 include the following amounts that defendant has withdrawn:

| Tax Year | Proposed Adjustment | Amount |
|---|---|---|
| 1986 | Net Loans | 84,426 |
| 1987 | Net Loans | 174,309 |

(*See* RARs.)

REQUEST FOR ADMISSION 2.53. The adjustments described in Request for Admission 2.50 include the following amount which could change depending upon the final resolution of tax years subsequent to the years at issue:

| Tax Year | Proposed Adjustment | Amount |
|---|---|---|
| 1987 | Net Operating Loss Deduction | (12,918,821) |

(*See* RARs.)

REQUEST FOR ADMISSION 2.54. The adjustments described in Request for Admission 2.50 include the following amounts asserted by the I.R.S. under Section 882, Treasury Regulations section 1.882-5 and Section 864(c)(4)(D):

| Tax Year | Proposed adjustments to interest income: | Proposed adjustments to interest expense: |
|---|---|---|
| 1981 | (125,857,675) | 152,605,551 |
| 1982 | (132,049,714) | 147,337,977 |
| 1983 | (88,243,894) | 101,652,347 |
| 1984 | (104,153,633) | 126,092,694 |
| 1985 | (79,404,169) | 93,539,801 |
| 1986 | (87,081,845) | 108,064,089 |

| Tax Year | Proposed adjustments to interest income: | Proposed adjustments to interest expense: |
|---|---|---|
| 1987 | (131,596,705) | 174,292,853 |

(See RARs; see also Def.'s Request for Admissions 1.23 and Pl.'s Response thereto.)

REQUEST FOR ADMISSION 2.55. The I.R.S., in its RARs, offered no basis other than Sections 882, Treasury Regulations section 1.882-5 and Section 864(c)(4)(D) for adjustments to plaintiff's interest expense and interest income. (*See* RARs.)

REQUEST FOR ADMISSION 2.56. The RAR for the taxable year ended December 31, 1987 proposed an Environmental Tax increase of $38,974, bringing the total tax to $53,771, but did not include a correlative regular tax deduction for Environmental Tax. Both of these figures could change depending upon the final resolution of the years at issue. (*See* RARs.)

REQUEST FOR ADMISSION 2.57. The adjusted U.S. federal taxable income of NatWest as determined by the I.R.S. for each of the years at issue was as follows:

| Tax Year | Amount |
|---|---|
| 1981 | 31,875,618 |
| 1982 | 28,154,833 |
| 1983 | 38,336,127 |
| 1984 | 29,948,701 |
| 1985 | 54,676,775 |
| 1986 | 64,457,339 |
| 1987 | 46,808,885 |
| **Total** | 294,258,278 |

(*See* RARs.)

REQUEST FOR ADMISSION 2.58. The U.S. federal income tax liability of NatWest as determined by the I.R.S. for each of the years at issue, excluding interest thereon, was as follows:

| Tax Year | Amount |
|---|---|
| 1981 | 14,154,278 |
| 1982 | 12,546,863 |
| 1983 | 16,105,789 |
| 1984 | 13,084,832 |
| 1985 | 24,937,042 |
| 1986 | 29,528,505 |
| 1987 | 18,620,521 |
| **Total** | 128,977,830 |

(*See* RARs.)

REQUEST FOR ADMISSION 2.59. The U.S. federal income tax liability shown on NatWest's original Form 1120F U.S. federal income tax return or as adjusted prior to issuance of the RARs for each of the years at issue based on the amounts of U.S. federal taxable income shown on Request for Admission 2.48 was as follows:

| Tax Year | Amount |
|---|---|
| 1981 | 1,850,255 |
| 1982 | 5,514,262 |
| 1983 | 7,759,280 |
| 1984 | 2,992,864 |
| 1985 | 18,434,651 |
| 1986 | 19,641,070 |
| 1987 | 304,302 |

| Tax Year | Amount |
|---|---|
| **Total** | 56,496,684 |

(*See* RARs.)

REQUEST FOR ADMISSION 2.60. The deficiency in U.S. federal income tax due by NatWest for each of the years at issue as determined by the I.R.S., excluding interest thereon, was as follows:

| Tax Year | Amount |
|---|---|
| 1981 | 12,304,023 |
| 1982 | 7,032,601 |
| 1983 | 8,346,509 |
| 1984 | 10,091,968 |
| 1985 | 6,502,391 |
| 1986 | 9,887,435 |
| 1987 | 18,316,219 |
| **Total** | 72,481,146 |

(*See* RARs.)

REQUEST FOR ADMISSION 2.61. The U.S. federal income tax payments made by NatWest with respect to all of the U.S. branches to the I.R.S. for each of the years at issue were as follows:

U.S. Federal Income Tax Payments for the Years at Issue

| Tax Year | 1981 | 1982 | 1983 | 1984 | 1985 | 1986 | 1987 |
|---|---|---|---|---|---|---|---|
| Prior Year Overpayment[1] | 600,170 | 1,500,000 | 56,411 | 1,600,000 | 257,136 | 0 | 0 |
| Current Year Estimated Payments[2] | 4,250,000 | 4,000,000 | 10,035,000 | 1,650,000 | 16,340,000 | 20,011,000 | 6,953,000 |
| Payment Per Form 7004[3] | 0 | 0 | 0 | 0 | 1,002,864 | 567,000 | 406,000 |
| Amount Paid Original Return[4] | 0 | 0 | 0 | 0 | 834,651 | 0 | 0 |
| Amount Claimed as Refund on Original Return[5] | (1,594,320) | 0 | (732,131) | 0 | 0 | (936,930) | (1,767,422) |
| Amount Credited to Estimated Tax on Original Return[6] | (1,500,000) | (56,411) | (1,600,000) | (257,136) | 0 | 0 | 0 |
| Refund Per Form 1139[7] | 0 | 0 | 0 | 0 | 0 | 0 | (5,287,276) |
| Tax Paid Per Form 870 dated 08/23/89[8] | 94,405 | 70,673 | 0 | 0 | 0 | 0 | 0 |
| Tax Paid in Response to RARs[9] | 12,304,023 | 7,032,601 | 8,346,509 | 10,091,968 | 6,502,391 | 9,887,435 | 18,316,219 |
| Aggregate Tax Payments | 14,154,278 | 12,546,86 | 16,105,789 | 13,084,832 | 24,937,042 | 29,528,505 | 18,620,521 |

1 - *See* INT504-00598 (line 6(a), 1981 Form 1120F); INT504-00634 (line 6(a), 1982 Form 1120F); INT504-00680 (line 6(a), 1983 Form 1120F); INT504-00716 (line 6(a), 1984 Form 1120F); INT504-00742 (line 6(a), 1985 Form 1120F); INT504-00782 (line 6(a), 1986 Form 1120F); INT504-00824 (line 6(a), 1987 Form 1120F).

2, 3, 4, - *See* Def.'s Ans. to 1st Amended Compl. at ¶3; 1st Amended Compl., Ex. 1.

5 - *See* INT504-00598 (line 10, 1981 Form 1120F); INT504-00634 (line 10, 1982 Form 1120F); INT504-00680 (line 10, 1983 Form 1120F); INT504-00716 (line 10, 1984 Form 1120F); INT504-00742 (line 10, 1985 Form 1120F); INT504-00782 (line 10, 1986 Form 1120F); INT504-00824 (line 11, 1987 Form 1120F).

6 - *See* INT504-00598 (line 10, 1981 Form 1120F); INT504-00634 (line 10, 1982 Form 1120F); INT504-00680 (line 10, 1983 Form 1120F); INT504-00716 (line 10, 1984 Form 1120F); INT504-00742 (line 10, 1985 Form 1120F); INT504-00782 (line 10, 1986 Form 1120F); INT504-00824 (line 11, 1987 Form 1120F).

7 - *See* RAR at 28.

8 - *See* Pl.'s Resp. to Def.'s Interrog. 1.04, Ex. B at B0003 (1981), B0004 (1982), and B0005 (copies of checks for $223,518 and $139,781 payable to IRS).

9 - These tax amounts and the deficiency interest thereon were paid by: (1) application of a $50,000,000 deposit in the nature of a cash bond; (2) application of a $40,000,000 deposit in the nature of a cash bond; (3) a payment of $34,446,842; and (4) a payment of $55,802,939. *See* Pl.'s Resp. to Def.'s Interrog. 1.12, Ex. F at F00010 (1981 through 1985) *and* F00020 (1986 and 1987); *see also* F00031 (IRS Receipt for Payment of Taxes in the amount of $50,000,000); F00024-00025 (IRS stamp acknowledging receipt of $40,000,000 check); F00022 (copy of check for $34,446,842.00 payable to IRS); F00023 (copy of check for $55,802,939.00 payable to IRS).

REQUEST FOR ADMISSION 2.62. The interest paid by NatWest to the Internal Revenue Service Center in Philadelphia, PA on May 31, 1995 and June 8, 1995, on the tax deficiencies asserted in the RARs, was as follows:

| Tax Year | Interest Paid |
|---|---|
| 1981 | 28,838,978 |
| 1982 | 13,068,220 |
| 1983 | 14,107,184 |
| 1984 | 15,045,416 |
| 1985 | 7,693,000 |
| 1986 | 11,467,996 |
| 1987 | 17,547,841 |
| **Total** | 107,768,635 |

(*See* Pl.'s Resp. to Def.'s Interrog. 1.12, Ex. F at F00010-00011 (1981 through 1985) *and* F00020 (1986 and 1987); *see also* F00031 (IRS Receipt for Payment of Taxes in the amount of $50,000,000); F00024-00025 (IRS stamp acknowledging receipt of $40,000,000 check); F00022 (copy of check for $34,446,842.00 payable to IRS); F00023 (copy of check for $55,802,939.00 payable to IRS) (sum of check amounts, $180,249,781, less $107,768,635 aggregate interest, *above*, equals $72,481,146 additional taxes paid per RARs); Request for Admission 2.61 above.)

REQUEST FOR ADMISSION 2.63. The adjustments proposed under Section 882 and Treasury Regulations section 1.882-5 and Section 864(c)(4)(D) described in Request for Admission 2.54 should be withdrawn in accordance with the Court's July 1999 Opinion and Order.

REQUEST FOR ADMISSION 2.64. The interest income reported on NatWest's original Form 1120F U.S. federal income tax returns for the years 1981 through 1987 included the amounts of interest income accrued by the U.S. branches from each other as described in Request for Admission 2.37 above.

REQUEST FOR ADMISSION 2.65. The interest expense reported on NatWest's original Form 1120F U.S. federal income tax returns for the years 1981 through 1987 included the amounts of interest expense accrued by the U.S. branches to each other as described in Request for Admission 2.42 above.

REQUEST FOR ADMISSION 2.66. If all of the intra-U.S. interest expense described in Request for Admission 2.42 and intra-U.S. interest income described in Request for Admission 2.37 were eliminated from the taxable income of the U.S. branches, the following net additions to, or reductions of, taxable income would result for the years at issue:

| Tax Year | Addition to or (Reduction of) Taxable Income |
|---|---|
| 1981 | (34,957) |
| 1982 | 23,991 |
| 1983 | (79,916) |
| 1984 | 231,163 |
| 1985 | 38,246 |
| 1986 | (3,974) |
| 1987 | 71,877 |

(*See* Amended Refund Claim, Schedules 1-7.)

REQUEST FOR ADMISSION 2.67. In its Amended Refund Claim, NatWest proposed to increase its taxable income by the amounts shown for taxable years 1982, 1984, 1985 and 1987

in Request for Admission 2.66, but did not propose to reduce its taxable income by the amounts shown for years 1981, 1983, and 1986 in Request for Admission 2.66. (*See* Amended Refund Claim and supporting schedules thereto.)

REQUEST FOR ADMISSION 2.68. The amounts of interest expense recorded on the profit and loss statements of the U.S. branches as payable to the Head Office and therefore included in the amounts described in Requests for Admission 2.38 above and reported on NatWest's original Form 1120F federal income tax returns for the tax years at issue included the following net amounts described in U.S. branch books and records as capital loan charges:

| Tax Year | Capital Loan Charge |
|---|---|
| 1981 | 465,868 |
| 1982 | 209,433 |
| 1983 | 202,745 |
| 1984 | 309,459 |
| 1985 | 0 |
| 1986 | 2,336,260 |
| 1987 | 1,936,537 |

(*See* Pl.'s Report on the Capital Issue dated October 29, 2004, Ex. C, Report of Kevin D. Bandoian at Ex. 1, Ex. 3 [hereinafter Bandoian Rep.].)

REQUEST FOR ADMISSION 2.69. During the years at issue, any capital loan charges paid by the U.S. branches were calculated on a balance (referred to herein as a "net capital balance") consisting of the sum of the balances of Retained Profits or Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets less the balance of Premises and Equipment, all as of the prior year-end. (*See* Bandoian Rep. at 4.)

REQUEST FOR ADMISSION 2.70. During all of the years at issue, except with respect to the first quarter of 1981, the net capital balance used to calculate capital loan charges for a given year was adjusted to reflect any reduction in the components of the net capital balance (e.g., by repatriation) within the first quarter of that year. (*See* Bandoian Rep. at 4.)

REQUEST FOR ADMISSION 2.71. During the years at issue, the capital loan charges paid by the U.S. branches were calculated using arm's-length rates of interest. (*See* Bandoian Rep. at 4.)

REQUEST FOR ADMISSION 2.72. During the years at issue, the capital loan charges paid or received in any given quarter were calculated using the same rate of interest for each branch, except for one quarter in 1986, when the actual rates used by the U.S. branches were all within 0.5875% of each other. (*See* Bandoian Rep. at 4.)

REQUEST FOR ADMISSION 2.73. During the years at issue, the capital loan charges and net capital balances on which they were accrued were calculated on a combined basis for the New York branch and IBF. (*See* Bandoian Rep. at 4.)

REQUEST FOR ADMISSION 2.74. For the years 1981 through 1985, the U.S. branches paid and deducted a capital loan charge only with respect to the New York branch and IBF and only on positive net capital balances. (*See* Bandoian Rep. at 4.)

REQUEST FOR ADMISSION 2.75. For the taxable year 1986, all of the U.S. branches paid and deducted capital loan charges, but only on positive net capital balances. (*See* Bandoian Rep. at 4.)

REQUEST FOR ADMISSION 2.76. For the taxable year 1987, all of the U.S. branches paid and deducted capital loan charges on positive net capital balances and received payments (and reduced interest expense accordingly) on negative net capital balances. (*See* Bandoian Rep. at 4.)

REQUEST FOR ADMISSION 2.77. During the years at issue, the New York branch collected any capital loan charges for the U.S. branches and paid them to the head office. (*See* Bandoian Rep. at 4.)

REQUEST FOR ADMISSION 2.78. For the year ended December 31, 1981, the total capital loan charges paid by the U.S. branches to PLC and deducted on the U.S. federal tax return was $465,868. (*See* Bandoian Rep. at Ex. 1: 1981-1 to 1981-6, Ex. 2, Ex. 3.)

REQUEST FOR ADMISSION 2.79. Apart from the amount described in Request for Admission 2.78, during the year ended December 31, 1981, neither the profit and loss statements of the U.S. branches nor the U.S. federal income tax return of NatWest reflected any deduction of interest with respect to any balance in any of the accounts entitled Retained Profits or Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets.

REQUEST FOR ADMISSION 2.80. For the year ended December 31, 1982, the total capital loan charges paid by the U.S. branches to PLC and deducted on the U.S. federal tax return was $209,433. (*See* Bandoian Rep. at Ex. 1: 1982-1 to 1982-5, Ex. 2, Ex. 3.)

REQUEST FOR ADMISSION 2.81. Apart from the amount described in Request for Admission 2.80, during the year ended December 31, 1982, neither the profit and loss statements of the U.S. branches nor the U.S. federal income tax return of NatWest reflected any deduction of

interest with respect to any balance in any of the accounts entitled Retained Profits or Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets.

REQUEST FOR ADMISSION 2.82. For the year ended December 31, 1983, the total capital loan charges paid by U.S. branches to PLC and deducted on the U.S. federal tax return was $202,745. (*See* Bandoian Rep. at Ex. 1: 1983-1 to 1983-5, Ex. 2, Ex. 3.)

REQUEST FOR ADMISSION 2.83. Apart from the amount described in Request for Admission 2.82, during the year ended December 31, 1983, neither the profit and loss statements of the U.S. branches nor the U.S. federal income tax return of NatWest reflected any deduction of interest with respect to any balance in any of the accounts entitled Retained Profits or Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets.

REQUEST FOR ADMISSION 2.84. For the year ended December 31, 1984, the total capital loan charges paid by U.S. branches to PLC and deducted on the U.S. federal tax return was $390,459. (*See* Bandoian Rep. at Ex. 1: 1984-1 to 1984-5, Ex. 2, Ex. 3.)

REQUEST FOR ADMISSION 2.85. Apart from the amount described in Request for Admission 2.84, during the year ended December 31, 1984, neither the profit and loss statements of the U.S. branches nor the U.S. federal income tax return of NatWest reflected any deduction of interest with respect to any balance in any of the accounts entitled Retained Profits or Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets.

REQUEST FOR ADMISSION 2.86. During the year ended December 31, 1985, neither the profit and loss statements of the U.S. branches nor the U.S. federal income tax return of NatWest reflected any deduction of interest with respect to any balance in any of the accounts entitled

Retained Profits or Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets. (*See* Bandoian Rep. at Ex. 1: 1985-1 to 1985-6, Ex. 2, Ex. 3.)

REQUEST FOR ADMISSION 2.87. For the year ended December 31, 1986, plaintiff conceded capital loan charges in the aggregate amount of $2,603,583. (*See* Bandoian Rep. at Ex. 1: 1986-1, Ex. 3.)

REQUEST FOR ADMISSION 2.88. For the year ended December 31, 1986, plaintiff made an over-concession with regard to capital loan charges for the fourth quarter for the Nassau branch in the amount of $266,510. (*See* Bandoian Rep. at Ex. 1: 1986-4, Ex. 2, Ex. 3.)

REQUEST FOR ADMISSION 2.89. For the year ended December 31, 1986, plaintiff made an over-concession with regard to capital loan charges for the fourth quarter for the San Francisco agency in the amount of $813. (*See* Bandoian Rep. at Ex. 1: 1986-6, Ex. 2, Ex. 3.)

REQUEST FOR ADMISSION 2.90. For the year ended December 31, 1986, the total capital loan charges paid by the U.S. branches to PLC and deducted on the U.S. federal tax return was $2,336,260. (*See* Bandoian Rep. at Ex. 1: 1986-1 to 1986-6, Ex. 2, Ex. 3.)

REQUEST FOR ADMISSION 2.91. Apart from the amount described in Request for Admission 2.90, during the year ended December 31, 1986, neither the profit and loss statements of the U.S. branches nor the U.S. federal income tax return of NatWest reflected any deduction of interest with respect to any balance in any of the accounts entitled Retained Profits or Accumulated Losses, Profit and Loss, Balance due to HO re Capital Loan, and Balance due to HO re Fixed Assets.

REQUEST FOR ADMISSION 2.92. For the year ended December 31, 1987, the total capital loan charges paid by U.S. branches to PLC and deducted on the U.S. federal tax return was $1,936,537. (*See* Bandoian Rep. at Ex. 1: 1987-1 to 1987-6, Ex. 2, Ex. 3.)

REQUEST FOR ADMISSION 2.93. Apart from the amount described in Request for Admission 2.92, during the year ended December 31, 1987, neither the profit and loss statements nor the U.S. federal income tax return of the U.S. branches reflected any deduction of interest with respect to any balance in any of the accounts entitled Retained Profits or Accumulated Losses; Profits and Loss; Balance due to HO re Capital Loan; or Balance due to HO re Fixed Assets.

REQUEST FOR ADMISSION 2.94. Apart from the amounts identified in Requests for Admission 2.78, 2.80, 2.82, 2.84, 2.90, and 2.92, the U.S. branches did not pay or deduct any interest during the years at issue on amounts designated as capital on their books and records.

REQUEST FOR ADMISSION 2.95. Apart from the amounts identified in Requests for Admission 2.78, 2.80, 2.82, 2.84, 2.90, and 2.92, the U.S. branches did not pay or deduct any interest during the years at issue on amounts allotted to the U.S. branches for capital purposes.

REQUEST FOR ADMISSION 2.96. Plaintiff has conceded all capital loan charges reflected in its books and records. (*See* Bandoian Rep. at 9.)

REQUEST FOR ADMISSION 2.97. The aggregate amount conceded by plaintiff as capital loan charges exceeded the actual capital loan charges deducted by plaintiff on its U.S. federal income tax returns during the years 1981 through 1987 in the amount of $267,323. (*See* Bandoian Rep. at 9).

REQUEST FOR ADMISSION 2.98. Amounts recorded on the balance sheets of the U.S. branches as "Retained Profits" (which were assigned the account code "LZC") constitute amounts that were designated as capital on the balance sheets of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes, such that any interest expense accrued thereon was not deductible under the Treaty during the years at issue. (*See* Pl.'s response to Def.'s Request for Admission 1.46.)

REQUEST FOR ADMISSION 2.99. Amounts recorded on the balance sheets of the U.S. branches as "Profit and Loss" (which were assigned the account code "LPC") constitute amounts that were designated as capital on the balance sheets of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes, such that any interest expense accrued thereon was not deductible under the Treaty during the years at issue. (*See* Pl.'s response to Def.'s Request for Admission 1.46.)

REQUEST FOR ADMISSION 2.100. Amounts recorded on the balance sheets of the U.S. branches as "Balance due to HO re Fixed Assets" (which were assigned the account code "LFB") constitute amounts that were designated as capital on the books of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes, such that any interest expense accrued thereon was not deductible under the Treaty during the years at issue. (*See* Pl.'s response to Def.'s Request for Admission 1.46.)

REQUEST FOR ADMISSION 2.101. Amounts recorded on the balance sheets of the U.S. branches as "Balance due to HO re Capital Loans" (which were assigned the account code "LEB") constitute amounts that were designated as capital on the books of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes, such that any interest expense accrued thereon was not deductible under the Treaty during the years at issue. (*See* Pl.'s response to Def.'s Request for Admission 1.46.)

REQUEST FOR ADMISSION 2.102. Amounts recorded on the balance sheets of the U.S. branches as "Provision for B&DD ("Bad and Doubtful Debts") – Specific" (which were assigned the account code "LQC") constitute amounts that were designated as capital on the books of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes, such that any

interest expense accrued thereon was not deductible under the Treaty during the years at issue. (*See* Pl.'s response to Def.'s Request for Admission 1.46.)

REQUEST FOR ADMISSION 2.103. Amounts recorded on the balance sheets of the U.S. branches as "Provision for B&DD – Non-specific" (which were assigned the account code "LRC") constitute amounts that were designated as capital on the books of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes, such that any interest expense accrued thereon was not deductible under the Treaty during the years at issue. (*See* Pl.'s response to Def.'s Request for Admission 1.46.)

REQUEST FOR ADMISSION 2.104. Apart from amounts described in Requests for Admission 2.98 through 2.103, there were no amounts recorded on the balance sheets of the U.S. branches during the years at issue that were designated as capital of a U.S. branch or branches.

REQUEST FOR ADMISSION 2.105. Apart from amounts described in Requests for Admission 2.98 through 2.103, there were no amounts recorded on the balance sheets of the U.S. branches during the years at issue that were in fact allotted to a U.S. branch or branches for capital purposes.

REQUEST FOR ADMISSION 2.106. Apart from the capital loan charges described in Requests for Admission 2.78, 2.80, 2.82, 2.84, 2.90, and 2.92 above, all interest expense deducted by the U.S. branches during the years at issue was on advances to the U.S. branches that were used in the ordinary course of the U.S. branches' banking business.

REQUEST FOR ADMISSION 2.107. Accounts recorded in the U.S. branch balance sheets as "Freehold Premises" (ARD), "Leasehold Premises" (ASD), "Furniture and fittings"

(ATD), and "Computer and other equipment" (AUD), represent the U.S. branches' "Fixed Assets."

REQUEST FOR ADMISSION 2.108. The aggregate of the amounts recorded as Fixed Assets on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Aggregate Fixed Assets |
|---|---|
| 1980 | 9,167,969 |
| 1981 | 11,969,698 |
| 1982 | 15,862,602 |
| 1983 | 16,631,023 |
| 1984 | 25,976,913 |
| 1985 | 23,322,331 |
| 1986 | 26,977,617 |
| 1987 | 29,477,629 |

(*See* 1980: NY-BS-8012-04, CH-BS-8012-04, SF-BS-8012-10; 1981: NY-BS-8112-04, CH-BS-8112-04, SF-BS-8112-04; 1982: NY-BS-8212-04, CH-BS-8212-04, SF-BS-8212-04; 1983: NY-BS-8312-04, CH-BS-8312-04, SF-BS-8312-05; 1984: NY-BS-8412-04, CH-BS-8412-02, SF-BS-8412-04; 1985: NY-BS-8512-04, CH-BS-8512-04, SF-BS-8512-04; 1986: NY-BS-8612-04, CH-BS-8612-04, SF-BS-8612-04; 1987: NY-BS-8712-04, CH-BS-8712-07, SF-BS-8712-06.)

REQUEST FOR ADMISSION 2.109. The aggregate of the provisions for "B&DD - Specific" recorded on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Provision for B&DD - Specific |
|---|---|
| 1980 | 4,072,745 |
| 1981 | 3,834,232 |
| 1982 | 6,829,613 |
| 1983 | 11,373,811 |
| 1984 | 4,757,958 |
| 1985 | 7,111,870 |
| 1986 | 7,988,675 |
| 1987 | 55,008,194 |

(*See* 1980: NY-BS-8012-02, CH-BS-8012-02, SF-BS-8012-04, NS-BS-8012-06; 1981: NY-BS-8112-02, CH-BS-8112-02, SF-BS-8112-02, NS-BS-8112-02. 1982: NY-BS-8212-02, CH-BS-8212-02, SF-BS-8212-02, NS-BS-8212-02; 1983: NY-BS-8312-02, CH-BS-8312-02, SF-BS-8312-02, NS-BS-8312-02; 1984: NY-BS-8412-02, CH-BS-8412-06, SF-BS-8412-02, IBF-BS-8412-02, NS-BS-8412-02; 1985: NY-BS-8512-02, CH-BS-8512-02, SF-BS-8512-02, IBF-BS-8512-02, NS-BS-8512-02; 1986: NY-BS-8612-02, CH-BS-8612-02, SF-BS-8612-02, IBF-BS-8612-02, NS-BS-8612-02, GC-BS-8612-02; 1987: NY-BS-8712-02, CH-BS-8712-03, SF-BS-8712-02, IBF-BS-8712-02, NS-BS-8712-02, GC-BS-8712-02.)

REQUEST FOR ADMISSION 2.110. The aggregate of the provisions for "B&DD - Non-Specific" recorded on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Provision for B&DD - Non-Specific |
|---|---|
| 1980 | 10,539,202 |
| 1981 | 10,807,318 |

| Tax Year | Provision for B&DD - Non-Specific |
|---|---|
| 1982 | 10,363,993 |
| 1983 | 13,108,406 |
| 1984 | 11,851,486 |
| 1985 | 12,679,446 |
| 1986 | 20,013,077 |
| 1987 | 20,013,077 |

(*See* 1980: NY-BS-8012-02, CH-BS-8012-02, SF-BS-8012-05, NS-BS-8012-06; 1981: NY-BS-8112-02, CH-BS-8112-02, SF-BS-8112-02, NS-BS-8112-02; 1982: NY-BS-8212-02, CH-BS-8212-02, SF-BS-8212-02, NS-BS-8212-02; 1983: NY-BS-8312-02, CH-BS-8312-02, SF-BS-8312-02, NS-BS-8312-02; 1984: NY-BS-8412-02, CH-BS-8412-06, SF-BS-8412-02, IBF-BS-8412-02, NS-BS-8412-02; 1985: NY-BS-8512-02, CH-BS-8512-02, SF-BS-8512-02, IBF-BS-8512-02, NS-BS-8512-02; 1986: NY-BS-8612-02, CH-BS-8612-02, SF-BS-8612-02, IBF-BS-8612-02, NS-BS-8612-02, GC-BS-8612-02; 1987: NY-BS-8712-02, CH-BS-8712-03, SF-BS-8712-02, IBF-BS-8712-02, NS-BS-8712-02, GC-BS-8712-02.)

REQUEST FOR ADMISSION 2.111. The U.S. branches did not transfer or repatriate to the head office any of their Retained Profits generated during the years at issue. (*See* Report of Kevin Bandoian dated Jan. 14, 2002, Ex. 6.)

REQUEST FOR ADMISSION 2.112. The aggregate of the balances recorded as "Retained Profits" (net of any amounts recorded as "Accumulated Losses") on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Aggregate Retained Profits |
|---|---|
| 1980 | 15,677,567 |
| 1981 | 2,564,846 |
| 1982 | 4,312,898 |
| 1983 | 19,625,765 |
| 1984 | 25,993,019 |
| 1985 | 51,706,718 |
| 1986 | 63,301,445 |
| 1987 | 29,732,486 |

(*See* 1980: NY-BS-8012-02, CH-BS-8012-04, SF-BS-8012-05, NS-BS-8012-06, 1981: NY-BS-8112-02, CH-BS-8112-04, SF-BS-8112-02, NS-BS-8112-02; 1982: NY-BS-8212-02, CH-BS-8212-04, SF-BS-8212-02, NS-BS-8212-02; 1983: NY-BS-8312-04, CH-BS-8312-02, SF-BS-8312-02, NS-BS-8312-02, IBF-BS-8312-02; 1984: NY-BS-8412-04, CH-BS-8412-06, SF-BS-8412-02, NS-BS-8412-02, IBF-BS-8412-02; 1985: NY-BS-8512-04, CH-BS-8512-02, SF-BS-8512-02, NS-BS-8512-02, IBF-BS-8512-02, GC-BS-8512-09; 1986: NY-BS-8612-02, CH-BS-8612-04, SF-BS-8612-02, NS-BS-8612-02, IBF-BS-8612-02, Box 156-17 (GC); 1987: NY-BS-8712-04, CH-BS-8712-03, SF-BS-8712-02, NS-BS-8712-02, IBF-BS-8712-02, GC-BS-8712-02.)

REQUEST FOR ADMISSION 2.113. The aggregate of the balances recorded as "Balance due to HO re Capital Loans" on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Aggregate Balance due to HO re Capital Loans |
|---|---|
| 1980 | 3,223,184 |

| Tax Year | Aggregate Balance due to HO re Capital Loans |
|---|---|
| 1981 | 869,893 |
| 1982 | 900,770 |
| 1983 | 645,032 |
| 1984 | 42,437 |
| 1985 | 1,085,000 |
| 1986 | 0 |
| 1987 | 0 |

(*See* 1980: NY-BS-8012-01, CH-BS-8012-01, SF-BS-8012-02, NS-BS-8012-05; 1981: NY-BS-8112-01, CH-BS-8112-01, SF-BS-8112-01, NS-BS-8112-01; 1982: NY-BS-8212-01, CH-BS-8212-01, SF-BS-8212-01, NS-BS-8212-01; 1983: NY-BS-8312-01, CH-BS-8312-01, SF-BS-8312-01, NS-BS-8312-01, IBF-BS-8312-01; 1984: NY-BS-8412-01, CH-BS-8412-05, SF-BS-8412-01, NS-BS-8412-01, IBF-BS-8412-01; 1985: NY-BS-8512-01, CH-BS-8512-01, SF-BS-8512-01, NS-BS-8512-01, IBF-BS-8512-01; 1986: NY-BS-8612-01, CH-BS-8612-01, SF-BS-8612-01, NS-BS-8612-01, IBF-BS-8612-01, GC-BS-8612-01; 1987: NY-BS-8712-01, CH-BS-8712-01, SF-BS-8712-01, NS-BS-8712-01, IBF-BS-8712-01, GC-BS-8712-01.)

REQUEST FOR ADMISSION 2.114. The aggregate of the balances recorded as "Balance due to HO re Fixed Assets" on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Aggregate Balance due to HO re Fixed Assets |
|---|---|
| 1980 | 8,344,816 |
| 1981 | 9,033,064 |
| 1982 | 9,002,188 |

| Tax Year | Aggregate Balance due to HO re Fixed Assets |
|---|---|
| 1983 | 9,257,926 |
| 1984 | 9,860,521 |
| 1985 | 8,817,958 |
| 1986 | 0 |
| 1987 | 0 |

(*See* 1980: NY-BS-8012-01, CH-BS-8012-01, NS-BS-8012-05, SF-BS-8012-02; 1981: NY-BS-8112-01, CH-BS-8112-01, SF-BS-8112-01, NS-BS-8112-01; 1982: NY-BS-8212-01, CH-BS-8212-01, SF-BS-8212-01, NS-BS-8212-01; 1983: NY-BS-8312-01, CH-BS-8312-01, SF-BS-8312-01, NS-BS-8312-01, IBF-BS-8312-01; 1984: NY-BS-8412-01, CH-BS-8412-05, SF-BS-8412-01, NS-BS-8412-01, IBF-BS-8412-01; 1985: NY-BS-8512-01, CH-BS-8512-01, SF-BS-8512-01, NS-BS-8512-01, IBF-BS-8512-01; 1986: NY-BS-8612-01, CH-BS-8612-01, SF-BS-8612-01, NS-BS-8612-01, IBF-BS-8612-01, GC-BS-8612-01; 1987: NY-BS-8712-01, CH-BS-8712-01, SF-BS-8712-01, NS-BS-8712-01, IBF-BS-8712-01, GC-BS-8712-01.)

REQUEST FOR ADMISSION 2.115. The aggregate of the balances recorded as "Profit and Loss" on the year-end balance sheets of the U.S. branches for the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Aggregate Profit & Loss Balance |
|---|---|
| 1980 | 0 |
| 1981 | 0 |
| 1982 | 4,604,145 |
| 1983 | 5,117,386 |
| 1984 | 5,109,745 |

| Tax Year | Aggregate Profit & Loss Balance |
|---|---|
| 1985 | 0 |
| 1986 | 0 |
| 1987 | (6,072,870) |

(*See* 1982: NS-BS-8212-02; 1983: CH-BS-8312-02, NS-BS-8312-02; 1984: NS-BS-8412-02; 1987: NY-BS-8712-04.)

REQUEST FOR ADMISSION 2.116. The aggregate of the amounts that either were designated as capital on the books of the U.S. branches or were in fact allotted to the U.S. branches for capital purposes (i.e., the provisions for "B&DD - Specific", "B&DD - Non-Specific", "Retained Profits" (net of any "Accumulated Losses"), "Balance due to HO re Capital Loans", "Balance due to HO re Fixed Assets", and balances recorded as "Profit and Loss") as of December 31st of the taxable year ended December 31, 1980 and each of the years at issue was:

| Tax Year | Aggregate Capital |
|---|---|
| 1980 | 41,857,514 |
| 1981 | 27,109,353 |
| 1982 | 36,013,607 |
| 1983 | 59,128,326 |
| 1984 | 57,615,166 |
| 1985 | 81,400,992 |
| 1986 | 91,303,197 |
| 1987 | 98,680,887 |

*See* Requests for Admission 2.109 through 2.115.

REQUEST FOR ADMISSION 2.117. All of the interest income received and included in income by the U.S. branches during the years at issue reflected arm's-length market rates.

REQUEST FOR ADMISSION 2.118. All of the interest expense paid and deducted by the U.S. branches during the years at issue reflected arm's-length market rates.

REQUEST FOR ADMISSION 2.119. The following table lists all of the adjustments to the U.S. federal taxable income of NatWest as set forth in the RARs with respect to all issues, excluding adjustments that are dependent on the outcome of subsequent years and computational adjustments that are dependent on resolution of all issues relating to the years at issue:

Adjustments to RAR Taxable Income

| Tax Year | 1981 | 1982 | 1983 | 1984 | 1985 | 1986 | 1987 |
|---|---|---|---|---|---|---|---|
| Reversal of adjustments to interest income[1] | 125,857,675 | 132,049,714 | 88,243,894 | 104,153,633 | 79,404,169 | 87,081,845 | 131,596,705 |
| Reversal of adjustments to interest expense[1] | (152,605,551) | (147,337,977) | (101,652,347) | (126,092,694) | (93,539,801) | (108,064,089) | (174,292,853) |
| Reversal of Net Loans Adjustment[2] | 0 | 0 | 0 | 0 | 0 | (84,426) | (174,309) |
| Elimination of Net Intra-U.S. Interest Expense[3] | 0 | 23,991 | 0 | 231,163 | 38,246 | 0 | 71,877 |
| Elimination of Capital Loan Charge[4] | 465,868 | 209,433 | 202,745 | 309,459 | 0 | 2,603,584 | 1,936,537 |
| Adjustment to NOL Carryback from 1990[5] | 0 | 0 | 0 | 0 | 0 | 0 | 3,385,279 |
| Aggregate Adjustments to RAR Taxable Income | (26,282,008) | (15,054,839) | (13,205,708) | (21,398,439) | (14,097,386) | (18,463,086) | (37,476,764) |

1 – *See* Request for Admission 2.54, above.
2 - *See* Request for Admission 2.52, above.
3 - *See* Requests for Admission 2.66 and 2.67, above.
4 - *See* Requests for Admission 2.68, 2.87 and 2.88, above.
5 -Two adjustments to the U.S. Branch's NOL Carryback were conceded by NatWest during the audit of its 1990 taxable year, resulting in an addition to income for the 1987 tax year of $3,385,279. *See* $912,566 agreed on Form 870-AD dated June 26, 1998 at 2, and $2,472,713 in closing agreement executed by NatWest on June 14, 1999. The NOL Carryback is subject to further adjustment depending on the resolution of taxable years not at issue here.

REQUEST FOR ADMISSION 2.120. The U.S. federal taxable income of NatWest for each of the tax years at issue after adjustments described in Request for Admission 2.119 is:

| Tax Year | Taxable Income per RARs[1] ("A") | Aggregate Adjustments to RAR Taxable Income[2]("B") | Taxable Income After Adjustments (=A+B ) |
|---|---|---|---|
| 1981 | 31,875,618 | (26,282,008) | 5,593,610 |
| 1982 | 28,154,833 | (15,054,839) | 13,099,994 |
| 1983 | 38,336,127 | (13,205,708) | 25,130,419 |
| 1984 | 29,948,701 | (21,398,439) | 8,550,262 |
| 1985 | 54,676,775 | (14,097,386) | 40,579,389 |
| 1986 | 64,457,339 | (18,463,086) | 45,994,253 |
| 1987 | 46,808,885 | (37,476,764) | 9,332,121 |

1 - *See* Request for Admission 2.57, above.
2 - *See* Request for Admission 2.119, above.
3 - These adjustments do not reflect any adjustment for the deduction for Environmental Tax allowed under Section 164(a)(5)

REQUEST FOR ADMISSION 2.121. The applicable effective federal income tax rates for the years at issue are:

| Tax Year | Effective Federal Income Tax Rate |
|---|---|
| 1981 | 46% |
| 1982 | 46% |
| 1983 | 46% |
| 1984 | 46% |
| 1985 | 46% |
| 1986 | 46% |
| 1987 | 39.95068% |

(*See* Code §11(b) (1981-1987) (for explanation of 1987 blended rate *see* H.R. Rep. No. 99-841, at II - 159 (1986) (Conference Report to accompany H.R. 3838, the Tax Reform Act of 1986) (46% maximum corporate rate switches to 34% maximum rate for income taxable on or after July 1, 1987)).)

REQUEST FOR ADMISSION 2.122. The tax effect of the adjustments described in Request for Admission 2.119 is:

| Tax Year | Effective Federal Income Tax Rate[1] ("A") | Aggregate Adjustments to RAR Taxable Income[2] ("B") | Tax Effect of Adjustments (=A*B ) |
|---|---|---|---|
| 1981 | 46% | (26,282,008) | (12,089,724) |
| 1982 | 46% | (15,054,839) | (6,925,226) |
| 1983 | 46% | (13,205,708) | (6,074,626) |
| 1984 | 46% | (21,398,439) | (9,843,282) |
| 1985 | 46% | (14,097,386) | (6,484,798) |
| 1986 | 46% | (18,463,086) | (8,493,020) |
| 1987 | 39.95068% | (37,476,764) | (15,020,710) |
| **Total** | | | (64,931,386) |

1 - *See* Request for Admission 2.121, above.
2 - *See* Request for Admission 2.119, above.
3 - Note that the tax effect for 1987 reflects (i) the imposition of the Environmental Tax under Section 59A and (ii) the deductibility of that tax for regular tax purposes under Section 164(a)(5).

REQUEST FOR ADMISSION 2.123. The reduction in tax liability is:

| Tax Year | Tax Effect of Adjustments[1] ("A") | Tax Liability per RARs[2] ("B") | Revised Tax Liability (=A+B ) |
|---|---|---|---|
| 1981 | (12,089,724) | 14,154,278 | 2,064,554 |
| 1982 | (6,925,226) | 12,546,863 | 5,621,637 |
| 1983 | (6,074,626) | 16,105,789 | 10,031,163 |

| Tax Year | Tax Effect of Adjustments[1] ("A") | Tax Liability per RARs[2] ("B") | Revised Tax Liability (=A+B ) |
|---|---|---|---|
| 1984 | (9,843,282) | 13,084,832 | 3,241,550 |
| 1985 | (6,484,798) | 24,937,042 | 18,452,244 |
| 1986 | (8,493,020) | 29,528,505 | 21,035,485 |
| 1987 | (15,020,710) | 18,620,521 | 3,599,811 |
| **Total** | (64,931,386) | 128,977,830 | 64,046,444 |

1 - *See* Request for Admission 2.122, above.
2 - *See* Request for Admission 2.58, above.

REQUEST FOR ADMISSION 2.124. The aggregate U.S. federal income taxes paid by NatWest for each of the tax years at issue is:

| Tax Year | Aggregate Tax Payments |
|---|---|
| 1981 | 14,154,278 |
| 1982 | 12,546,863 |
| 1983 | 16,105,789 |
| 1984 | 13,084,832 |
| 1985 | 24,937,042 |
| 1986 | 29,528,505 |
| 1987 | 18,620,521 |
| **Total** | 128,977,830 |

*See* Request for Admission 2.61, above.

REQUEST FOR ADMISSION 2.125. The amount of tax overpayment by NatWest, excluding interest thereon, is:

| Tax Year | Aggregate Tax Payments[1] ("A") | Revised Tax Liability[2] ("B") | Tax Overpayment (=A-B) |
|---|---|---|---|

| Tax Year | Aggregate Tax Payments[1] ("A") | Revised Tax Liability[2] ("B") | Tax Overpayment (=A-B) |
|---|---|---|---|
| 1981 | 14,154,278 | 2,064,554 | 12,089,724 |
| 1982 | 12,546,863 | 5,621,637 | 6,925,226 |
| 1983 | 16,105,789 | 10,031,163 | 6,074,626 |
| 1984 | 13,084,832 | 3,241,550 | 9,843,282 |
| 1985 | 24,937,042 | 18,452,244 | 6,484,798 |
| 1986 | 29,528,505 | 21,035,485 | 8,493,020 |
| 1987 | 18,620,521 | 3,599,811 | 15,020,710 |
| Total | 128,977,830 | 64,046,444 | 64,931,386 |

1 - *See* Request for Admission 2.124, above.
2 - *See* Request for Admission 2.123, above.

Dated: December __, 2004

Respectfully submitted,

D Scott Wise by: [signature]

D. Scott Wise

Attorney of Record
Davis Polk & Wardwell
450 Lexington Avenue
New York, N.Y. 10017

CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2004, I caused a copy of the foregoing to be served by hand on the attorneys for Defendant as follows:

Steven I. Frahm
Attorney of Record
U.S. Department of Justice, Tax Division
Court of Federal Claims Section
555 4th Street N.W., 8th Floor
Washington, D.C. 2004

Winston & Strawn LLP
1400 L Street, N.W.
Washington, D.C. 20005