**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 95-758 T**
**(Judge Nancy B. Firestone)**

**NATIONAL WESTMINSTER BANK PLC,**

**Plaintiff**

**v.**

**THE UNITED STATES,**

**Defendant**

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S RESPONSES TO PLAINTIFF'S REQUESTS FOR ADMISSIONS AND DEEM THEM ADMITTED**

On February 11, 2005, plaintiff filed a motion under RCFC 36(a) to strike defendant's responses to nearly all of plaintiff's Second Set of Requests for Admissions and to instead deem defendant to have admitted those requests. For the reasons discussed below, defendant opposes plaintiff's motion:

1. On December 8, 2004, plaintiff served defendant with 125 requests for admission (as well as related interrogatories and requests for production of documents). Plaintiff never advised defendant or the Court that it needed discovery and indeed had aggressively opposed defendant's

September 3, 2004, motion to permit formal discovery.[1] Throughout its staunch opposition to formal discovery, plaintiff contended that it was unnecessary and never suggested, as it does now, that it needed discovery to ascertain defendant's position on any issue, establish that plaintiff's previously proposed stipulations were accurate, prepare for "efficient trial," or for any other purpose.

2. The Court allowed defendant to conduct formal discovery, and its October 5, 2004, Order provided that fact discovery would conclude on January 7, 2005. Plaintiff did not proceed with any urgency to serve the discovery that it now claims is essential. It waited more than two months, serving its admission requests and other discovery such that defendant's responses would be due on the last day of discovery and would have to be prepared when defendant needed to devote time and attention to obtaining within the time allotted the information defendant needed in discovery . Moreover, plaintiff well understood that defendant would not admit the requests, as they largely constituted the resubmission of plaintiff's proposed stipulations that the parties previously had discussed and were unacceptable to defendant. The purpose of plaintiff's requests for admissions and other discovery appeared to be to distract defendant from effectively obtaining the information defendant needed to provide its experts and prepare for trial.

3. Defendant responded to plaintiff's admission requests and other discovery on January 7, 2005. Over the next five weeks, plaintiff's counsel never indicated to defendant's counsel that it considered defendant's responses to be insufficient, notwithstanding that counsel met several times for depositions and also exchanged other e-mails and letters during that period. The first indication that

---

[1] Plaintiff went so far in opposing formal discovery that it filed a surreply brief.

plaintiff was dissatisfied with defendant's responses was on February 10, 2005, when plaintiff's counsel left a voice mail message for defendant's counsel, advising that it was seeking an "immediate" conference to discuss defendant's responses to the admissions requests. Plaintiff's counsel knew when they called that defendant's counsel would not be available to take a telephone call, as defendant's counsel had earlier advised plaintiff by e-mail in connection with deposition scheduling that he would be in Denver for a two- week program, beginning February 7, 2005. Moreover, when plaintiff's counsel called on February 10th, they heard counsel's recorded message advising that he was out of the office from February 7th, through and including February 18th, would check messages from time to time, but was enrolled in a training program and would have a limited ability to respond. Thus, at the time plaintiff's counsel left a message, they knew that an "immediate" conference was impossible. The next day, plaintiff filed its lengthy motion and proposed order, whose preparation obviously was all but complete at the time plaintiff was requesting a conference.[2]

4. Once again, the timing of plaintiff's motion is such that defendant's response is due as defendant needs to devote attention to an impending deadline – in this case the submission of defendant's experts' reports in just four more days.

5. Contrary to the tone of plaintiff's motion, its numerous requests for admission do not seek to resolve basic, undeniable, or readily verifiable facts. The 125 requests for admission are a mishmash of assertions for which defendant has never seen documentation, arguments reflecting

---

[2] Plaintiff did not in "good faith" attempt to consult with defendant before filing this motion, and has not complied with RCFC, Appendix A, ¶ 10. Plaintiff states that it was "unsuccessful" in consulting with defendant; it was unsuccessful, because it wanted to be unsuccessful. Plaintiff filed its motion before defendant had any opportunity to return plaintiff's telephone call.

plaintiff's positions with which defendant legitimately disagrees and which will have to be resolved by the Court at trial, matters which are not necessary to resolve either the capital or arm's length interest issues under either party's views, and ill-conceived accounting schedules that even plaintiff concedes may require an accountant to evaluate. The particular topics covered in plaintiff's requested admissions include (1) claims to the effect that there were three, not six U.S. branches, which are not consistent with the Court's previous findings and plaintiff's own earlier contentions and for which plaintiff offers no documentation,[3] (2) requests to admit the accuracy of individual entries on numerous accounting schedules plaintiff's counsel prepared in an attempt to construct a combined U.S. branch that did not, in fact, exist, and which would substitute for the admission into evidence of the contemporaneously kept books and records of the six U.S. branches that did exist, (3) intricate claims regarding adjustments to taxable income and the resulting tax overpayment, if the Court sustains without exception each and every one of plaintiff's claims regarding interest income and expense, (4) plaintiff's arguments regarding capital designated on the branches' books or allotted to the branches and (5) the assertions set forth in plaintiff's October 29, 2004, report regarding interest charges on certain capital loans.

6. Taken together, plaintiff's requests for admission constitute the position plaintiff would maintain on the issues at trial and, if deemed admitted, would make a trial all but superfluous. Indeed, plaintiff characterizes its requests as "comprehensive requests for admissions covering the facts underlying all issues that ultimately need to be addressed to resolve this case."[4] Plaintiff's motion to deem requests admitted seeks to establish its view regarding the amount of branch capital, the amount

---

[3] *See e.g.*, Requests 2.11 and defendant's response.

[4] Pltf.'s Motion at 3.

of interest expense attributable to capital, reportable interest income and deductible interest expense, and the necessary adjustments to compute taxable income. The scope of trial, if any, would be extremely limited. Granting plaintiff's motion would deprive defendant and its experts of the opportunity to present a different position regarding the factual results under the Court's capital test and an analysis of the contemporaneous accounting records with respect to both the capital and arm's length interest issues. In essence, plaintiff is attempting to use its requests for admissions, and its pending motion, as a substitute for trial to evaluate the actual books and records that it has so long argued are the centerpiece of its claim.

7. While plaintiff asks this Court to deem its requests admitted, it nevertheless makes no effort to establish that the assertions in the requests are actually true. Plaintiff offers the Court no substantiating evidence that would be admissible at trial – no books and records – and no confirmation of the accuracy of the underlying admissions requests. Plaintiff misleadingly suggests that many of its requests simply ask defendant to "add up a few numbers" and (inconsistently) also contends that "the fact that Defendant may need the assistance of an accountant to perform computations" does not justify defendant's failure to do so in order to respond.[5] As to other requests, plaintiff simply concludes they are supported by evidence and that defendant (while discovery is underway and its experts are working) should have provided contrary evidence if it has any.[6]

8. Rather than address the accuracy of its requests for admission, plaintiff's motion focuses instead on its charge that defendant's responses to the admissions requests are unreasonable

---

[5] Pltf.'s Motion at 10.

[6] Pltf.'s Motion at 13 n. 12, 14, 16.

and inexcusable and that as a result the requests should be deemed admitted. A considered and thorough review of all of plaintiff's requests, and all of defendant's responses, reveals however that defendant's responses are well-founded and certainly were submitted in good faith.

9. For example, plaintiff's requests include many assertions describing the nature and number of its U.S. branches, and the amounts of capital either designated as such on their books or allotted to them. Defendant rightfully denied the admissions requests that it believes are inaccurate, and stated as to others that it did not know (either because it had no documents to confirm the requests, or defendant's experts were conducting their analysis and would opine when their reports are due on branch capital under the Court's test).[7]

10. Plaintiff also now asks that the Court deem as admitted numerous financial schedules that its counsel prepared, purporting to construct a single U.S. branch. There was no such branch, and, in any event, contrary to plaintiff's claim, the schedules are complex and would require a very time consuming and intricate accounting exercise to reconstruct and verify counsel's combinations, reformatting, and relabeling of items from the branches' individual books and records.[8] Defendant was

---

[7] *See e.g.*, Requests 2.09, 2.11, 2.17, 2.99-2.103, 2.105-2.106.

[8] *See* Requests 2.33-2.43 and 2.108-2.115. The requests address interest income and interest expense. They start with aggregate amounts, but then the schedules in subsequent requests purport to break down the aggregate amounts into constituent categories that reflect a complex accounting analysis that involves combining line items into categories and then combining them further across many branches. To support its schedules, plaintiff often relies on its counsel's earlier assertions and schedules (which it calls the June 5, 2001 Amended Refund Claim), and which is not an admissible document. *See e.g.,* Requests 2.35 and 2.36. For other requests, plaintiff refers to numerous individual branch accounting statements, requiring multiple calculations just to evaluate a single number on one of plaintiff's counsel's schedules. *See e.g.,* Requests 2.109 and 2.110.

not obliged to engage an accountant to evaluate the schedules plaintiff's counsel prepared, especially since they purported to reflect a combined U.S. branch that did not actually exist.

11. A very large number of plaintiff's requests also address the accuracy of its October 29, 2004, report addressing interest charges on capital loans.[9] The Court directed plaintiff to submit that report so that defendant could analyze it. Defendant's experts were doing just that as discovery was proceeding, and their report to be submitted on March 4, 2005, will address the contents of plaintiff's October 29, 2004, report. Plaintiff's requests sought defendant's conclusions regarding the report before they had been drawn and now seeks to deem the requests admitted, regardless of the analysis and ultimate conclusions of defendant's experts.

12. Finally, a large number of plaintiff's requests address the particulars of the computation of plaintiff's tax overpayment, if plaintiff's position is sustained in its entirety.[10] These requests constitute a violation of plaintiff's agreement in the Joint Preliminary Status Report, filed at the outset of this case, to address tax computations only after the Court rules on damages (in this case, interest income and expense). As expressed in defendant's response to Request 2.44, there also are good reasons to follow this standard procedure in tax cases here. Plaintiff's argument (at 11) that it is only seeking to have deemed admitted the facts necessary to compute the tax liability, but not the computation itself, is sophist misdirection. Once the Court determines interest income and interest expense after hearing the evidence at trial, those determinations can be used to compute plaintiff's taxable income, resulting tax liability, and the amount of any

---

[9] *See* Requests 2.68-2.97 and 2.111 and defendant's response to Request 2.69.

[10] *See* Requests 2.44-2.67, 2.119, 2.124. *See also* Requests 1.120-1.22, and 1.25.

overpayment. It is neither necessary nor desirable to address facts not pertaining to the capital or arm's length interest issues.[11]

13. Plaintiff's earlier discovery requests and its pending motion constitute harassment primarily intended to occupy defendant and prevent it from productively and effectively preparing for trial. And the motion itself seeks to substitute deemed admissions for evidence at trial of matters that plaintiff has not shown to be true and which defendant reasonably did not admit were true. Granting plaintiff's motion to strike defendant's responses and replace them with deemed admissions would be an abuse of discretion. *See* RCFC 36(a); *Shell Petroleum, Inc. v. United States*, 46 Fed. Cl. 583 (2000); *Vons Companies, Inc. v. United States*, 51 Fed. Cl. 1 (2001); *Pickens v. The Equitable Life Assurance Society*, 413 F.2d 1390, 1393 (5th Cir. 1969).

---

[11] Plaintiff's inflammatory speculation that defendant is contemplating another proceeding after the trial is unfounded. Defendant expects and trusts that the trial will result in the resolution of both the capital and arm's length interest issues. As previously stated, the tax computations to implement a Court's determinations are generally agreed to and do not require further Court action. Defendant's reference to the determination of interest income and expense *after* trial refers only to the expectation that the Court is unlikely to rule from the bench, not that some other proceeding will be necessary.

Respectfully submitted,

s/Steven I. Frahm
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6504

EILEEN J. O'CONNOR
Acting Assistant Attorney General
MILDRED L. SEIDMAN
Chief, Court of Federal Claims Section

February 28, 2005