**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 95-758T**
**(Judge Nancy B. Firestone)**

**NATIONAL WESTMINSTER BANK PLC,**

**Plaintiff**

**v.**

**THE UNITED STATES,**

**Defendant**

**PLAINTIFF'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR AN ORDER DEEMING ITS REQUESTS FOR ADMISSIONS ADMITTED UNDER RCFC 36(a)**

Defendant's Opposition fails to provide the Court with any legitimate reasons or legal arguments for denying Plaintiff's Motion and reflects a fundamental misunderstanding of the purpose of requests for admissions. This misunderstanding has already resulted in undue burden on Plaintiff and, if tolerated, will unduly burden both Plaintiff and the Court at trial.

1. Defendant's suggestion that it can avoid responding to Plaintiff's requests because they would render "[t]he scope of trial, if any, . . . extremely limited," Def.'s Opp'n. ¶ 6, is surprising. Requests for admission are intended to serve that very purpose – to "facilitate proof with respect to issues that cannot be eliminated from the case, and . . . to narrow the issues by eliminating those that can be." *See* Fed. R. Civ. Proc. 36(a), Advisory Committee Notes to 1970

Amendment. If full and proper responses to all of Plaintiff's requests would limit the scope of trial in this case, then the purpose of the rule would be served.

Defendant appears to be relying on superseded law in support of its position. *See* Def.'s Opp'n. ¶ 13 (citing *Pickens v. Equitable Life Assurance Soc'y*, 413 F.2d 1390, 1393 (5th Cir. 1969) ("requests for admissions as to central facts in dispute are beyond the proper scope of the rule.")). The notion in *Pickens* that central facts are not proper subjects of requests for admissions is outdated and was superseded by the 1970 Amendments to Rule 36(a). *See* Fed. R. Civ. Proc. 36, Advisory Committee Notes to 1970 Amendments ("The very purpose of the request is to ascertain whether the answering party is prepared to admit or regards the matter as presenting a genuine issue for trial."); Wright, Miller & Marcus, *Federal Practice and Procedure: Civil 2d* § 2256 (2d ed. 1994) (describing *Pickens* as representative of a superseded line of pre-1970 authority). Since 1970, the Rule has provided that "[a] party who considers that a matter of which an admission has been requested presents a genuine issue for trial may not, on that ground alone, object to the request; the party may, subject to the provisions of Rule 37(c), deny the matter or set forth reasons why the party cannot admit or deny it." Fed. R. Civ. P. 36(a).

2. Defendant's claim that for Plaintiff to prevail on this motion it must offer the Court evidence "to establish that the assertions in the requests are actually true," Def.'s Opp'n ¶ 7, is equally invalid. Such a requirement would subvert the goal of minimizing the burden on the Court. "[T]he burden of making proper responses under Rule 36(a) is squarely upon the party to whom the requests are directed. . . . It is not proper to refuse to respond to a requested admission on the ground that the requesting party has the burden of proving the matters asserted

therein." *Dulansky v. Iowa-Illinois Gas & Elec. Co.*, 92 F.Supp. 118, 124 (S.D. Iowa 1950). *See also Dometic Sales Corp. v. Intertherm, Inc.*, 1988 U.S. Dist. LEXIS 19362, *11 (N.D. Ill. 1988) (quoting *Dulansky* on this point).

3. Defendant's statement that it could not respond to certain unidentified requests "for which defendant has never seen documentation" is simply not credible. Def.'s Opp'n ¶ 5. As Plaintiff noted in its Motion, the uncontradicted evidence Plaintiff has submitted to Defendant through interrogatory responses, through deposition testimony, in documents in the repository, and in Plaintiff's October 9, 2004 Report on the Capital Issue, is more than sufficient to enable Defendant to admit the matters set forth in the requests. Pl.'s Mot. at 6. In its requests, Plaintiff provided cross-references to original business records and to prior submissions that directed Defendant to original business records. The Rules do not permit Defendant to profess ignorance as to "readily obtainable" information. *See Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1247 (9th Cir. 1981).

4. Defendant refused to respond to numerous requests involving financial information used to prepare Plaintiff's U.S. tax returns on the grounds that Plaintiff is "purporting to construct a single U.S. branch," that responding "would require a very time consuming and intricate accounting exercise to reconstruct and verify counsel's combinations, reformatting, and relabeling of items from the branches' individual books and records," and that "Defendant was not obliged to engage an accountant to evaluate the schedules plaintiff's counsel prepared, especially since they purported to reflect a combined U.S. branch that did not actually exist." Def.'s Opp'n ¶ 10. Defendant cites Plaintiff's Request for Admission 2.33 as an

example. That request asked Defendant to admit "the aggregate amount of interest income recorded on the profit and loss statements of the U.S. branches for each of the years at issue." For 1987, the number Plaintiff asked Defendant to admit was $584,410,256. Defendant could have verified the accuracy of this number (subject to $3 in rounding) by adding just six figures from Plaintiff's profit and loss statements – figures Defendant itself has requested Plaintiff to admit (*see* Def's Request for Admissions 1.53 to 1.58 (*see* Exhibit C to Pl.'s Mot.)):

| **Branch** | **Gross Interest Income (GII)** | **Doc. Control No.** |
|---|---:|---|
| New York | $136,131,709.04 | INT504-00283 |
| New York IBF | 118,419,974.23 | INT504-00313 |
| Nassau | 255,782,171.12 | INT504-00323 |
| Grand Cayman | 3,307,496.99 | INT504-00333 |
| Chicago | 32,223,598.66 | INT504-00293 |
| San Francisco | 38,545,309.29 | INT504-00303 |
| Total | $584,410,259.33 | |

By asking Defendant to agree to the sum of these numbers, Plaintiff was not "purporting to construct a single U.S. branch" – it was merely seeking agreement as to basic financial information used to prepare the single U.S. tax return the U.S. branches were required to file each year. Nor is this arithmetic, Plaintiff submits, "a very time consuming and intricate accounting exercise." Contrary to Defendant's assertion, Def.'s Opp'n ¶ 7, Plaintiff has not conceded that Defendant would need the help of an accountant to perform this arithmetic. The point is simply that if Defendant does require such assistance, it is obligated to obtain it, and it cannot avoid its obligation to respond on this ground as these matters inevitably must be

determined in order to resolve this case. *See* Fed. R. Civ. P. 36(a), Advisory Committee Notes to 1970 Amendment ("A reasonable burden may be imposed on the parties when its discharge will facilitate preparation for trial and ease the trial process. . . . In most instances, the investigation will be necessary either to his own case or to preparation for rebuttal."); *Lumpkin v. Meskill*, 64 F.R.D. 673, 679 n.6 (D.Conn. 1974) (finding no undue burden where responding to request for admission would require detailed verification of statistical sampling analysis).

5. In its Motion, Plaintiff argued that its Request for Admission 2.09 ("For each of the years at issue, NatWest was required to and did file a single U.S. federal income tax return") did not call for a pure "conclusion of law" as Defendant contended, but instead requested an admission of the application of law to Plaintiff's facts. Pl.'s Mot. at 15. Rather than responding to Plaintiff's argument,[1] Defendant now asks to be excused from this Request on the grounds that Defendant "did not know (because it had no documents to confirm the request[], or defendant's experts were conducting their analysis and would opine when their reports are due on branch capital under the Court's test)." Def.'s Opp'n ¶ 9 and n. 7. Plaintiff does not understand Defendant's new objections given that NatWest's tax returns were attached to the Complaint, and the reports of its experts do not address Plaintiff's Request.

6. Defendant asserted in its Opposition that it was not obliged to respond to requests "addressing the accuracy of [Plaintiff's] October 29, 2004, report addressing interest charges on capital loans" because Defendant's expert was presently analyzing Plaintiff's October 29, 2004

[1] Defendant's Opposition does not address a number of arguments Plaintiff advanced in its Motion. *See* Pl.'s Mot. at 14-15. Those arguments will not be repeated here.

report. Def.'s Opp'n ¶ 11. Defendant represented to the Court that its experts' "report to be submitted on March 4, 2005, will address the contents of plaintiff's October 29, 2004, report." *Id*. The implication of this statement, as well as that of Defendant's responses to Plaintiff's requests for admission relating to these matters,[2] was that the expert report would evaluate whether Plaintiff had accurately identified and conceded all capital loan charges reflected in its books and records. For the reasons discussed in Plaintiff's Motion, this objection is not valid, and Defendant has not disputed this point. *See* Pl.'s Mot. at 13-14 (discussing *Shell Petroleum, Inc. v. United States*, 46 Fed. Cl. 583 (2000)). But, more important, Defendant's representation turns out to be inaccurate: the Expert Report of A. Lawrence Kolbe on the Capital Issue, which Defendant submitted to the Court on March 4, 2005 (the "Kolbe Report") does not indicate that Defendant had requested its expert to evaluate Plaintiff's Requests – including those relating to amounts of capital loan charges reflected in Plaintiff's books and records – and the Report does not expressly or specifically address any of them. Instead, the Kolbe Report professes an inability to propose adjustments that are consistent with the Court's November 2003 Opinion, and amounts to yet another attempt by Defendant to reargue that Opinion. *See, e.g.*, Kolbe Report at 32. Defendant's representation to Plaintiff and the Court that its experts would address the matters in Plaintiff's requests, combined with the ultimate failure of those reports to do so, justify deeming these matters admitted now.

---

[2] *See, e.g.*, Defendant's Responses to Requests 2.69 through 2.94, 2.96 through 2.103, 2.105, 2.106 and 2.111.

7. Defendant seeks to avoid admitting fundamental matters such as the fact that Plaintiff's profit and loss statements tie out to its U.S. tax returns,[3] characterizing such matters as "the particulars of the computation of plaintiff's tax overpayment," and asserting that "[i]t is neither necessary nor desirable to address facts not pertaining to the capital or arm's length interest issues." Def.'s Opp'n ¶ 12. Defendant should not be allowed to defer addressing factual matters underlying the determination of Plaintiff's tax liability until some time after the July trial. Defendant's claim that matters beyond the most mechanical aspects of Plaintiff's tax computation can be resolved by agreement of the parties after trial is belied by Defendant's resistance to agreement on matters of basic arithmetic, a sample of which is discussed at ¶ 4 above and illustrates the degree of contentiousness in Defendant's approach in this case. The Court should not permit Defendant to hold open any questions that could delay entry of a final order in this case after the capital and interest rate issues are resolved.

[3] *See* Defendant's Response to Request 2.44.

For the foregoing reasons, Plaintiff requests that the Court grant its Motion for an Order deeming admitted Plaintiff's Requests for Admission under RCFC 36(a).

Dated: New York, N.Y.
March 8, 2005

/s/D. Scott Wise by Mario J. Verdolini, Jr.
D. Scott Wise

Attorney of Record
Davis Polk & Wardwell
450 Lexington Avenue
New York, N.Y. 10017
(212) 450-4000

Of Counsel:

Mario J. Verdolini, Jr.
Leslie J. Altus
Davis Polk & Wardwell
450 Lexington Avenue
New York, N.Y. 10017
(212) 450-4000

John L. Carr, Jr.
Michael C. Moetell
Thomas M. Buchanan
Winston & Strawn LLP
1400 L Street, N.W.
Washington, D.C. 20005