IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 95-758T
(Judge Nancy B. Firestone)

NATIONAL WESTMINSTER BANK PLC,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# SUPPLEMENTAL DECLARATION OF ROGER WALMSLEY

United Kingdom)
)
County of Essex) ss

7 Grosvenor Gardens
Upminster
Essex,
United Kingdom

I, ROGER WALMSLEY, of 7 Grosvenor Gardens, Upminster, Essex, in accordance with 28 U.S.C. § 1746 (2000), hereby DECLARE as follows:

1. I have previously provided testimony in connection with this litigation in a deposition on January 31, 2005 and February 1, 2005 as well as in a declaration dated April 28, 2005. I submit this supplemental declaration in order to provide information relating to transactions entered into between National Westminster Bank PLC's New York branch and Natwest Commercial Services, Inc., an indirect United States subsidiary of Natwest PLC.

2. I understand that Mr. James Read has proposed an adjustment to Natwest's U.S. branch income by comparing Natwest's overdraft charges on its U.S. dollar clearing accounts with the interest it charged on an account of Natwest Commercial Services, Inc. held at the New York branch. Mr. Read suggests that the interest rate the New York branch charged Natwest Commercial Services, Inc., which was based on the interbank Federal funds rate, should have been set at the Prime Rate plus 1.5%, the rate applied to overdrafts on smaller clearing accounts.

3. I recall that the account of NatWest Commercial Services, Inc. was a revolving loan facility to fund its factoring operations. The facility would have been sanctioned and approved by the NatWest Advances Department of New York. My recollection is consistent with the substantial debit balances reflected on the A220s relating to the NatWest Commercial Services account on which Mr. Read based his adjustment and with a document located by NatWest in the files of NatWest Commercial Services, Inc. See the attached A220s for the NatWest Commercial Services account for certain months during the years at issue and the attached copy of 1986 and 1987 Consolidated Financial Statements for Natwest Commercial Services, Inc. with KPMG Report theron.

4. A line of credit is very different from a clearing account, on which, as I noted in my April 28, 2005 Declaration, overdrafts were generally discouraged. Because the computer system required data to be entered into an interest rate field, all accounts had to have an interest rate allocated to them when opened in the books of New York. Such rate cannot be interpreted when looking

at the computer print-outs as an indicator that the customer had approval to overdraw the account or even that the customer had any knowledge that a rate of interest had been allocated to it.

5. I understand that Mr. Read attempts to impose the overdraft rate from the Prime Rate accounts onto the sanctioned extension of credit to Natwest Commercial Services. Charging the Prime Rate on that extension of credit would not have been commercially feasible. If Natwest PLC had attempted to charge the overdraft rate on a loan like the one to Natwest Commercial Services, Inc., Natwest Commercial Services, Inc. would surely have declined the loan and would have had no trouble opening lines of credit at other banks at rates similar to those actually charged by Natwest.

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

EXECUTED ON AUGUST 15, 2005.

Roger Walmsley