# UNITED STATES
# COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NATIONAL WESTMINSTER, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 95-758C |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

Pages: 1 through 79

Place: Washington, D.C.

Date: July 13, 2004

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C. 20005-4018
(202) 628-4888
hrc@concentric.net

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| NATIONAL WESTMINSTER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 95-758C |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |

Courtroom 8
National Courts Building
717 Madison Place, N.W.
Washington, D.C.

Tuesday,
July 13, 2004

The parties met, pursuant to the notice of the Judge, at 10:12 a.m.

BEFORE: HON. NANCY B. FIRESTONE
Judge

APPEARANCES:

For the Plaintiff:

D. SCOTT WISE, Esquire
MICHAEL MOETELL, Esquire
TOM BUCHANAN, Esquire
Davis, Polk & Wardwell
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

For the Defendant:

STEVEN FRAHM, Esquire
MILDRED SEIDMAN, Esquire
U.S. Department of Justice
Civil Division
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530

(Pages Omitted)

every single day of transactions --

MR. FRAHM: That's not our intent at all.

THE COURT: All right. What is it, then, that you're looking for?

MR. FRAHM: All right. First of all, what we've been talking about, in terms of this gapping and parking, is an element of what we're inquiring about, but it is by no means a major element or something that we would think is likely to be something that we're going to be spending an inordinate amount of time. What we would propose to do --

THE COURT: Okay.

MR. FRAHM: -- is find out more about what sort of documentation Plaintiff kept. We've had representations, but we haven't done any formal discovery about the documentation. Our view of the way to approach the interest rate problem and focus on whether or not particular rates were or were not arms length at a given time is by using a sample technique of some sort, not looking at every day's transactions --

THE COURT: That's good.

MR. FRAHM: -- validating transactions for seven years, but using some sort of a sample technique --

THE COURT: Okay.

MR. FRAHM: -- to compare like transactions when

they were entered into by the branch with affiliates and with third parties, so that you would have a apples to apples comparison. If on a particular day in 1985, a particular kind of instrument was entered into by the branch with a third party and with an affiliate within a short time of each other with the same sort of duration, the same sort of terms, we can look at the interest rates and see whether they line up or not. Maybe, they do; maybe, they don't. We haven't ever had an opportunity to do that sort of analysis.

THE COURT: All right. And who -- all right, so you now are proposing some sort of -- you would superimpose, once you get the data --

MR. FRAHM: If it exists, and that's an important point.

THE COURT: Let me just ask the question. Do you know what you have?

MR. WISE: Yes. Pretty much, and we have, I think, for a number of years offered these microfiche financial records to the government for their inspection and it has never occurred. But, we still would make such offer.

THE COURT: Okay. And you have it on both -- I mean, both the --

MR. WISE: Yes. It's the --

THE COURT: -- what the actual liabilities are?

MR. WISE: -- balance sheets.

MR. FRAHM: Let me address that for a moment, Your Honor.

THE COURT: Okay.

MR. FRAHM: As I understand Plaintiff's recordkeeping system that was entered into -- that the branch engaged in, when transactions were entered into, it was recorded into a database on computer and from that database, certain reports were issued, which are separate from the entry of information on a particular transaction. So, the reports lumped things together. The database, according to Plaintiff, can't be located.

THE COURT: All right. I read that in the papers --

MR. FRAHM: They don't have that.

THE COURT: Right.

MR. FRAHM: And deal tickets, which could be used to sample transactions, I suspect, can't be located either. We were told, at least I think it was 1986 --

THE COURT: That they didn't keep them.

MR. FRAHM: -- they didn't have them. So what we're trying to do with this initial round of discovery is find out what there is out there in the way of documentation and whether this sampling analysis that our

expert would perform is even possible. It may be that the answer to our discovery to Plaintiff is, we really don't have the documents. And I'm just trying to flush it out. Then, I might come back to you and say, it's impossible to do the kind of analysis that we think is an appropriate analysis.

THE COURT: And then what do we do?

MR. FRAHM: Well, then, I think there's a failure of proof on Plaintiff's part. All the Plaintiff has come up with is this amalgamated lending of interest rates that we think doesn't prove anything. On the other hand, if Plaintiff does have the documents, then we would propose to do the sort of statistical analysis that I've described.

THE COURT: All right. Mr. Wise?

MR. WISE: We don't agree that we will not be able to carry out burden of proving whatever it is we need to prove on this arms length rate issue. I think the only - - if you're willing to allow the government to fish in this area, we will put all of the documents in a place where the government can review them. And they can do whatever it is they want to do. But, I think that's -- we just want to make sure that that is not an endless process.

THE COURT: All right. And you're estimate --

you, presumably, have these things all collected in one place?

MR. WISE: We do. We have all the financial documents in one place. And if there are other documents that he would like to look at, we have other indices of boxes in warehouses that we'd be happy to show him.

THE COURT: All right. And what is -- if that's now all been collected, what do you think is a reasonable -- in your view, is a reasonable time limit placed on the ability of your folks to go through that and determine whether or not there is some sort of a --

MR. FRAHM: Their estimate, based on what we really don't know now, in the way of availability of documents, is six months.

THE COURT: Okay. So, you would like six months to complete document discovery?

MR. FRAHM: That's right.

THE COURT: Okay.

MR. FRAHM: Now, what I would, also, propose, Your Honor, is that once Plaintiff has responded to our discovery, I'd be happy to either file something with you or come back and discuss it and give you an update. It may well be, if, as we suspect, despite what we're hearing now, what's really available is reports that just lumps things together and not specific identifiable data

on individual transactions, then it may be that we don't even need six months. It could be that we need longer, but I would propose to tell you that very early, if we do.

THE COURT: All right.

MR. WISE: Could I make a statement? I don't want to misstate or mistaken impression left in the record. We're going to have an objection to the extent the government is asking us to perform a lot of calculations, aggregation, disaggregation, stuff that would require accountants to go through records and do huge numbers of man hours of work. Where we will not have an objection is putting all the source documents in a room, letting the government look at them.

THE COURT: Right now, the only thing I'm going to allow is document review, okay. No interrogatories, okay. You can have the documents that you've asked for, that are relevant to both, for ease of my understanding, the asset and liability side of this interest expense and interest income issue and, obviously, with a special focus, now that you know, on what information you have regarding the specific transactions that took place on both sides of the equation with the home office and affiliates. Okay. What you basically have with that -- I mean, if any of that is in places -- I mean, whatever

(Pages Omitted)

REPORTER'S CERTIFICATE

DOCKET NO.: 95-758C

CASE TITLE: National Westminster v. United States

HEARING DATE: July 13, 2004

LOCATION: Washington, D.C.

I hereby certify that the proceedings and evidence are contained fully and accurately on the tapes and notes reported by me at the hearing in the above case before the United States Court of Federal Claims.

Date: 7/13/04

______________________________

Charity Davis

Heritage Reporting Corporation

1220 L Street, N.W.

Washington, D.C. 20005